UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2004 MAR 18  P 3: 23
U.S. DISTRICT COURT
HARTFORD, CT.

| | |
|---|---|
| KELLY PHANEUF, | : |
| Plaintiff, | : Civil No. 3:03CV00372 (AVC) |
| v. | : |
| ROSE MARIE CIPRIANO, DORENE M. FRAIKIN, KATHLEEN BINKOWSKI, TOWN OF PLAINVILLE and PLAINVILLE BOARD OF EDUCATION, | : |
| Defendants. | : MARCH 17, 2004 |

## MEMORANDUM OF LAW IN SUPPORT OF THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**Preliminary Statement**

In deciding the Defendant's Motion for Summary Judgment, the Court is presented with the following main issue:

- The Fourth Amendment, as interpreted by the United States Supreme Court, permits school officials to search a public school student's person and belongings when they have reasonable cause to believe that the search will lead to the discovery of evidence of violations of school rules or the law. Here, despite a clear tip from a fellow classmate providing school officials with individualized suspicion, the initial discovery of contraband in the plaintiff's belongings and a search of the plaintiff's person conducted by the plaintiff's mother in the presence of a school nurse, the plaintiff sued the town and its officials alleging that her rights were violated. Should the Court grant summary judgment in favor of the town and its officials?

The outcome of this motion rests on the United States Supreme Court's interpretation of a student's Fourth Amendment rights in New Jersey v. T.L.O., 469 U.S. 325 (1985) and subsequent caselaw—which is squarely in the defendant's favor.

With respect to the remaining state law claims, there is insufficient evidence to support prima facie causes of action and the defendants are entitled to a qualified governmental immunity for their discretionary acts carried out while performing a government function.

## Background Facts

**A.    Reasonableness of the search at its inception.**

In the early morning hours of June 7, 2002, the seniors and officials of Plainville High School were preparing for off-campus travel to an annual senior picnic. In preparation for this event, school officials had informed the students that prior to their departure for the picnic their bags would be checked for contraband so as to insure that the picnic would be a safe and appropriate environment for all students.

Prior to attending the "bag check" in the auditorium that morning, the plaintiff Kelly Phaneuf told a fellow classmate, Michelle Cyr, that she was in possession of marijuana, that she planned on smoking it at the picnic and that she was going to place it down her pants during the bag check so as to escape detection. (Aff. of Michelle Cyr ¶¶2-3.) Prior to the student's departure that morning, Ms. Cyr informed a teacher, Cindy Birdsall, and the school principal, Rose Marie Cipriano, about the plaintiff's intentions and the statements made to her. (Aff. of Cyr ¶¶4-6.) (Aff. of Birdsall.) (Aff. of Cipriano.)

After speaking with Ms. Cyr in the Principal's office, Principal Cipriano entered the bus that the plaintiff had boarded and asked the plaintiff to accompany her to the foyer within the school. (Aff. of Cipriano.) Present at this location were the plaintiff, Principal Cipriano and teacher Birdsall. Next, Principal Cipriano informed the plaintiff that she

had been told by one of the plaintiff's fellow classmates that the plaintiff had marijuana on her person, specifically down her pants. (Aff. of Cipriano.) (Aff. of Birdsall.) The plaintiff denied this allegation. Id.

At this point, Principal Cipriano determined that the plaintiff's belongings and person would need to be checked to determine if she possessed marijuana in violation of school rules and the law. Id. The Principal based her determination on many factors including, but not limited to, the suspicious manner of the plaintiff's denial, the credible and specific tip from fellow classmate Ms. Cyr, the plaintiff's past history of disciplinary problems and her duty to insure a safe, healthy environment at the senior picnic as well as her duty to prevent drug use by schoolchildren in her care. (Aff. of Cipriano.)

**B.     The reasonable fashion of the search itself.**

After determining that a search would need to be performed, Principal Cipriano had the plaintiff accompany her to the nurse's office, where the Principal and school nurse Doreen Fraikin placed a call to the plaintiff's mother, Lisa Phaneuf. Principal Cipriano informed mother Phaneuf that based on a number of factors, including a tip from a fellow classmate, she believed that her daughter had placed marijuana down her pants.

An initial inspection of the plaintiff's belongings revealed cigarettes and a lighter. The possession of these contraband items constituted a violation of school rules. Mother Phaneuf arrived shortly thereafter at which time, nurse Fraikin, mother Phaneuf and the plaintiff entered a private room within the nurse's office and closed a curtain. The mother physically performed the search of her daughter's pants. No marijuana was found

during the search and the plaintiff, thereafter, was given a ride to the location of the senior picnic by Principal Cipriano.

C.       **Claims made by the plaintiff.**

The plaintiff has filed a sixteen count complaint against defendants, Town of Plainville, Plainville Board of Education, Superintendent Kathleen Binkowski, Principal Rose Marie Cipriano and Nurse Dorene Fraikin. Count One alleges a deprivation of rights in violation of the United States Constitution and 42 U.S.C. § 1983. Count Two alleges violations of the Article First, § 7 of the Connecticut Constitution. Counts Three, Four, Five and Thirteen allege negligence as against Principal Cipriano, Nurse Fraikin, Superintendent Binkowski and the Town of Plainville, respectively. Counts Six and Seven allege invasion of privacy as against Principal Cipriano and Nurse Fraikin, respectively. Counts Eight and Nine allege intentional infliction of emotional distress as against Principal Cipriano and Nurse Fraikin, respectively. Counts Ten, Eleven, Twelve and Sixteen allege negligent infliction of emotional distress as against Principal Cipriano, Nurse Fraikin, Superintendent Binkowski, and the Town of Plainville, respectively. Counts Fourteen and Fifteen seek indemnity from the Town of Plainville.

## Legal Standard for a Motion for Summary Judgment

Summary judgment is proper when, viewed in the light most favorable to the nonmoving party, the record reveals "no genuine issues as to any material fact" and that the moving party is entitled to summary judgment as a matter of law. Silver v. City Univ. of N.Y., 947 F.2d 1021, 1022 (2d Cir. 1991); see Fed. R. Civ. P. 56(c). "Summary judgment is thus warranted when the nonmoving party has no evidentiary support for an essential element on which it bears the burden of proof." Celotex Corp. v. Catrett, 477

U.S. 317, 322-23 (1986). All ambiguities and reasonable inferences are resolved in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). It is the defendants' burden of showing that no genuine issue of material facts exists. See Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994).

Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and present such evidence as would allow a jury to find in his favor. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. App. 2000). A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Lipton v. The Nature Company, 71 F.3d 464, 469 (2d Cir. App. 1995) Additionally, a party may not rest on the "mere allegations or denials" contained in his pleadings. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. App. 1995); See also Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. App. 1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible).

### Argument

I. **Well settled caselaw supports the granting of this motion because the search was justified at its inception and was carried out in a reasonable fashion as a matter of law.**

The United States Supreme Court held in, New Jersey v. T.L.O., 469 U.S. 325 (1985), that school officials are permitted to search students and their effects where they have reasonable cause to believe that the search will lead to the discovery of evidence of violations of school rules or the law. The legality of a search of a student by a school

official, therefore, does not require probable cause, but rather is judged "simply on the reasonableness, under all the circumstances, of the search." Id. at 341.

"While schoolchildren do not shed their constitutional rights when they enter the schoolhouse, Fourth Amendment rights are different in public schools than elsewhere; the 'reasonableness' inquiry cannot disregard the schools' custodial and tutelary responsibility for children." (internal marks omitted) Bd. of Educ. v. Earls, 536 U.S. 822 (2002).

Determining the reasonableness of any search involves a twofold inquiry: (1) whether the search was justified at its inception; and (2) whether the search as actually conducted "was reasonably related in scope to the circumstances which justified the interference in the first place. New Jersey v. T.L.O., 469 U.S. 325 (1985) "Under ordinary circumstances, a search of a student by a teacher or other school official will be justified at its inception when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." Id. "Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." Id.

The test overall depends upon many case specific factors. Here, the analysis must weigh the governmental interest in curtailing the introduction of drugs into a school setting against the student plaintiff's privacy interest in a public school setting. The analysis must take into account the legitimate expectation of privacy of the student plaintiff on the day in question, the justification for initiating the search, the manner in

which the search was conducted and the government's interest in maintaining a safe, healthy and drug free environment for students in their care. See New Jersey v. T.L.O., 469 U.S. 325 (1985). But most importantly, school officials are entitled to rely upon common-sense conclusions about human behavior. Id.

### A. The search of the plaintiff was justified at its inception because school officials had a reasonable suspicion that the plaintiff had placed marijuana in her pants.

In the instant case based on the tip from a reliable student, school officials clearly had sufficient reason to initiate a search of the plaintiff, Kelly Phaneuf. Prior to conducting the search of plaintiff's person, Principal Cipriano searched the plaintiff's belongings for evidence of marijuana. This initial search resulted in the finding of a lighter and cigarettes, the possession of which are a violation of school rules. Having found no marijuana in the plaintiff's belongings, the Principal still had a reasonable suspicion that the plaintiff possessed marijuana in her pants and the Principal had a duty to further investigate the classmate's tip alleging the presence of marijuana in the plaintiff's pants.

> The requirement of reasonable suspicion is not a requirement of absolute certainty: sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment. New Jersey v. T.L.O., 469 U.S. 325 (1985), quoting Hill v. California, 401 U.S. 797, 804 (1971).

"Reasonable suspicion" is a "commonsense, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Ornelas v. United States, 517 U.S. 690, 695 (1996). It is clear that "government's need for effective methods to deal with breaches of public

order," T.L.O., 469 U.S. at 337 (internal quotations omitted), is even greater beyond the closely supervised school premises.

The defendant school officials in this case relied on a tip from a credible, respected student at the high school, Michelle Cyr. It was reasonable for the officials to rely on this tip for a number of reasons. First, Ms. Cyr is an office aid at the school, meaning that she was selected to work in the high school office for class credit. In the office, she worked closely with school staff members and principals. Second, the tip from Ms. Cyr was specific, identifying not only the type of drug allegedly possessed by the plaintiff but also the location, i.e., in her pants. Furthermore, common sense dictates that the tip was reliable because this tip was not anonymous rather it was made in person and was thus more likely to be reliable because the student informant faced the possibility of disciplinary repercussions if the information was misleading. See United States v. Harris, 403 U.S. 573, 583 (1971) (stating "common sense" proposition that a tip that places an informant at risk of prosecution is entitled to greater credit.)

Many courts have approved reliance on tips from fellow students. E.g. C.B. v. Driscoll, 82 F.3d 383 (11th Cir. App. 1996) (found that the tip from a fellow student justified the search of the student, and therefore the search was constitutional); Williams v. Ellington, 936 F.2d 881 (6th Cir. App. 1991) (holding that a classmates report of drug possession provided a reasonable basis for the strip search of a public high school student).

**B.      The manner of the search was not excessively intrusive.**

The search of the student's person was conducted within a private room in the nurse's office by the plaintiff's mother, Lisa Phaneuf, in the presence of a female school

nurse who stood with her back to Kelly outside of the room in which the search was conducted. The plaintiff was not required to completely remove her clothes.

With respect to the scope of the search, it is apparent that the instant search was reasonably related to the objective of uncovering the marijuana that the Principal reasonably believed was in the student plaintiff's pants. The search was not excessively intrusive in light of the age and sex of the student and the nature of the infraction because it was conducted by the plaintiff's mother. Given the immediate needs presented here, the situation was handled professionally and did not violate any of the plaintiff's constitutional rights.

In Cornfield v. Consolidated High Sch. Dist. No. 230, 991 F.2d 1316 (7th Cir. App. 1993), where the only basis for suspecting the plaintiff of wrongdoing was that plaintiff had a bulge in his pants and had been a disciplinary problem in the past; the Seventh Circuit found that a full strip search conducted by two school employees still did not violate the Fourth Amendment.

In Justice v. City of Peachtree City, 961 F.2d 188, 193 (11th Cir. App. 1992) a strip search of juvenile arrestee based on reasonable suspicion was reasonable in scope where the officers limited the search in the following manner: (1) having members of the same sex perform the search, (2) using a room where only the participants were present to conduct the search, and (3) limited the search to exclude body cavities.

In Singleton v. Board of Educ. USD 500, 894 F. Supp. 386 (D. Kan. 1995) a search for stolen money was reasonable in its scope where conducted in the privacy of the principal's office with only two male administrators present. The plaintiff was not required to remove his underwear, and was not touched inappropriately.

In <u>Widener v. Frye</u>, 809 F. Supp. 35 (S.D. Ohio 1992), aff'd, 12 F.3d 215 (6th Cir. App. 1991) a search was held to be reasonable in scope where a student was removed from the presence of his classmates, the search was conducted by two security guards, and the student was made to remove socks and shoes and pants but not underwear. Also student had to lift his shirt and his crotch area was visibly inspected.

In the case at bar, viewing the facts in a light most favorable to the plaintiff, it is clear that plaintiff has demonstrated no facts in support of her claim that would entitled her to relief. Defendant, Principal Cipriano's suspicions that plaintiff possessed drugs and the subsequent search were reasonable in light of the circumstances surrounding the school's custodial and tutelary responsibility for the school children. This is especially so because the school children were going to be leaving school grounds under the direction of school officials. Fellow classmate, Michele Cyr's observations of the plaintiff would clearly lead a reasonable person to believe that the Kelly Phaneuf was in possession of drugs. Furthermore, the search complained of, conducted by the plaintiff's own mother, was justified, and was not a significant invasion of the plaintiff's privacy. The search of the plaintiff's pants was not unreasonable given the suspicions of the defendants and it was directly related to the search for evidence of wrong-doing. In addition, after the plaintiff's mother arrived, the plaintiff did not protest the search. Finally, the nature of the concern in this case cannot be doubted. With the rise of drug use, and especially marijuana use, amongst high school students, inaction on the part of teachers and administrators will only make the situation worse. Deterring drug use by school children is an important and compelling governmental concern, as detailed in <u>Veronia</u> and <u>T.L.O.</u> The failure of defendant, Principal Cipriano, to do anything less, given her suspicions,

could have amounted to a dereliction of her duties, both for Kelly Phaneuf and other students sakes.

## Qualified Immunity

**II.  There is no constitutional violation here, but even if there were, the Defendants are entitled to qualified immunity on this claim because there is insufficient guidance in the Second Circuit as to when a strip search for drugs based on individualized suspicion is reasonable.**

Qualified immunity shields state actors from personal liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982), "or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights." Brown v. D'Amico, 35 F.3d 97, 99 (2d Cir. App. 1994); see also Walker v. McClellan, 126 F.3d 127, 129 (2d Cir. App. 1997); Davidson v. Scully, 114 F.3d 12, 14 (2d Cir. 1997); Gardiner v. Incorporated Village of Endicott, 50 F.3d 151, 156 (2d Cir. App. 1995).

Requiring that a constitutional right be clearly established means that liability only attaches if "the contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." United States v. Lanier, 520 U.S. 259, 270 (1997). In other words, a defendant is entitled to "fair warning" that his conduct deprived his victim of a constitutional right. Hope v. Pelzer, 536 U.S. 730 (2002).

It is well-established that if, at the time of the complained of conduct, the law of the Supreme Court or the Second Circuit has not clearly established that such conduct violates the Constitution, the government actor is entitled to qualified immunity.

Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 531 (10th Cir. App. 1998); Russell v. Scully, 15 F.3d 219, 223 (2d Cir. App. 1993) (defendant entitled to qualified immunity because complained of conduct did not violate a clearly established right based upon "the caselaw of the Supreme Court and this circuit").

>   A.  **The Defendants committed no constitutional violation whatsoever; however even if the Second Circuit or the Supreme Court were ultimately rule that the search in question did violate the Fourth Amendment, this principle was not clearly established at the time the violation occurred, nor even today.**

There has been no Supreme Court decision nor any decision by the United States Court of Appeals for the Second Circuit addressing the issue presented here, i.e. what constitutes a reasonable search for drugs where, as here, individualized suspicion existed and the search is conducted in private by the plaintiff's own mother with a nurse of the same sex present.

The Supreme Court has clearly held that students are entitled to diminished Fourth Amendment protection, and may be subjected to invasive searches, T.L.O, 469 U.S. 325, even absent any individualized suspicion whatsoever, Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646 (1995); given this, it is not clearly established that Principal Cipriano's decision to search the plaintiff's person, after receiving a credible and specific tip that the plaintiff possessed marijuana in her pants, violated the Constitution.

> For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." Lassiter v. Alabama A & M Univ., Bd. of Trustees, 1994 U.S. App. LEXIS 22734 (11th Cir. App. 1994)

Without practical and similar fact-based applications to go by, the school officials in this case were left to interpret, on their own, the vague terms: "measures reasonably

related to the objectives of the search," and "not excessively intrusive in light of the age and sex of the student and the nature of the infraction." T.L.O., 469 U.S. at 342. Accordingly, this motion should be GRANTED because the Defendants are entitled to qualified immunity based on the fact that neither the Supreme Court nor any court in this circuit, on or before June 7, 2002 had ever applied the test established in T.L.O. to define a reasonable (or unreasonable) search in the context of facts materially similar to those of this school search.

III.  **The plaintiff's state law claims alleging negligence and negligent infliction of emotional distress as against Principal Cipriano, Doreen Fraikin, Superintendent Binkowski and the Town of Plainville fail on the basis that the Defendants are clearly entitled to qualified governmental immunity for their discretionary actions.**

The Connecticut Supreme Court has stated "municipalities and their employees or agents have immunity from negligence liability for governmental acts involving the exercise of judgment or discretion." Elliot v. Waterbury, 245 Conn. 385, 411 (1998). The exercise of judgment is the hallmark of discretionary acts for which a public officer would have qualified immunity from a negligence claim. Colon v. City of New Haven, 60 Conn. App. 178, (2000), Cert. Denied, 255 Conn. 908. The Courts may properly decide whether governmental immunity applies as a matter of law. Shore v. Stonington, 187 Conn. at 157 (Affirmed trial court entry of summary judgment for defendants based on governmental immunity).

It is undisputed that in this case the defendants' actions involved a high degree of discretion. The plaintiff can present no evidence to refute that the nature of the defendants' action with respect to the issues that gave rise to this suit are highly discretionary. Furthermore, the plaintiff does not qualify for any of the narrow exceptions

to this immunity. Thus the Court should GRANT this motion in favor of the defendants as to Counts Three, Four, Five and Thirteen.

IV. **The plaintiff's state law claims alleging intentional infliction of emotional distress and invasion of privacy also fail on the basis that the plaintiffs present no evidence of mens rea or publication, respectively.**

A. Invasion of Privacy.

Plaintiff also improperly alleges the tort of invasion of privacy as against Principal Cipriano and Nurse Fraikin. In Connecticut, invasion of privacy is defined as "publicity that unreasonably places the other in a false light before the public." Restatement (Second) Torts, § 652A; Goodrich v. Waterbury Republican-American, Inc., 188 Conn. 107, 128 (1982). The elements of this tort in Connecticut include the requirement that "(a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." Restatement (Second) Torts, § 652E; Goodrich v. Waterbury Republican-American, Inc., supra at 131. Moreover, the essence of such a claim is that the published matter be both untrue and such a "major misrepresentation of [the plaintiff's] character, history, activities or beliefs that serious offense may reasonably be expected to be taken" by a reasonable person under the circumstances. Id.

The plaintiff has failed to allege or present any credible evidence sufficient to prove any unprivileged publication or malice, both essential elements of the claim. Furthermore, the plaintiff has not alleged a severe injury which would satisfy a prima facie claim for negligent infliction of emotional distress. Thus summary judgment should be GRANTED as to Counts Six and Seven of the plaintiff's operative complaint.

### B. Intentional Infliction of Emotional Distress

Plaintiff alleges a claim for intentional infliction of emotional distress based on Principal Cipriano and Nurse Fraikin's involvement in the search that gave rise to this suit. There are four elements that must be established for a finding of intentional infliction of emotional distress: (1) that the defendant intended to inflict emotional distress, or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the conduct of the defendant was the cause of any distress experienced by the plaintiff; and (4) that the emotional distress sustained by the plaintiff was severe. Petyan v. Ellis, 200 Conn. 243, 253-54 (1986). In order to be considered extreme and outrageous, the conduct of which the plaintiff complains must be found to exceed all bounds usually tolerated by decent society, of a nature which is especially calculated to cause and does cause mental distress of a very serious kind. Id.

This claim must fail because the plaintiff has failed to present any credible evidence that the defendants intended to harm them emotionally, acted recklessly or that their actions were extreme and outrageous. For these reasons the Court should GRANT this motion in favor of the defendants as to Counts Eight and Nine.

### Conclusion

As education "is perhaps the most important function" of government, Brown v. Board of Education, 347 U.S. 483, 493 (1954), the town and its officials in this case have a heightened obligation to safeguard the students whom are compelled to attend school from the evils of drug use. The special need for an immediate response to behavior that

threatens either the safety of schoolchildren or the educational process itself justifies the search of the plaintiff in this case and the manner in which it was conducted.

The Defendants' Motion for Summary Judgment should be granted. First, the search was reasonable at its inception and in its scope in light of the T.L.O. ruling. Second, in the alternative, the defendants are entitled to qualified immunity based on the fact that there is insufficient preexisting law in this jurisdiction upon which a reasonable school official would have been able to determine that the search in question would violate a student's constitutional rights. Third, the plaintiff has failed to meet its burden of production with respect to the state law claims alleged in her complaint. Accordingly this Court should GRANT this Motion for Summary Judgment in all respects.

Respectfully Submitted,

THE DEFENDANTS,
ROSEMARIE CIPRIANO,
DORENE M FRAIKIN,
KATHLEEN BINKOWSKI,
TOWN OF PLAINVILLE,
PLAINVILLE BOARD OF EDUCATION,

By Their Attorney,

JAMES G. WILLIAMS, ESQ.
FEDERAL BAR NO CT 01938
WILLIAMS WALSH & O'CONNOR LLC
110 WASHINGTON AVE, 2ND FLR
NORTH HAVEN CT 06473
TEL (203) 234 6333
FAX (203) 234 6330

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was mailed, first class, postage prepaid, to the following counsel of record, this 17th day of march, 2004, to:

SHEILA J HANLEY ESQ
GESMONDE PIETROSIMONE & SGRIGNARI LLC
3127 WHITNEY AVE
HAMDEN CT 06518-2344
TEL (203) 407 4200
FAX (203) 407 4211

_____
James G. Williams