**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| KELLY PHANEUF, | : | |
| | : | |
| Plaintiff, | : | Civil No. 3:03CV00372 (AVC) |
| | : | |
| v. | : | |
| | : | |
| ROSE MARIE CIPRIANO, DORENE M. | : | |
| FRAIKIN, KATHLEEN BINKOWSKI, | : | |
| TOWN OF PLAINVILLE and PLAINVILLE | : | |
| BOARD OF EDUCATION, | : | |
| | : | |
| Defendants. | : | MAY 24, 2004 |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The plaintiff, Kelly Phaneuf, hereby submits her Memorandum of Law in Opposition to the Motion for Summary Judgment filed by the defendants, Rose Marie Cipriano, Dorene M. Fraikin, Kathleen Binkowski, Town of Plainville and Plainville Board of Education. For the reasons set forth herein, the defendants' Motion for Summary Judgment should be denied.

**I.**

**INTRODUCTION/PROCEDURAL HISTORY**

The plaintiff, Kelly Phaneuf, filed a complaint in state court, dated January 31, 2003, against the defendants, Rose Marie Cipriano, Dorene Fraikin, Kathleen Binkowski, Town of Plainville and Plainville Board of Education, seeking damages from a strip search of her

person that took place on or about June 7, 2002, which action was subsequently removed to

the federal court.  Specifically, the plaintiff alleges deprivation of rights pursuant to 42

U.S.C. § 1983 and other constitutional claims against all defendants (count one), a violation

of Article First, § 7 of the Connecticut Constitution against all defendants (count two),

negligence against defendants Cipriano, Fraikin and Binkowski (counts three, four and five),

invasion of privacy against defendants Cipriano and Fraikin (counts six and seven),

intentional infliction of emotional distress against defendants Cipriano and Fraikin (counts

eight and nine), negligent infliction of emotional distress against all defendants (counts ten,

eleven, twelve and sixteen), negligence pursuant to General Statutes § 52-557n against

defendants Town of Plainville and Board of Education (count thirteen), indemnity pursuant to

General Statutes § 7-465 against defendant Town of Plainville (count fourteen) and

indemnity pursuant to General Statutes § 10-235 against the defendant Board of Education

(count fifteen).

The defendants filed an answer and special defenses to the plaintiff's amended

complaint.  The defendants now move for summary judgment on the grounds that the search

was justified at its inception and was carried out in a reasonable fashion; that the defendants

are entitled to qualified immunity because there is insufficient guidance in the Second Circuit

as to when a strip search for drugs based on individualized suspicion is reasonable; that the

defendants are entitled to qualified governmental immunity for their discretionary actions on

the negligence and negligent infliction of emotional distress claims; and that the plaintiff has presented no evidence of mens rea or publication with respect to the intentional infliction of emotional distress and invasion of privacy claims.

In light of the foregoing, the plaintiff, Kelly Phaneuf, respectfully requests that the Court deny the defendants' Motion for Summary Judgment.

## II.

### STATEMENT OF THE FACTS

_____On June 7, 2002, the defendant, Rose Marie Cipriano, principal of Plainville High School, ordered a strip search of the plaintiff, Kelly Phaneuf, a high school senior at Plainville High School, immediately prior to the students' departure for their senior class picnic.  (See Plaintiff's Complaint, Count One, ¶¶ 8-9; Ex. A, Affidavit of Kelly Phaneuf, ¶ 4; Ex. B, Deposition Transcript of Rose Marie Cipriano, p. 14.)  The defendant Cipriano ordered said search after one of the plaintiff's fellow students, Michelle Cyr, made an accusation to another teacher, Cindy Birdsall, that the plaintiff had marijuana in her pants. (See Plaintiff's Complaint, Count One, ¶ 10.)  The accusation by Ms. Cyr was made prior to a previously scheduled senior class picnic, and subsequent to a search of each senior student's personal belongings in the school's auditorium that morning.  (See Ex. A, Aff. of Kelly Phaneuf, ¶¶ 5-8; Aff. of Rose Marie Cipriano, ¶¶ 8-9, attached to Defendants' Memorandum.) _____

_____After being made aware of said accusation, the defendant Cipriano boarded the bus that the plaintiff was on and requested that the plaintiff exit the bus, in the presence of her fellow senior students.  (See Ex. A, Aff. of Kelly Phaneuf, ¶ 7.)  Subsequently, the defendant Cipriano ordered the defendant, Dorene Fraikin, the substitute school nurse, to conduct a strip search of the plaintiff and, specifically, ordered the defendant Fraikin to search the plaintiff's underpants.  (See Plaintiff's Complaint, Count One, ¶ 9; Ex. B, Deposition Transcript of Rose Marie Cipriano, p. 14.)  Prior to the search, the defendant Cipriano contacted the plaintiff's mother, and coerced her into being present during said search by representing that the plaintiff would be unable to attend her senior class picnic and by indicating that they would contact the police if the search did not take place.  (See Plaintiff's Complaint, Count One, ¶ 12; Ex. C, Aff. of Lisa Phaneuf, ¶¶ 5-8.)  Based on her conversation with the defendant Cipriano, the plaintiff's mother rushed to Plainville High School and had a brief conversation with the defendant Cipriano.   (See Ex. C, Aff. of Lisa Phaneuf, ¶¶ 5-7.)  The plaintiff continuously protested a search of her person, and cried hysterically throughout the search.  (See Plaintiff's Complaint, Count One, ¶ 13; Ex. A, Aff. of Kelly Phaneuf, ¶ 17.)  During her high school years, the plaintiff suffered preexisting psychological problems, including depression, post traumatic stress disorder and an attempted suicide, which the school officials at Plainville High School knew or should have known about, and which

4

problems continue to date.  (See Ex. C, Aff. of Lisa Phaneuf, ¶¶ 20-21; Ex. D, Deposition

Transcript of Lisa Phaneuf, pp. 8-17.)

The strip search of the plaintiff took place in the nurse's office at Plainville High

School, in a room which contained no door, in the presence of the defendant Fraikin and the

plaintiff's mother.  (See Ex. A, Aff. of Kelly Phaneuf, ¶ 13; Ex. C, Aff. of Lisa Phaneuf, ¶ 10;

Ex. E, Deposition Transcript of Dorene Fraikin, p. 22.)  During the search, the plaintiff was

required to lower her skirt to her knees, pull her underpants away from her body, lifted her

shirt, and opened her bra, exposing her private body parts.  (See Ex. A, Aff. of Kelly Phaneuf,

¶ 15; Ex. C, Aff. of Lisa Phaneuf, ¶¶ 11-12.)  No marijuana was found on the plaintiff or her

belongings as a result of the search, and the plaintiff later learned that the search was based

on "false accusations."  (See Plaintiff's Complaint, Count One, ¶ 13; Ex. A, Aff. of Kelly

Phaneuf, ¶ 16; Ex. B, Deposition Transcript of Rose Marie Cipriano, p. 53; Ex. C, Aff. of

Lisa Phaneuf, ¶ 14.)  Despite the fact that the search was based on false accusations, no one

received any discipline or punishment, including the student, Michelle Cyr, and/or any other

school employee or administrator at Plainville High School, as a result of said strip search.

(See Ex. A, Aff. of Kelly Phaneuf, ¶ 18; Ex. B, Deposition Transcript of Rose Marie

Cipriano, pp. 50 and 71; Ex. C, Aff. of Lisa Phaneuf, ¶ 19.)  As a result of the strip search,

the plaintiff suffered emotional injuries, including but not limited to mental anguish, low self

esteem, humiliation and emotional distress.  (See Plaintiff's Complaint, Count One, ¶ 19 and

Counts Eight and Nine; Ex. A, Aff. of Kelly Phaneuf, ¶ 17; Ex. C, Aff. of Lisa Phaneuf, ¶ 22;

Ex. F, Deposition Transcript of Nancy Lewis, pp. 17-18.)

### III.

### STANDARDS GOVERNING THE MOTION FOR SUMMARY JUDGMENT

"Summary judgment is proper when the record, viewed in the light most favorable to the party against whom judgment is sought, reveals no genuine issue as to any material fact and the moving party is entitled to summary judgment as a matter of law."  (Internal quotation marks omitted.)  On Davis v. The Gap, Inc., 246 F.3d 152, 158 (2nd Cir. 2001); see also Fed. R. Civ. Proc. § 56 (c).  "No genuine issue exists if, on the basis of all the pleadings, affidavits and other papers on file, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, it appears that the evidence supporting the non-movant's case is so scant that a rational jury could not find in his favor."  (Internal quotation marks omitted.)  Centra Mortgage Holdings, Ltd. v. Mannix, 18 F. Supp.2nd 162 (1998); citing Gallo v. Prudential Residential Servs. Ltd. Partnership, 22 F.3d 1219 (2nd Cir. 1994). "[S]ummary judgment is highly unusual in a negligence action where the assessment of reasonableness generally is a factual question to be addressed by the jury."  King v. Crossland Savings Bank, 111 F.3d 251, 259 (2nd Cir. 1997).

**IV.**

**ARGUMENT**

A.     **The strip search ordered by the defendants was not justified at its inception and was excessively intrusive in light of the circumstances and, therefore, the defendants' motion for summary judgment should be denied.**

_____ "It is now beyond dispute that the Federal Constitution, by virtue of the Fourteenth Amendment, prohibits unreasonable searches and seizures by state officers. . . . Equally indisputable is the proposition that the Fourteenth Amendment protects the rights of students against encroachment by public school officials." (Citations omitted; internal quotation marks omitted.) New Jersey v. T.L.O., 469 U.S. 325, 334, 105 S. Ct. 733, 83 L. Ed. 2d 720 (1985).

"[T]he accommodation of the privacy interests of schoolchildren with the substantial need of teachers and administrators for freedom to maintain order in the schools does not require strict adherence to the requirement that searches be based on probable cause to believe that the subject of the search has violated or is violating the law." (Emphasis added.) New Jersey v. T.L.O., supra, 469 U.S. 341.  "Determining the reasonableness of any search involves a twofold inquiry: first, one must consider whether the . . . action was justified at its inception . . . second, one must determine whether the search as actually conducted was reasonably related in scope to the circumstances which justified the interference in the first place." (Citation omitted; internal quotation marks omitted.) Id.  "Under ordinary

8

circumstances, a search of a student by a teacher or other school official will be 'justified at

its inception' when there are reasonable grounds for suspecting that the search will turn up

evidence that the student has violated or is violating either the law or the rules of the school.

Such a search will be permissible in its scope when the measures adopted are *reasonably*

*related to the objectives of the search and not excessively intrusive in light of the age and sex*

*of the student and the nature of the infraction*." (Emphasis added.) Id., 341-42.

> **1.)     The search of the plaintiff was not justified at its inception because the defendants lacked the individualized suspicion necessary to require a search, and the search itself was based upon an unreliable tip, i.e., false accusation, made by one of the plaintiff's fellow students.**

In the instant case, the defendants required that a strip search be conducted on the

plaintiff, based on a "tip" by a student, Michelle Cyr, that the plaintiff had put marijuana

down her pants. The tip was clearly unreliable as the evidence demonstrates that the

defendant Cipriano later classified it as a false accusation, and the information was received

by the defendant Cipriano from one of the teachers at Plainville High School, Cindy Birdsall,

who was merely reporting the secondhand information received from Ms. Cyr. On the date

of said search, none of the defendants possessed firsthand knowledge, or individualized

suspicion, that the plaintiff might have marijuana on her person. Moreover, the accusation

should have been suspect to the defendants, since this type of accusation could potentially

lead to a highly invasive and humiliating search, and the entire senior class had already been subjected to a bag search on that date.

In their Memorandum, the defendants acknowledge that the principal had a duty to investigate the classmate's tip alleging the presence of marijuana in the plaintiff's pants. (See Defendants' Memorandum in Support of Motion for Summary Judgment, p. 7.) While the principal, of course, had a duty to further investigate the matter, Mrs. Cipriano chose not to investigate the matter further and, in lieu of any such investigation, ordered a strip search of the plaintiff. Moreover, in determining that the tip by Cyr was reliable, the defendants relied solely upon two factors: (1) that Ms. Cyr was an office aid at Plainville High School, and (2) that the tip was specific, in that she narrowed the alleged location of the marijuana to the plaintiff's pants. (See Defendants' Memorandum in Support of Motion for Summary Judgment, p. 8.) Based on these circumstances, the plaintiff submits that the search was completely unjustified at its inception and, therefore, the plaintiff respectfully requests that the Court deny the defendants' motion for summary judgment.

"In analyzing the tip of an informant, a court is to use a 'totality-of-the circumstances' inquiry and take into account the quantity and quality of the information comprising a tip. . . . *While there is concern that students will be motivated by malice and falsely implicate other students in wrongdoing, that type of situation would be analogous to the anonymous tip.* Because the tip lacks reliability, school officials would be required to fully investigate the

matter before a search or seizure would be warranted." (Citation omitted; emphasis added; internal quotation marks omitted.) <u>Fewless v. Board of Education of Wayland Union Schools</u>, 208 F.Supp.2d 806, 818 (W.D. Mich. 2002); citing <u>Williams v. Ellington</u>, 936 F.2d 881 (6th Cir. 1991).

In <u>Fewless</u>, a group of four students accused the plaintiff, a special education student, of possessing marijuana. Id., 809. Specifically, the students indicated that he possessed marijuana in a dime roll, and stated that they either saw the dime roll or the actual marijuana. Id. After a search of his gym bag, pockets and dime roll revealed no marijuana, the students claimed that the plaintiff evaded the first search because he hid the marijuana in his butt crack, resulting in a strip search of the plaintiff. Id., 810. In that case, the Court determined that the search violated the Fourth Amendment, since "the strip search . . . was neither justified at its inception by reasonable suspicion nor was it reasonable in scope." Id., 816. In fact, the Court concluded that "reasonable inferences . . . should have led a reasonable official *not* to strip search the student without further investigation." Id. In concluding that the defendants had far from enough evidence to form even a reasonable suspicion, the Court observed the following: that the four students made their report to the defendant *en masse* and not independently; that the initial search turned up no marijuana; that the information came from students, rather than firsthand, personal observations, and that the only adult making an accusation was based solely on secondhand information from students; that no

11

adult smelled marijuana on the student or reported him acting suspiciously; and that the accusation was one which might be expected to potentially result in a highly invasive and humiliating search.  Id., pp. 816-20.  Moreover, the Court noted that incidents occurring after the search at issue where the student was accused of possessing or using marijuana were irrelevant to the justification for the strip search.  Id., 820.

Moreover, in Williams v. Ellington, supra, 936 F.2d 881, a case relied upon by the defendants, the Court found that there was reasonable suspicion when a student's tip was backed by other observations.  Id.  In that case, a student's mother made an accusation that the plaintiff and another student had in their possession a clear vial containing white powder, and that they smelled the powder and then offered some to the student whose mother made the accusation.  Id.  In that case, however, the tip was deemed reliable based on the fact that a teacher had independently observed the plaintiff acting strangely; that a teacher had previously found a note under the plaintiff's desk referencing "a rich man's drug;" that the principal spent several days investigating the allegation; and that, upon questioning, a fellow student, in the presence of the plaintiff, produced a vial containing drugs.  Id.

Here, the tip by Ms. Cyr was clearly lacking any indicia of reliability, and the strip search of the plaintiff's person resulted solely from these false accusations made by Cyr.  On the date of said strip search, the school officials failed to make any independent observations which would support the allegations made by Cyr.  Instead, the allegations were made by Ms.

Cyr to Ms. Birdsall in the presence of a group of students; no one smelled marijuana on the

plaintiff or reported her acting suspiciously; the plaintiff's bags had already been searched on

that date; and the accusation made by Ms. Cyr was one which might be expected to

potentially result in a highly invasive and humiliating search.  Moreover, the defendants point

to an incident that allegedly occurred at a picnic after the strip search took place, in an

apparent effort to justify the strip search that had previously taken place.  Based on the

foregoing, the plaintiff submits that the search was not justified at its inception and, therefore,

the Court should deny the defendants' motion for summary judgment.

### 2.)     The search itself, namely, the strip search of the plaintiff's person, was unreasonable in scope and excessively intrusive in light of the age and sex of the student and the nature of the infraction.

The strip search of the plaintiff was conducted in a room in the nurse's office at

Plainville High School, in the presence of the defendant, Dorene Fraikin, the substitute

school nurse, and the plaintiff's mother.  Despite the defendants' assertions to the contrary,

the room was not private, in that the room contained an open doorway, and the plaintiff was

in fact required to remove a majority of her clothing during said search.  Putting aside the fact

that the search was based on false accusations, the search was also excessively intrusive in

light of the age and sex of the plaintiff and the nature of the infraction.  The plaintiff was a

female high school senior, who was days away from graduating and about to attend her senior

class picnic.  Instead, the plaintiff was required to submit to a strip search of her person,

13

which search revealed a visual inspection of one or more of her body parts.  No marijuana

was found as a result of this search resulting from the false accusations made by Ms. Cyr.

Considering the evidence in the light most favorable to the plaintiff, the strip search

conducted by the defendants was clearly unreasonable in scope and excessively intrusive.

The evidence clearly demonstrates that the search was the result of false accusations made by

Ms. Cyr, and the search that took place in light of these false accusations was clearly

intrusive in light of the age and sex of the plaintiff.

The deposition testimony demonstrates that the plaintiff was wearing a skirt, sandals,

and a tank top on the date of the search.  (See  Ex. B, Deposition Transcript of Rose Marie

Cipriano, pp. 14, 41-42;  Ex. E, Deposition Transcript of Lisa Phaneuf, p. 35; Ex. G,

Deposition Transcript of Kelly Phaneuf, p. 53.)  Based on the deposition testimony elicited,

the defendant Cipriano ordered a search of the plaintiff's underpants.  (See Ex. B, Deposition

Transcript of Rose Marie Cipriano, p. 14.)  The plaintiff testified that she was required to pull

her shirt up around her neck while her mother and the defendant Fraikin visually inspected

her chest area.  (See Ex. G, Deposition Transcript of Kelly Phaneuf, p. 68.)  She further

testified that she dropped her skirt to her ankles, while her mother had to visually inspect her

private areas, as well as her buttocks, upon the direction of the defendant Fraikin.  (See Ex.

G, Deposition Transcript of Kelly Phaneuf, pp. 68-69.)  The plaintiff testified that the

defendant Fraikin visually inspected her person, and that the defendant Fraikin also watched

14

the plaintiff's mother visually inspect her person.  (See Ex. G, Deposition Transcript of Kelly Phaneuf, p. 69.)

The plaintiff's mother, Lisa Phaneuf, who was also present during the search, testified that her daughter initially pulled down her bra so that the defendant Fraikin and her mother could see there was nothing there.  (See Ex. D, Deposition Transcript of Lisa Phaneuf, p. 35.) Lisa Phaneuf further testified that, after the plaintiff pulled down her bra, she then pulled up the back of her shirt to indicate that nothing was there.  (See Ex. D, Deposition Transcript of Lisa Phaneuf, p. 36.)  She testified that her daughter then took her skirt down and, at that point, she inquired of the defendant Fraikin as to whether her daughter needed to do anything else.  (See Ex. D, Deposition Transcript of Lisa Phaneuf, p. 36.)  As a result of the defendant Fraikin's affirmative response, Lisa Phaneuf further noted that her daughter then lowered her panties, while screaming and crying, and turned around so that her mother and the defendant Fraikin could view her.  (See Ex. D, Deposition Transcript of Lisa Phaneuf, p. 36-37.)

The defendants cite to four cases in support of their theory that "the situation was handled professionally and did not violate any of the plaintiff's constitutional rights," however, the plaintiff submits that all four cases are distinguishable from the instant case. (See Defendants' Memorandum, pp. 9-10.)  For instance, in Justice v. City of Peachtree City, 961 F.2d 188, 193 (11th Cir. App. 1992), a strip search was conducted of a juvenile arrestee, and in Widener v. Frye, 809 F. Supp. 35 (S.D. Ohio 1992), aff'd, 12 F.3d 215 (6th Cir. App.

1991), the search was conducted by two security guards and, as noted by the defendants, the student was not required to remove his underwear.  (See Defendants' Memorandum, p. 10.) Moreover, the defendants cite to <u>Cornfield v. Consolidated High School Dist. No. 230</u>, 991 F.2d 1316 (7th Cir. App. 1993) and <u>Singleton v. Board of Education</u>, 894 F. Supp. 386 (D. Kan. 1995), in support of their theory that the strip search in this case was not excessively intrusive.  However, in <u>Cornfield v. Consolidated High School Dist. No. 230</u>, supra, 991 F.2d 1316, the strip search was based upon numerous drug related incidents reported by the teachers and aides, and the independent observations of a bulge in the student's pants, and in <u>Singleton v. Board of Education</u>, supra, 894 F. Supp. 386, the student was not required to remove his underwear.  The plaintiff submits that all four of these cases are distinguishable, because the search of the plaintiff's person was not conducted by either the police or security guards, and the plaintiff was specifically required to remove clothing, upon the direction of the defendant Fraikin, which included her shirt, bra, skirt and panties.

The plaintiff would instead direct the Court to <u>Fewless v. Board of Ed.</u>, supra, 208 F.Supp.2d 806, a case factually similar to the instant action.  In that case, the Court found that "the search performed seems unlikely to have discovered marijuana placed deeply between the buttocks."  Id., 820.  Specifically, the Court observed that "[a] strip search which has no hope of achieving its purported aim is not reasonable in scope."  Id.  Nevertheless, the Court clarified that while "[d]oing a visual inspection of the perianal area would be the only true

16

way to rule out possession of marijuana between the buttocks . . . the invasiveness of that

type of search would have rendered it unreasonable in scope as well." Id., n. 15.

Here, the search performed as to the plaintiff's shirt and bra, as well as the visual

inspection of her rectal area, would seem unlikely to reveal the existence of any marijuana

that was simply placed down her underpants. As the Court noted in Fewless, "assuming an

otherwise constitutionally-justified search, a student could be asked to shake his or her

underwear, *while not exposing themselves*, to see if any contraband were to come loose and

become visible beneath the underwear." (Emphasis added.) Id., 820. In this case, however,

the defendant Cipriano specifically ordered the search of the plaintiff's underwear and,

specifically, directed the defendant Fraikin to "open and check" that area. (See Ex. B,

Deposition Testimony of Rose Marie Cipriano, p. 39-40.) The defendant Cipriano testified

that she never inquired if anything was searched other than the plaintiff's underpants, and

conceded that it would have been unnecessary for the plaintiff to lift up her shirt and bra,

based on the type of search requested. (See Ex. B, Deposition Testimony of Rose Marie

Cipriano, p. 44.)

Since the strip search of the plaintiff had no hope of achieving its purported aim, it

was clearly unreasonable in scope. The search went above and beyond what was requested,

namely, determining whether the plaintiff had put marijuana down her pants. While it may or

may not have been appropriate for the defendants to request that the plaintiff shake her

underwear, it was clearly intrusive for the defendant Fraikin to require that her underwear be

lowered, that her shirt and bra be checked, and that her anal area be visually inspected.  By

the school principal's own deposition testimony, such a search would be beyond the search

that was requested of the plaintiff's person.  (See Ex. B, Deposition Transcript of Rose Marie

Cipriano, p. 44.)

For these reasons, the plaintiff submits that the strip search of her person was

unreasonable in scope and excessively intrusive in light of her age and sex and the nature of

the infraction.  Accordingly, the plaintiff respectfully requests that the Court deny the

defendants' motion for summary judgment on this basis.

**B.     The defendants should not be entitled to qualified immunity because there is
        sufficient guidance in the Second Circuit pertaining to strip searches of students,
        including but not limited to the Court' decision in <u>New Jersey v. T.L.O.</u>, 469 U.S.
        325, 105 S. Ct. 733, 83 L. Ed. 2d. 720 (1985), analogous case law and common
        sense.**

_____The defendants argue that they are entitled to qualified immunity on this claim

because there is insufficient guidance in the Second Circuit as to when a strip search for

drugs based on individualized suspicion is reasonable.  (See Defendants' Memorandum,

pp.11-13.)  The plaintiff submits, however, that the case law was clear on the date of the

plaintiff's search, as the defendants were aware of <u>New Jersey v. T.L.O.</u>, 469 U.S. 325, 105

S. Ct. 733, 83 L. Ed. 2d 720 (1985), and the Courts have determined that the right may be

established by both common sense and analogous case law.  Accordingly, the plaintiff

contends that the defendants should not be entitled to qualified immunity for their actions relating to the strip search of the plaintiff's person.

"The doctrine of qualified immunity protects state officials from civil liability for actions performed in the course of their duties if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." (Internal quotation marks omitted.) Luna v. Pico, 356 F.3d 481, 490 (2nd Cir. 2004). "The doctrine protects officials who act in ways they reasonably believe to be lawful." (Internal quotation marks omitted.) Id. "Hence, a defendant is not liable if he did not violate clearly established law *or* it was objectively reasonable for him to believe that he was not violating clearly established law." (Emphasis in original.) Id. The Court has held that "[a] right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant [would] have understood from the existing law that [her] conduct was unlawful." (Internal quotation marks omitted.) Id.

The defendants argue that "the school officials in this case were left to interpret, on their own, the vague terms: 'measures reasonably related to the objectives of the search,' and 'not excessively intrusive in light of the age of the student and the nature of the infraction.'" (See Defendants' Memorandum, pp. 12-13.) The defendants contend, therefore, that they "are entitled to qualified immunity based on the fact that neither the Supreme Court nor any

19

court in this circuit, on or before June 7, 2002 had ever applied the test established in T.L.O.

to define a reasonable (or unreasonable) search in the context of facts materially similar to

those of this school search."  (See Defendants' Memorandum, p. 13.)

    At the time the search of the plaintiff's person took place, the defendants were clearly

aware of New Jersey v. T.L.O., supra, 469 U.S. 325, which case set forth a specific standard

to be applied to searches of students.  In that case, the Court determined that "the legality of a

search of a student should depend simply on the reasonableness, under all the circumstances,

of the search.  Determining the reasonableness of any search involves a twofold inquiry: first,

one must consider whether the . . . action was justified at its inception . . . second, one must

determine whether the search as actually conducted was reasonably related in scope to the

circumstances which justified the interference in the first place."  (Citation omitted; internal

quotation marks omitted.)  Id., 341.  The plaintiff submits that this case clearly sets forth the

standard to determine what would constitute a reasonable or unreasonable search in the

school context.

    Despite the defendants' assertions to the contrary, however, there is case law in the

Second Circuit pertaining to searches of students in the school context.  For instance, in

M.M. v. Anker, 607 F.2d 588 (2nd Cir. 1979), the Court found that "when a teacher conducts

a highly intrusive invasion such as the strip search in this case, it is reasonable to require that

probable cause be present."  Id.  "[A]s the intrusiveness of the search intensifies, the standard

of Fourth Amendment 'reasonableness' approaches probable cause." Id.  While the case was decided prior to the decision in New Jersey v. T.L.O., the case actually provides greater constitutional protection than that provided in New Jersey v. T.L.O., and states are permitted to provide their residents with greater constitutional protections.  In M.M. v. Anker, the Court addressed searches conducted based on mere suspicion, and found that it is reasonable to require probable cause when a strip search is predicated on nothing more than the mere suspicion.  Id.  Moreover, this Second Circuit case is noted in New Jersey v. T.L.O., for the proposition that the probable cause standard is applicable where the search is highly intrusive.  New Jersey v. T.L.O., supra, 469 U.S. 325, 333 n.2.  Accordingly, the defendants would have also been aware of the existence of this Second Circuit opinion, and arguably the Court would apply a probable cause standard to the instant case.

Moreover, in Rogers v. Board of Education, 252 Conn. 753, 749 A.2d 1173 (2000), the Court held that a board of education could terminate an assistant principal's employment contract, with respect to an incident where the assistant principal ordered that a teacher conduct a strip search of fifth and sixth grade students.  Id.  In that case, "[t]he plaintiff . . . did nothing either to investigate how the searches of the girls were being conducted or to halt the searches, even though she was in charge until the search incident concluded.  In fact, the plaintiff left the area before the searches she had ordered were completed."  (Emphasis added.)  Id., 757.  The plaintiff submits that the defendants should have been aware of this

21

Connecticut Supreme Court case, which decision clearly turned on the assistant principal's failure to properly investigate the strip search, as well as the fact that she left the area prior to the completion of the search.  Despite the fact that <u>Rogers v. Board of Education</u>, supra, 252 Conn. 753, involves the termination of the assistant principal's employment contract, the plaintiff submits that the case nevertheless contains facts strikingly similar to the instant case, and would have provided sufficient guidance to the defendants with respect to their actions or inactions in the instant case.

Should the Court find that these cases fail to provide sufficient guidance, the plaintiff additionally disagrees with the defendants that the Court is limited merely to Supreme Court or Second Circuit cases in determining whether the law set forth in <u>New Jersey v. T.L.O.</u> was clearly established.  "It is unclear the extent to which [the Court] may rely on the case law of other circuits to determine whether the law was clearly established." <u>Poe v. Leonard</u>, 282 F.3d 123, 142, n.15 (2nd Cir. 2002).  The Court noted that the Supreme Court cases providing for the "clearly established rule" did not directly address the issue, but noted that the opinions in the Second Circuit differed on the issue of whether they could rely upon the case law of other circuits.  Id.  The plaintiff submits that there is sufficient case law that exists on this issue, including <u>New Jersey v. T.L.O.</u> and case law from other circuits and, therefore, the case law provides sufficient guidance as to when a strip search of a student is either reasonable or unreasonable.  See, e.g., <u>Cornfield v. Consolidated High School Dist. No. 230,</u>

supra, 991 F.2d 1316 (applying the standard set forth in <u>New Jersey v. T.L.O.</u> and upholding

the search, based upon the fact that there were numerous drug-related incidents reported by

various teachers and aides, as well as personal observations by the teaches and aides);

<u>Williams v. Ellington</u>, supra, 936 F.2d 881 (6th Cir. 1991) (applying the standard set forth in

<u>New Jersey v. T.L.O.</u> and upholding the search, because additional evidence was presented,

upon investigation, to warrant the search besides a mere suspicion).  Accordingly, these cases

demonstrate that a school official needs more than mere suspicion in order to conduct a strip

search of a student.

     Lastly, the plaintiff submits that any reasonable individual would have understood

that his or her conduct was unlawful, whether by applying the clearly established case law or

by merely applying common sense.  In this case, the defendant Cipriano ordered that a strip

search be conducted of the plaintiff, based on nothing other than an unsubstantiated tip made

by Ms. Cyr in the presence of other students, which proved itself to be a false accusation.

The defendants in this case failed to investigate the tip made by Ms. Cyr, even though the

defendant Cipriano could not recall the identity of the informant, or the other students

present, until after the search had taken place.  (See Ex. B, Deposition Transcript of Rose

Marie Cipriano, pp. 31–33.)  Moreover, the defendant Fraikin, the substitute school nurse,

was uncomfortable with the search and expressed hesitancy and apprehension with respect to

performing a search of the plaintiff's person.  (See Ex. E, Deposition Transcript of Dorene

Fraikin, p. 15.)

   The defendants should have realized that their conduct was unlawful, because none of

the defendants in this case even attempted to investigate or substantiate the tip made by one

of their students, and instead resorted to conducting a strip search of one of their other

students, the plaintiff.  It seems clear that the defendant Fraikin, who expressed hesitancy and

apprehension about the search, was at least questioning whether the search of the plaintiff's

person may be lawful, however, she nonetheless participated in the search.

   The plaintiff argues that there is sufficient guidance in the Second Circuit with respect

to the standard utilized in searches of students.  Regardless of whether the probable cause

standard or the individualized suspicion standard is used, the plaintiff submits that the search

was unreasonable and excessively intrusive and that any reasonable defendant should have

understood that their conduct was unlawful.  Accordingly, the plaintiff submits that the

defendants should not be entitled to qualified immunity with respect to their actions in this

case and, therefore, the defendants' motion for summary judgment should be denied.

**C.    The defendants are not entitled to qualified governmental immunity for their actions with respect to the plaintiff's state law claims alleging negligence and negligent infliction of emotional distress.**

The defendants argue that the plaintiff's claims against the defendants Cipriano, Fraikin, Binkowski, and the town of Plainville fail on the basis that these defendants are entitled to qualified governmental immunity for their discretionary actions.  While the plaintiff does not dispute that the defendants' actions involved discretion, the plaintiff nevertheless contends that the defendants are not entitled to governmental immunity in this instance because the plaintiff falls within an identifiable class of persons, namely, schoolchildren, subject to imminent harm and, therefore, the defendants owed a duty to her.

"Although municipalities are generally immune from liability in tort, municipal employees historically were personally liable for their own tortious conduct. . . . The doctrine of governmental immunity has provided some exceptions to the general rule of tort liability for municipal employees.  [A] municipal employee . . . has a qualified immunity in the performance of a governmental duty, but he may be liable if he performs a ministerial act, as opposed to a discretionary act."  (Citations omitted; internal quotation marks omitted.)  Burns v. Board of Education, 228 Conn. 640, 645, 638 A.2d 1 (1994).  One of the recognized exceptions to the qualified immunity of a municipal employee is the exception "permitting a tort action in circumstances of perceptible imminent harm to an identifiable person."  Id., 645-46.

25

In Burns v. Board of Education, supra, 228 Conn. 640, the Court determined that the "superintendent of schools bears the responsibility for failing to act to prevent the risk of imminent harm to school children as an identifiable class of beneficiaries of his statutory duty of care." Id., 649. "At least during school hours on school days . . . the superintendent has the duty to protect the pupils in the board's custody from dangers that may reasonably be anticipated." Id. In that case, the Court concluded "that the plaintiff school child was one of a class of foreseeable victims to whom the superintendent owed a duty of protection in relation to the maintenance and safety of the school grounds, and accordingly governmental immunity is no defense." Id., 650.

Further, in Rogers v. Board of Education, supra, 252 Conn. 753, the assistant principal "*did nothing* either *to investigate* how the searches of the girls were being conducted or to halt the searches, even though she was in charge until the search incident concluded. In fact, *the plaintiff left the area* before the searches she had ordered were completed." (Emphasis added.) Id., 757. In that case, the Court could not "ignore the fact that the *plaintiff's action compromised the privacy of the students whom it was her duty to protect* through the enforcement of the board's policies." (Emphasis added.) Id., 771. In fact, the defendants admit that "[a]s principal, Mrs. Cipriano is responsible for the safety and welfare of the students at Plainville High School." (See Defendants' Statement of Material Facts, ¶ 9.)

The plaintiff submits that this reasoning should apply to the instant case, since the plaintiff was attending Plainville High School as a high school senior on June 7, 2002, and, therefore, she was an identifiable class of beneficiaries within the defendants' statutory duty of care. The defendants had a duty to protect the pupils in the board's custody, including the plaintiff, from dangers that may reasonably be anticipated, and were responsible for the safety and welfare of the students at Plainville High School. When the defendants' failed to investigate the allegation made by Ms. Cyr and strip searched the plaintiff, the defendants breached any duty owed to the plaintiff and failed to protect the plaintiff, a pupil in the board's custody. The defendants should be held responsible in this instance for failing to act to prevent the risk of imminent harm to the plaintiff, and instead causing harm to the plaintiff by virtue of the strip search.

The plaintiff submits that there exists a genuine issue of material fact as to whether the defendants Cipriano, Fraikin, Binkowski and the town of Plainville, breached the duty of care owed to the plaintiff, a foreseeable victim, by placing her in likely imminent harm. Accordingly, the plaintiff respectfully submits that the defendants should not be entitled to qualified governmental immunity and, therefore, the defendants' motion for summary judgment should be denied.

27

**D.** **The plaintiff's claims for intentional infliction of emotional distress and invasion of privacy do not fail because the plaintiff has properly alleged these claims and presented evidence with respect to both of these claims**.

The defendants argue that the plaintiff's claim for intentional infliction of emotional distress fails because the plaintiff has failed to "present evidence that the defendants intended to harm them emotionally, acted recklessly or that their actions were extreme and outrageous." (See Defendants' Memorandum, p. 15.)  The defendants further argue that the plaintiff insufficiently alleges a cause of action for invasion of privacy against them.  In response, the plaintiff submits that she has alleged sufficiently claims for intentional infliction of emotional distress and invasion of privacy against the defendants.

**1.)** **The plaintiff has properly alleged a cause of action for intentional infliction of emotional distress against the individual defendants, and has presented credible evidence with respect to her claim.**

"It is well settled that, in order to state a claim for intentional infliction of emotional distress, [i]t must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe."  (Internal quotation marks omitted.)  Parsons v. United Technologies Corp., 243 Conn. 66, 101, 700 A.2d 655 (1997).  "[I]ntentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is

especially calculated to cause, and does cause, mental distress of a very serious kind . . . ." (Internal quotation marks omitted.)  <u>Deleo v. Reed</u>, Superior Court, judicial district of Stamford, Docket No. CV 99 0172243S (January 3, 2000, *Hickey, J.*) (Copy of case attached hereto as Exhibit H).

      "In speaking to extreme and outrageous conduct, our courts have noted that: [i]t is not enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous'!" (Internal quotation marks omitted.)  <u>Tartaglia v. Marina</u>, Superior Court, judicial district of Danbury, Docket No. 313696 (April 25, 1994, *Moraghan, J.*) (Copy of case attached hereto as Exhibit I).

      In her complaint, the plaintiff incorporates paragraphs one through thirteen into the counts alleging intentional infliction of emotional distress.  (See Plaintiff's Complaint, Counts Eight and Nine.)  Specifically, the plaintiff alleges that the defendant Cipriano ordered a full body strip search of her person on June 7, 2002.  (See Plaintiff's Complaint, Count One, ¶ 9.)  The plaintiff further alleges that the search was ordered without reasonable

or probable cause and was based upon another student's unsupported allegation that the plaintiff had placed marijuana in her pants.  (See Plaintiff's Complaint, Count One, ¶ 10.) The plaintiff also alleges that the search was executed without her consent and under extreme duress and coercion, and that her mother was similarly coerced into being present during said search.  (See Plaintiff's Complaint, Count One, ¶¶ 10 and 11.)  Despite the plaintiff's denials and protestations, the search was carried out against her will.  (See Plaintiff's Complaint, Count One, ¶ 13.)

In further support of her claim for emotional distress, the plaintiff alleged that the conduct of the defendants, Cipriano and Fraikin "was extreme and outrageous and went beyond all bounds of decency; and was willful, wanton, reckless, intentional, and in deliberate disregard of the likelihood that the plaintiff would suffer severe emotional distress as a result of such conduct."  (See Plaintiff's Complaint, Count Eight, ¶ 14; Count Nine, ¶ 14.)  The plaintiff further alleges that she suffered mental and emotional injuries as a result of the defendants' conduct.  (See Plaintiff's Complaint, Count Eight, ¶ 15; Count Nine, ¶ 15.)

First and foremost, the plaintiff submits that she has alleged sufficiently a cause of action for intentional infliction of emotional distress as against the defendants Cipriano and Fraikin.  Moreover, the plaintiff contends that the conduct by Cipriano and Fraikin, in ordering a strip search based on an unsubstantiated tip and in participating in said strip

search,  amounts to conduct that is so outrageous in character as to fall within the parameters

set forth by the case law allowing claims for intentional infliction of emotional distress.

In <u>Mary Beth G. v. City of Chicago</u>, 723 F.2d 1263 (7th Cir. 1983), the Court, in

considering the constitutionality of a strip search of an individual arrested for a misdemeanor,

the Court found visual strip searches to be "demeaning, dehumanizing, undignified,

humiliating, terrifying, unpleasant, embarrassing, repulsive, signifying degradation and

submission."  Id., 1272; see also <u>Roe v. Texas Dept. of Protective and Regulatory Services</u>,

299 F.3d 395, 405 n.11 (5th Cir. 2002); <u>Helton v. U.S.</u>, 191 F. Supp. 2d 179, 182 (2002).

The plaintiff has provided sufficient evidence to demonstrate the emotional effects

suffered by her as a result of the strip search on her person, as well as the outrageousness of

the search.  As previously mentioned, the plaintiff removed various articles of clothing during

the search, including her shirt, bra, skirt and panties, revealing her private body parts, all as

the result of a false accusation made by another student.  At her deposition, the plaintiff and

her mother both testified that the plaintiff's body parts were exposed during the search.  (See

Ex. G, Deposition Transcript of Kelly Phaneuf, pp. 68-69; Ex. D, Deposition Transcript of

Lisa Phaneuf, pp. 35-37.)  The plaintiff testified that she was crying hysterically after the

search; that her subsequent graduation was ruined; that she has gone through angst and

depression; that she has discussed the incident in therapy; and that the search increased her

preexisting insecurities, trust issues and emotional problems.  (See Ex. G, Deposition of Kelly Phaneuf, pp. 69, 88, 92, 96-98.)

There was also some deposition testimony from Lisa Phaneuf and Nancy Lewis, the regular school nurse at Plainville High School, relating to the emotional impact of the search on the plaintiff.  Specifically, Lisa Phaneuf testified that the plaintiff was screaming and crying hysterically throughout the search.  (See Ex. D, Deposition Transcript of Lisa Phaneuf, pp. 34 and 36.)  Lisa Phaneuf testified that her daughter was uncontrollable on the way home, and that she took a half hour to forty-five minute shower after the search.  (See Ex. D, Deposition Transcript of Lisa Phaneuf, p. 41.)  Moreover, Ms. Lewis testified that the plaintiff had told her that she "felt like she was raped," as a result of the search that occurred.  (See Ex. F, Deposition Transcript of Nancy Lewis, p. 17.)  Ms. Lewis also testified that the plaintiff told her that she was humiliated; that she would always remember her senior class picnic because of the search; and that she needed to use her asthma inhaler based on how upset she was over the search.  (See Ex. F, Deposition Transcript of Nancy Lewis, pp. 17-18.)

The plaintiff submits that she has sufficiently alleged a claim for intentional infliction of emotional distress, and that she has provided sufficient evidence in support of her claim, including the outrageousness of said search.  Specifically, the plaintiff has demonstrated that she was humiliated by the search, suffered depression, exacerbated her pre-existing emotional problems, and that she felt like she had been raped as a result of said strip search.  Again, this

was a strip search conducted on a female high school student, as a result of an

unsubstantiated tip by another student that the plaintiff had placed marijuana down her pants.

Accordingly, the plaintiff submits that there exists a genuine issue of material fact with

respect to her claim for intentional infliction of emotional distress and, therefore, respectfully

requests that the Court deny the defendants' motion for summary judgment on this basis.

### 2.) The plaintiff has alleged sufficiently a cause of action for invasion of privacy against the individual defendants.

In their memorandum, the defendants argue that the plaintiff improperly alleges the

tort of invasion of privacy in her Complaint.  The defendants mistakenly assume, however,

that the plaintiff is making claims based upon the category of invasion of privacy pertaining

to false light.  Instead, the plaintiff asserts her invasion of privacy claims based upon the first

category, namely, unreasonable intrusion upon seclusion.  The plaintiff submits that she

alleges sufficiently invasion of privacy in her Complaint and, therefore, the defendants'

motion for summary judgment should be denied.

"The Connecticut Supreme Court has recognized a cause of action for invasion of

privacy and has adopted four categories as defined in § 652A of the Restatement (Second) of

Torts . . . . The four categories of invasion of privacy are: (a) unreasonable intrusion upon the

seclusion of another; (b) appropriation of the other's name or likeness; (c) unreasonable

publicity given to the other's private life; or (d) publicity that unreasonably places the other in

a false light before the public." <u>Benton v. Simpson</u>, Superior Court, Docket No. CV 01

1385675S (September 18, 2002, *Rush, J.*) (Copy of case attached hereto as Exhibit J.)

      "To date, the Connecticut Appellate Courts have not set forth the necessary elements

of a claim for unreasonable intrusion upon seclusion . . . . However, several superior courts

have concluded that [i]n order to establish a claim for unreasonable intrusion upon the

seclusion of another, the plaintiffs must prove an intentional physical intrusion . . . upon the

private affairs or concerns of the plaintiffs which would be highly offensive to a reasonable

person." (Internal quotation marks omitted.) <u>Tapia v. Sikorsky Aircraft Division of United</u>

<u>Technologies Corp.</u>, Superior Court, Docket No. CV 95 327761S (June 3, 1998, *Stodolink,*

*J.*) (Copy of case attached hereto as Exhibit K.).

      In her complaint, the plaintiff similarly incorporates paragraphs one through thirteen

of her first count into the counts alleging invasion of privacy. (See Plaintiff's Complaint,

Counts Six and Seven.) The plaintiff further alleges that the full body strip search of the

plaintiff, without reasonable or probable cause, constituted an intentional physical intrusion

of the plaintiff's person, private affairs, and/or concerns. (See Plaintiff's Complaint, Count

Six, ¶ 14; Count Seven, ¶ 14.) The plaintiff also alleges that the defendants' actions were

particularly intrusive, as the plaintiff's body parts were viewed during the search, and that

such a search would be highly offensive to a reasonable person. (See Plaintiff's Complaint,

Count Six, ¶¶ 15-16; Count Seven, ¶¶ 15-16.) As a result of the strip search, the plaintiff

alleges that she suffered mental and emotional injuries.  (See Plaintiff's Complaint, Count

Six, ¶¶ 15-16; Count Seven, ¶¶ 15-16.)

Based on the plaintiff's allegations in her Complaint, and the facts set forth in Section

D (1), infra, the plaintiff submits that she has alleged sufficiently a cause of action for

invasion of privacy.  Moreover, the plaintiff's claims of invasion of privacy directly

correspond to her constitutional claims arising from the unlawful strip search of her person.

In Helton v. U.S., supra, 191 F. Supp. 2d 179, the Court reviewed the four categories

of invasion of privacy set forth in the Restatement (Second) of Torts § 625B.  Id.  "[U]nlike

some other types of invasion of privacy, intrusion does not require as an essential element the

publication of the information obtained."  (Internal quotation marks omitted.)  Id., 181.  The

Court concluded that "the alleged strip search of [the] plaintiffs satisfied the elements of the

tort of an intrusion upon seclusion."  Id., 182.  Specifically, the Court found that "the

allegation of a strip and squat search without reasonable suspicion that [the] plaintiffs were

concealing weapons or contraband satisfied the elements of intrusion upon seclusion."  Id.,

186.

The defendants merely misstate the claim for invasion of privacy alleged by the

plaintiff.  The plaintiff submits that she has alleged properly a claim for intrusion upon

seclusion, and that case law supports a finding that allegations of strip searches, without

reasonable or probable cause, satisfies the elements of intrusion upon seclusion.  The plaintiff

submits, therefore, that there exist genuine issues of fact with respect to her invasion of privacy claims and, therefore, the plaintiff respectfully requests that the Court deny the defendants' motion for summary judgment.

## IV.

## CONCLUSION

The plaintiff submits that the strip search ordered by the defendants of the plaintiff's person was not justified at its inception and was excessively intrusive in light of the circumstances, in that the search was not based on reasonable or probable cause. The plaintiff further submits that the defendants should not be entitled to qualified immunity because sufficient guidance exists in the Second Circuit pertaining to strip searches of students. Moreover, the plaintiff contends that the defendants should not be entitled to qualified governmental immunity, because a genuine issue of material fact exists as to whether the defendants breached the duty of care owed to the plaintiff, a foreseeable victim, by placing her in likely imminent harm during school hours on school grounds. Lastly, the plaintiff submits that she has alleged sufficiently her claims for intentional infliction of emotional distress and invasion of privacy, and that she has properly submitted evidence with respect to both of these claims. For these reasons, the plaintiff respectfully requests that the Court deny the defendants' motion for summary judgment.

**THE PLAINTIFF,**
**KELLY PHANEUF**


**By:**_____
    Sheila J. Hanley (ct 22566)
    Gesmonde, Pietrosimone & Sgrignari, L.L.C.
    3127 Whitney Avenue
    Hamden, CT 06518-2344
    (203) 407-4200


## **CERTIFICATION**

This is to certify that a copy of the foregoing was mailed, via first class, postage

prepaid, this 24th day of May, 2004 to:

    James G. Williams, Esq.
    Williams, Walsh & O'Connor, LLC
    110 Washington Avenue, Second Floor
    North Haven, CT 06473


_____
                   Sheila J. Hanley

37