```
 1                  UNITED STATES DISTRICT COURT

 2                    DISTRICT OF CONNECTICUT

 3

 4      - - - - - - - - - - - - - - - - x
        KELLY PHANEUF                   :
 5                                      :
                                        :
 6      VS                              : CV 99 0150760S
                                        :
 7                                      :
        ROSE MARIE CIPRIANO, DORENE M.  :
 8      FRAIKIN, KATHLEEN BINKOWSKI,    :
        TOWN OF PLAINVILLE, and PLAINVILLE:
 9      BOARD OF EDUCATION              :
        - - - - - - - - - - - - - - - - x
10

11            Deposition of ROSE MARIE CIPRIANO taken

12            pursuant to the Practice Book 13-26 et seq.,

13            before Amy C. Brewer, LSR, License #164,

14            Professional Shorthand Reporter and Notary

15            Public within and for the State of Connecticut,

16            held at the law offices of Williams, Walsh &

17            O'Connor, LLC, 110 Washington Avenue, Second

18            Floor, North Haven, Connecticut, on October 29,

19            2003 at 1:00 p.m.

20

21

22             DEL VECCHIO REPORTING SERVICES, LLC
                 PROFESSIONAL SHORTHAND REPORTERS
23
          117 RANDI DRIVE        100 PEARL ST., 14TH FL.
24       MADISON, CT 06443       HARTFORD, CT 06103-4506
          203 245-9583              800 839-6867
25
```

COPY

1                A P P E A R A N C E S:

2

3

4           ON BEHALF OF THE PLAINTIFF:

5           JAMES G. WILLIAMS, ESQUIRE

6        WILLIAMS, WALSH & O'CONNOR, LLC

7       110 WASHINGTON AVENUE, SECOND FLOOR

8              NORTH HAVEN, CT 06473

9

10

11          ON BEHALF OF THE DEFENDANT:

12           ATTORNEY SHEILA J. HANLEY

13      GESMONDE, PIETROSIMONE & SGRIGNARI, LLC

14              3127 WHITNEY AVENUE

15              HAMDEN, CT 06512

16

17

18

19

20

21

22

23

24

25

1    busses to load and just go to the picnic.
2        Q.    When you were explaining to Kelly she needed to be
3    check what did you mean by that?
4        A.    I was specific when I said we need to -- you're
5    going to have to have -- you need to have the nurse -- we'll
6    go to the nurse and you can -- she'll check your pants.
7        Q.    And was Kelly wearing pants that day?
8        A.    What I meant by pants would be the underpants.  She
9    either had very short shorts or very short thigh high skirt
10   on so it was underpants.
11       Q.    I will get to that.  After you had this
12   conversation with Kelly Phaneuf and Miss Birdsall where did
13   you go after that?
14       A.    We walked down to the nurse's office.  It's a very
15   short distance.
16       Q.    And at this time you were still just with Kelly
17   Phaneuf and Miss Birdsall?
18       A.    That's correct.
19       Q.    At some point did you have occasion to speak with
20   Kelly's mother, Lisa Phaneuf, on that day?
21       A.    Later.
22       Q.    Prior to the search?
23       A.    Explain what you mean.
24       Q.    Did you have a conversation --
25       A.    I am not clear with your question.

1  it down her pants. Who is Miss Birdsall?
2      A.  That's not exactly what I said. Miss Birdsall,
3  however, is a physical education/health teacher, certified
4  teacher at Plainville High School.
5      Q.  And is she still a teacher at Plainville High
6  School to this day?
7      A.  Yes, she is.
8      Q.  Are you aware of which students made the
9  representations that Kelly Phaneuf had marijuana on her
10 person?
11     A.  Am I aware now at this present time?
12     Q.  Yes.
13     A.  There were four girls.
14     Q.  And each of these four girls made separate
15 representations?
16     A.  Could you be clearer, more specific on that
17 question, please?
18     Q.  Okay. First of all, what are these four girls'
19 names?
20              MR. WILLIAMS: I'm going to instruct you
21          not to provide student names other than what's
22          contained in the record.
23              MS. HANLEY: Well, I believe they're
24          in there.
25              MR. WILLIAMS: Well, if they're in

```
 1              the record that's been disclosed you can
 2              reference the names.
 3      A.   On page two of my statement of Exhibit 4,
 4  Exhibit 4, towards the middle of the page, Michelle Cyr,
 5  Corrisa Chambrello, Becky Kislick and Pam Caruso.
 6  BY MS. HANLEY:
 7      Q.   Okay.  And out of these four girls, who made a
 8  representation that Kelly Phaneuf had marijuana on her person
 9  and who did they make these representations to?
10      A.   The representation was made to Cindy Birdsall.  And
11  after my full investigation, following the picnic, Michelle
12  Cyr.
13      Q.   So it's your understanding it was Michelle Cyr who
14  made the representation to Miss Birdsall?
15      A.   Yes.
16      Q.   Was this representation made in a group where all
17  of these four girls present at the time the representation
18  was made?
19      A.   When it was made to -- I was not present when it
20  was made to Miss Birdsall.
21      Q.   As it was portrayed to you after the picnic what is
22  your understanding who was present when Miss Birdsall was
23  informed that Kelly Phaneuf had marijuana on her person?
24               MR. WILLIAMS:  If you know.
25      A.   A group of students.
```

1    BY MS. HANLEY:
2        Q.   Prior to the search, did you have any knowledge of
3    any students' names who had made these representations to
4    Miss Birdsall?
5        A.   Yes.
6        Q.   And what did Miss Birdsall tell you, which names
7    did she give you prior to the search?
8        A.   Those four names.
9        Q.   Okay.  Now looking at Exhibit 4, the seventh
10   paragraph down, can you read that paragraph?
11       A.   I'm sorry, what page again?
12       Q.   The second page, the seventh paragraph that begins
13   "At the picnic".
14       A.   Yes.
15       Q.   Can you read that paragraph for me?
16       A.   "At the picnic, I asked Miss Birdsall the names of
17   the students who made the statement about Kelly Phaneuf."
18   The names of the four students, and then I said I would speak
19   with them later so there was the least suspicion possible to
20   Kelly.  When she first approached me, when Miss Birdsall
21   first approached me -- that's not on here -- and said that
22   she had been approached by a student and I asked her who they
23   were and I couldn't remember who they were, that's why at the
24   picnic, this is at that point is when I wrote those names
25   down.

```
 1   the search alone?
 2       A.   She was a substitute nurse and that she felt
 3   uncomfortable.
 4       Q.   I'm going to show you what's been marked as Exhibit
 5   5.  Have you ever reviewed that statement of Dorene Fraikin?
 6       A.   I have.
 7       Q.   Can you read paragraph three where it begins "I was
 8   instructed"?
 9       A.   I was instructed by the principal to perform a
10   search of the student's person.  Initially I refused feeling
11   it was outside my authority to conduct such an invasive
12   search.  At the least I required another person in the room
13   to witness my actions.
14       Q.   Okay.  Did you ask Miss Fraikin to simply perform a
15   search of Kelly's person or were you specific in stating that
16   you wanted her to only search Kelly Phaneuf's pants?
17       A.   For her to search her pants.
18       Q.   Okay.  Did Miss Fraikin explain to you why she felt
19   it was outside her authority to conduct such an invasive
20   search and why she felt it was invasive?
21       A.   What she said was I'm uncomfortable, I'm a
22   substitute nurse.
23       Q.   Okay.  So other than telling Miss Fraikin to search
24   Kelly Phaneuf's pants did you give Miss Fraikin any other
25   instructions?
```

```
 1        A.    No.
 2        Q.    To your knowledge --
 3        A.    I may have said -- no, other than to say that by to
 4   say to her underpants, to check around, open and check, check
 5   that area.
 6        Q.    And you asked Miss Fraikin to do that?
 7        A.    As the nurse.  I may have said to check her eyes.
 8        Q.    To your knowledge had Miss Fraikin ever previously
 9   performed or conducted a similar search on a student or
10   another person?
11        A.    I do not know.
12        Q.    Is there a reason why you yourself didn't conduct
13   the search of Kelly Phaneuf?
14        A.    If we had a student that was suspected of using
15   marijuana, may have smoked marijuana that we would have the
16   nurse check the individual to determine if they had used any
17   substances.
18        Q.    And where was the regular nurse that day?
19        A.    She was I believe to be at the picnic.  She left
20   early to be at the picnic grounds, to be at the campsite.
21        Q.    But generally, it's your testimony you would call
22   the nurse to perform such a search?
23        A.    Right.  Or take a student to the nurse to check if
24   we had suspicion that someone had been smoking marijuana or
25   we felt that they may have consumed alcohol or some other
```

1   drugs.

2       Q.  Okay.  And is there a reason why the regular nurse
3   wasn't called that day?

4       A.  She was -- had already left for the picnic.

5       Q.  I understand that.  But she wasn't contacted prior
6   to the search?

7       A.  If she was in transport and she did not have a cell
8   phone and this was the nurse that was on duty.  She was in
9   the nurse's office and she was on duty so that was the nurse
10  that was called.

11      Q.  So you felt comfortable having the substitute
12  school nurse conduct the search?

13      A.  Yes.

14      Q.  Was a pat down of Kelly Phaneuf's person ever
15  conducted?

16      A.  No.  You need to clarify that question for me,
17  please.

18      Q.  Was there ever a pat down over her clothing prior
19  to the search?

20      A.  She had -- no, unless her mother did it.

21      Q.  And to the best of your recollection can you again
22  testify as far as what you believe Kelly Phaneuf was wearing
23  on June 7, 2002?

24      A.  Yes.  A very -- I think it was a tank top that was
25  tight to her body and a very, very short skirt that would be

1  either it was short shorts or a thigh high skirt. I know she
2  had the skirt on when in the truck when I drove her to the
3  picnic and sandals. So there was no clothing on the arms, no
4  clothing on parts of the neck area, no clothing from the
5  thighs down to the ground other than sandals.
6      Q.   To your knowledge, prior to June 7, 2002 had Kelly
7  Phaneuf ever been previously disciplined at school for the
8  possession of marijuana?
9      A.   To the best of my knowledge, no.
10     Q.   Prior to June 7, 2002 had you ever observed Kelly
11 using or possessing marijuana?
12     A.   No.
13     Q.   Immediately after the search was finished, did you
14 speak with either Kelly or Lisa Phaneuf?
15     A.   I spoke with both of them.
16     Q.   Okay. And explain to me your conversation you had
17 first with Kelly Phaneuf immediately after the search?
18     A.   It was with both of them. It was directed to both
19 of them.
20     Q.   At the same time?
21     A.   I believe so. To the best of my recollection.
22     Q.   Can you recall what was said?
23     A.   That if Kelly still wanted to go to the picnic that
24 this was now concluded and if she still wanted to go to the
25 picnic I would be leaving at 10:00 and that she could ride

1              pants.
2                        MS. HANLEY:  Yes, but I'm asking what
3              her understanding was after the search had
4              taken place.
5                        MR. WILLIAMS:  She just told you she
6              didn't have any.
7     BY MS. HANLEY:
8         Q.   My question is did you ask if anything else was
9     searched, on Kelly Phaneuf was searched other than her
10    underpants?
11        A.   No.
12        Q.   Based on the search that was requested by you to
13    Miss Fraikin, would it have been necessary for Kelly Phaneuf
14    to lower her skirt to her knees?
15        A.   I don't know how tight her skirt was so that the
16    nurse could check the inside of the underpants.
17        Q.   And would it have been necessary for her underwear,
18    in order to be checked, to be pulled away from her body?
19        A.   Yes.
20        Q.   And based on the search you had requested of Kelly
21    Phaneuf would it have been necessary for her to lift up her
22    shirt and bra?
23        A.   No.
24        Q.   So if Kelly Phaneuf had been requested to either
25    lift up her shirt and or her bra that would have been

1   early Friday morning.  Would that be an accurate
2   representation of your conversation with Lisa Phaneuf on June
3   10?
4              MR. WILLIAMS:  I'm going to object to the
5         form.
6   A.   Yes.
7   BY MS. HANLEY:
8   Q.   And did you specifically reference the students'
9   names when you had this conversation with Lisa Phaneuf on
10  June 10, 2002?
11  A.   No, to the best of my recollection.
12  Q.   Were any of the previously mentioned students,
13  either Michelle Cyr, Corrisa Chambrello, Becky Kislick, Pam
14  Caruso, were they ever disciplined for making false
15  representations that Kelly had marijuana in her pants?
16  A.   No.
17  Q.   When students have made false representations about
18  other students in the past during your tenure at Plainville
19  High School what discipline, if any, is typically imposed on
20  students?
21             MR. WILLIAMS:  I'm going to object to the
22        question.
23  A.   If it was specific to an accusation of having
24  marijuana or drug possession and none was found then there
25  was no discipline to the students that had come forth with

1     Q.    Okay.  In the portion dated June 7, 2002 and the
2  second paragraph it states that Kelly Phaneuf arrived late to
3  the picnic with Mrs. Cipriano.  I asked Mrs. Cipriano what
4  had happened and the response was quote "false accusations",
5  correct?
6     A.    That's possible.
7     Q.    So you wouldn't disagree that you may have in fact
8  said this?
9     A.    I may have said that.
10    Q.    Did you ever represent to either Kelly or Lisa
11 Phaneuf on June 7, 2002 that the individual or individuals
12 who made the statements would be disciplined if no marijuana
13 was found on Kelly?
14    A.    What I said to the Phaneufs was that if it was
15 found that there was malicious intent for the accusation
16 being made then disciplinary action would take place.
17    Q.    I'm sorry, can you repeat that?  If marijuana was
18 found is that what you're saying?
19              MR. WILLIAMS:  No, she's saying if there
20          was malicious intent.
21 BY MS. HANLEY:
22    Q.    If the malicious intent was found?
23    A.    If it was found to be malicious intent why they
24 made the statement to the teacher.  Kelly was insisting that
25 this was said on purpose to hurt her, and she named a number

1    Q.   Would you disagree with Miss Lewis'
2  characterization in this report that you required that Miss
3  Fraikin perform a strip search of Kelly?
4    A.   I disagree with that.
5    Q.   Does Plainville High School have a policy against
6  sexual harassment?
7    A.   Yes.
8    Q.   To the best of your ability can you explain that
9  policy to me?
10   A.   I don't have the policy in front of me, but there's
11 also a district policy in that if the person believes that
12 they were sexually harassed then we would pursue an
13 investigation to determine the accuracy.
14   Q.   Were any school administrators including either
15 yourself or Miss Fraikin disciplined as a result of the June
16 7, 2002 search of Kelly Phaneuf?
17   A.   No.
18   Q.   Was any action taken at all by school
19 administrators after the search?
20   A.   No.
21   Q.   Going back to that one other search that was
22 conducted of possibly a male student, you testified that
23 documents are typically only kept for approximately one year?
24   A.   That's correct.
25   Q.   And would that be one year after they graduated or

```
 1                    C E R T I F I C A T E

 2

 3           I hereby certify that I am a Notary Public, in and
     for the State of Connecticut, duly commissioned and qualified
 4   to administer oaths.

 5           I further certify that the deponent named in the
     foregoing deposition was by me duly sworn, and thereupon
 6   testified as appears in the foregoing deposition; that said
     deposition was taken by me stenographically in the presence
 7   of counsel and reduced to typewriting under my direction, and
     the foregoing is a true and accurate transcript of the
 8   testimony.

 9           I further certify that I am neither of counsel nor
     attorney to either of the parties to said suit, nor am I an
10   employee of either party to said suit, nor of either counsel
     in said suit, nor am I interest in the outcome of said cause.
11
             Witness my hand and seal as Notary Public this 14th
12   day of November, 2003.

13
                                    _____
14
                                    Amy C. Brewer
15                                  Notary Public
                                    License #164
16

17
     My Commission Expires:  6/30/06
18
```