UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KELLY PHANEUF, | : |
| | : |
| Plaintiff, | :Civil No. 3:03CV00372 (AVC) |
| | : |
| v. | : |
| | : |
| ROSE MARIE CIPRIANO, DORENE M. | : |
| FRAIKIN, KATHLEEN BINKOWSKI, | : |
| TOWN OF PLAINVILLE and PLAINVILLE | : |
| BOARD OF EDUCATION, | : |
| | : |
| Defendants. | :          JULY 19, 2004 |

## OBJECTION TO PLAINTIFF'S MOTION TO PRECLUDE EXPERT TESTIMONY AT TRIAL, AND, ALTERNATIVELY, MOTION FOR ENLARGEMENT OF TIME

The defendants hereby object to plaintiff's motion which seeks to exclude the

expert testimony of Joseph L. Woolston, M.D., the defendants' retained expert. The

defendants assert that they disclosed the report and substance of testimony of said expert

to the plaintiff on June 11, 2004. Although the disclosure of said expert was in fact

untimely with respect to the Court's March 24, 2004 scheduling order, the extreme

sanction of precluding critical expert testimony is unwarranted at this point because

plaintiff has not alleged a specific incurable prejudice which will result in the event the

expert testimony is allowed. Furthermore, plaintiff has not set forth any reason why any

prejudice which may result could not be cured.

The defendants assert that, as the plaintiff was aware, they contemplated

disclosing the opinion of an expert in this case earlier this year, however, due to the

expert's delay in providing a substantive opinion of this case and confusion which arose

1

in the undersigned defense counsel's office with respect to the scheduling order deadlines, they unwittingly failed to comply with the above referenced March scheduling order. While the explanation of defendants' counsel as to why the disclosure was made on June 11, 2004 may not completely justify the unfortunate violation of the scheduling order, it does negate any implication that the defendants' acted in bad faith or otherwise willfully disregarded the Court's rules. Thus, for the reasons as more fully set forth below, the defendants respectfully request that the motion to preclude defendants from introducing the testimony of said expert be denied.

### Law and Argument

Second Circuit Courts recognize that preclusion is a drastic remedy and therefore they use discretion and caution. Ventra v. U.S., 121 F. Supp. 2d 326, 332 (S.D.N.Y. 2000)(precluded for failure to disclose witness altogether, where in bad faith plaintiff denied expert treated him for injuries). Rule 37 sanctions are "drastic remedies that should only be applied" in rare cases where a party's conduct represents "'flagrant bad faith and callous disregard of the Federal Rules of Civil Procedure'." Grdinich v. Bradlees, 187 F.R.D. 77, 79 (S.D.N.Y. 1999)(citations omitted); Hinton v. Patnaude, 162 F.R.D. 435, 439 (N.D.N.Y. 1995).

Preclusion should not apply where the failure to make disclosure is harmless or the prejudice may be remedied by the party. Giladi, 2001 U.S. Dist. LEXIS 4645, at *9; see Strougo v. Bea Assocs., 188 F. Supp. 2d 373, 380 (S.D.N.Y. 2002) (The prejudice caused by untimely disclosure was remedied by the availability of those months during which plaintiff could depose the expert.)

In determining whether to exclude trial testimony under Rule 37(c)(1), the Court considers (1) the surprise or prejudice suffered by the moving party; (2) the ability of that party to cure the prejudice; (3) whether waiver of the rule against calling unlisted witnesses is appropriate; (4) bad faith or willfulness in failing to comply with a court order. Equant Integrations v. United Rentals Inc., 2003 U.S. Dist. LEXIS 18409 (D. Conn.); see also In the Matter of Kreta Shipping, 181 F.R.D. 273, 277 (S.D.N.Y. 1998), citing In Re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 791 (3d Cir. 1994). The purpose of the rule is to prevent sandbagging an adversary with undisclosed evidence. Johnson Electric v. Mabuchi Motor America Corp., 77 F. Supp. 2d 446, 458 (S.D.N.Y. 1999).

> The exclusion of critical evidence is an extreme sanction which is not normally imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence. Meyers v. Pennypack Woods Home Ownership Ass'n., 559 F.2d 894, 905 (3d Cir. 1977).

In Equant Integrations v. United Rentals Inc., 2003 U.S. Dist. LEXIS 18409 (D. Conn.) (Attached hereto, Ex. B.), plaintiff sought to exclude an expert report on grounds that defendant had engaged in abusive discovery tactics through defendant's filing of the expert's report after the conclusion of plaintiff's expert's deposition and approximately one month after the Rule 26(a)(2)(C) deadline. The Connecticut District Court held that despite the prejudice suffered by the plaintiff as a result of defendant's late disclosure, "preclusion is a drastic remedy" and it is "generally ordered only where the court finds that the party's failure to comply with the requirements was both unjustified and prejudicial." At *15. The Court went on to extend the discovery deadline thereby allowing the moving party to cure their prejudice by taking deposing the expert in question.

3

In <u>Virgin Enterprises v. American</u> Longevity, 2001 U.S. Dist. LEXIS 2048 (S.D.N.Y.) (Attached hereto, Ex. C.), the plaintiff brought a trademark action against defendants. Pursuant to Federal Rule of Civil Procedure 37(c)(1), plaintiff moved to exclude defendants' expert witness, claiming defendant failed to comply with Federal Rule of Civil Procedure 26(a). The court denied the motion. The defendants' conceded that, with respect to the expert, their disclosure was two weeks past the deadline. The court held that the defendants' actions were not sufficiently egregious to warrant preclusion of expert testimony because any prejudice would have been remedied by the deposition of the expert. There was no evidence, beyond mere allegation, that bad faith motivated the untimely disclosure.

The <u>Virgin Enterprises</u> and the <u>Equant Integrations</u> cases are similar to the case at bar in that the defendants' late disclosure was not sufficiently egregious to warrant the extreme sanction of preclusion because any possible prejudice can be cured by deposing the defendants' retained expert. Moreover, the cases are analogous in that there is no evidence, beyond mere allegation that the defendants acted in bad faith or callous disregard of the Court's rules.

The plaintiff in her memorandum asserts that the disclosure of the defendants' expert prejudices her because she may need to depose said expert. The defendants respectfully request that the Court extend the expert discovery deadline and allow the plaintiff to depose said witness and/or retain her own expert. Moreover, the defendants agree to make their expert available to plaintiff at the plaintiff's convenience as soon as practicable. This would give the plaintiff the opportunity to cure any prejudice resulting from said disclosure.

It is notable to point out that with respect to the expert witness report that is the subject of this motion, the report is dated June 4, 2004 (Attached hereto, Ex. A.), thus this supports the defendants assertion that the report was not even disclosed to the defendants until after the passage of the deadline, however, it was requested well before said deadline. This fact is important because it is evidence that the defendants did not callously disregard the Court's scheduling order nor was the timing of the disclosure meant as a trial ambush tactic.

WHEREFORE, the defendants respectfully request that the motion to exclude be denied because there is insufficient evidence of bad faith or callous disregard for the Court's rules and any prejudice can be remedied by the deposition of the expert.

Respectfully Submitted,

THE DEFENDANTS,
ROSEMARIE CIPRIANO,
DORENE M FRAIKIN,
KATHLEEN BINKOWSKI,
TOWN OF PLAINVILLE,
PLAINVILLE BOARD OF EDUCATION,

By Their Attorney,

JAMES G. WILLIAMS, ESQ.
FEDERAL BAR NO CT 01938
WILLIAMS WALSH & O'CONNOR LLC
110 WASHINGTON AVE, 2ND FLR
NORTH HAVEN CT 06473
TEL (203) 234 6333
FAX (203) 234 6330

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was mailed, first class, postage prepaid, to the following counsel of record, this 19th day of July 2004, to:

SHEILA J HANLEY ESQ
GESMONDE PIETROSIMONE & SGRIGNARI LLC
3127 WHITNEY AVE
HAMDEN CT 06518-2344
TEL (203) 407 4200
FAX (203) 407 4211

James G Williams
Commissioner of the Superior Court

YALE UNIVERSITY  Joseph L. Woolston, M.D.
*Professor of Child Psychiatry*
*and Pediatrics*

 *Chief, Child Psychiatry*
*Yale-New Haven*
*Children's Hospital*

June 4, 2004

James G. Williams
Williams, Walsh, & O'Connor, LLC
110 Washington Avenue, Second Floor
North Haven, CT 06473-1718

Re.: Kelly P. Phaneuf v. Town of Plainville, et. al.

Dear Mr. Williams:

I am providing you with a Report of Findings as a result of a record review in the case of
Kelly P. Phaneuf v. Town of Plainville, et. al.

I reviewed the following documents that you provided me:

Medical records from hospitalization at New Britain General, 9/15/00-9/16/00
Complaint, Kelly P. Phaneuf v. Town of Plainville, et. al
Deposition of Lisa Phaneuf
Deposition of Kelley Phaneuf
Deposition of Dorene Fraikin
Deposition of Rose Marie Cipriano
Plaintiff's responses to Defendant's requests for disclosure and production, including
        outpatient treatment records of Kelly Phaneuf
Defendant's response to Plaintiff's first request for discovery to Defendant Rose Marie
        Cipriano, including Kelly Phaneuf's school record's from Plainville High School
Defendant's responses to Plantiff's first request for discovery to Defendant Dorene
        Fraiken
Newspaper article describing Kelly P. Phaneuf v. Town of Plainville, et. al
Damage analysis

As a result of my review of these documents I have reached the following conclusions in
accordance with my expert medical opinion:

1). There are data that support the claim beyond reasonable medical probability that Kelly
Phaneuf had experienced significant emotional and psychiatric distress before June 7,
2002, in part as a result of exposure to traumatic experiences in her life having nothing to
do with the search on June 7, 2002. This emotional and psychiatric distress apparently
led her to make a suicide attempt on September 15, 2000 that included an ingestion of
more than 100 pills of a variety of medications.

Yale Child Study Center • 230 South Frontage Road • P.O. Box 207900 • New Haven, CT 06520-7900
Telephone: 203 785-7071 • Fax: 203 785-7402 • E-mail: joseph.woolston@yale.edu

2). There are no data presented that support the claim that Kelley Phaneuf had a significant change in emotional, educational, vocational, psychiatric or social functioning as a result of the search that occurred on June 7, 2002 at Plainville High School.

3). There are no data to support the claim that Kelley Phaneuf has suffered severe physical, mental and emotional injuries, some of which are likely to be of a permanent nature, including but to but not limited to mental anguish, low self esteem and severe emotional distress as a direct and proximate cause of the search that occurred on June 7, 2002 at Plainville High School. Specifically, there are no data from the medical records of her outpatient psychiatric treators, from her educational records or from her testimony on deposition that she experienced injury that required treatment or significantly altered her social, educational, vocational, or psychiatric functioning as a direct and proximate cause of the search that occurred on June 7, 2002 at Plainville High School.

Therefore I conclude with reasonable medical pobability that Kelly Phaneuf has not suffered severe physical, mental and emotional injuries, some of which are likely to be of a permanent nature, including but to but not limited to mental anguish, low self esteem and severe emotional distress as a direct and proximate result of the search on June 7, 2002 at Plainville High School.

Joseph L. Woolston, M.D.

LEXSEE 2003 US DIST LEXIS 18409

EQUANT INTEGRATIONS SERVICES, INC. v. UNITED RENTALS (NORTH AMERICA), INC. f/k/a UNITED RENTALS, INC.

3:01 CV 1134 (JBA)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

217 F.R.D. 113; 2003 U.S. Dist. LEXIS 18409; 56 Fed. R. Serv. 3d (Callaghan) 736

January 9, 2003, Decided
January 9, 2003, Filed

**PRIOR HISTORY:** Equant Integrations Servs. v. United Rentals (N. Am.), Inc., 2002 U.S. Dist. LEXIS 26657 (D. Conn., Apr. 17, 2002)

**DISPOSITION:** [**1] Plaintiff's Motion to Strike Expert Reply Report granted in part.

**LexisNexis(R) Headnotes**

**COUNSEL:** For Equant Integration Svc, Inc, PLAINTIFF: Joseph M Pastore, III, Thomas J Lengyel, William J Egan Attorney, Brown Raysman Millstein Felder & Steiner, Hartford, CT USA.

For Equant Integration Svc, Inc, PLAINTIFF: Barry G Felder, Laura Land Himelstein, Brown, Raysman, Millstein, Felder & Steiner, New York, NY USA.

For United Rentals (Na), Inc FKA United Rentals Inc, DEFENDANT: Joshua Laurence Milrad Attorney, Mound, Cotton, Wollan & Greengrss, New York, NY USA.

For United Rentals (Na), Inc FKA United Rentals Inc, DEFENDANT: Donald E Frechette, Janet Marie Helmke, Jeffrey J Medeiros, Edwards & Angell, Hartford, CT USA.

For Robert Flock, MOVANT: Joseph M Pastore, III, Thomas J Lengyel, Pamela E Woodside, William J Egan Attorney, Brown Raysman Millstein Felder & Steiner, Hartford, CT USA.

For Robert Flock, MOVANT: Barry G Felder, Brown, Raysman, Millstein, Felder & Steiner, New York, NY USA.

**JUDGES:** Joan Glazer Margolis, United States Magistrate Judge.

**OPINIONBY:** Joan Glazer Margolis

**OPINION:**

[*114] RULING ON PLAINTIFF'S MOTION TO STRIKE REPLY REPORT OF DEFENDANT'S EXPERT, THOMAS ROUTT [**2]

This action was initiated on June 19, 2001. (Dkt. # 1). On October 22, 2001, United States District Judge Janet Bond Arterton referred this case to this Magistrate Judge for discovery purposes. (Dkt. # 35). Familiarity with the legal and procedural history of this protracted litigation is presumed. Pending before this Court is plaintiff's Motion to Strike Reply Report of Defendant's Expert, Thomas Routt ["Routt"], affidavit and brief in support, filed November 1, 2002. n1 (Dkts. # # 95-97). Defendant filed its brief in opposition on December 2, 2002. n2 (Dkt. # 124). Seven days later, plaintiff filed its reply brief. n3 (Dkt. # 128).

> n1 Two exhibits are attached to plaintiff's affidavit (Dkt. # 96): a table of contents page titled "Reply of Thomas J. Routt . . . to Reply of Del Swingle . . .," dated October 13, 2002, and excerpts from Routt's deposition, taken on October 17, 2002 (Exh. A); and a copy of

217 F.R.D. 113, *; 2003 U.S. Dist. LEXIS 18409, **;
56 Fed. R. Serv. 3d (Callaghan) 736

correspondence between counsel, dated October 25, 2002 (Exh. B). Attached to plaintiff's brief in support (Dkt. # 97) are additional excerpts from the Routt deposition (Exh. A), and copies of case law, and copies of defendant's Motion for Extension of Scheduling Order Deadlines, filed April 2, 2002, and the endorsement by this Magistrate Judge, and a copy of this Court's Ruling on Pending Discovery Motions, filed April 17, 2002 (Exh. B). [**3]

n2 Defendant filed its objection to plaintiff's Motion to Strike the Routt Reply Report with the erroneous caption, "Memorandum of Law in Support of Defendant's Objection to Plaintiff's Motion to Quash Subpoena of Robert Flock." (Dkt. # 124). The brief itself, however, clearly addresses the Routt report. (Id.). On December 9, 2002, defendant filed a duplicate brief, this time with the correct caption, "Memorandum of Law in Support of Defendant's Objection to Plaintiff's Motion to Strike Expert Reply Report of Thomas Routt." (Dkt. # 129).

n3 Attached are excerpts from Routt's reply report. (Exh. A).

For reasons stated below, plaintiff's Motion to Strike (Dkt. # 95) is **granted in part** to the extent set forth below.

I. FACTUAL SUMMARY

On March 1, 2002, plaintiff filed the initial report of its expert, Del Swingle ["Swingle"] to which defendant's expert, Routt, responded on June 28, 2002 after defendant was [*115] granted a ninety-day extension. (Dkt. # 97, at 2-3; Dkt. # 124, at 2-3). After receiving an extension to file the Swingle reply report, the report was filed on August 15, 2002. (Dkt. [**4] # 97, at 3; Dkt. # 124, at 3). Two months later, on October 16, 2002, defendant disclosed Routt's reply report, dated October 13, 2002, to plaintiff immediately after deposition of Swingle. (Dkt. # 97, at 3; Dkt. # 124, at 1-2). The following morning Routt was deposed. (Dkt. # 97, at 4; Dkt. # 124, at 4).

II. DISCUSSION

Plaintiff moves to strike Routt's October 13, 2002 reply report and to prohibit defendant from introducing into evidence any testimony or information from the Routt reply report. (Dkt. # 95). In the alternative, plaintiff moves for such remedies as this Court may deem just, including awarding of attorneys' fees from the

depositions of Swingle and Routt, and any costs and fees incurred in connection with a second deposition of Routt which plaintiff may seek to take in light of the late disclosure of Routt's reply report. (Id.). Plaintiff seeks to strike Routt's expert report on grounds that defendant has engaged in abusive discovery tactics through defendant's filing of Routt's reply report on the eve of the Routt deposition, after the conclusion of the Swingle deposition and approximately one month after the FED. R. CIV. P. 26(a)(2)(C) [**5] deadline. (Dkt. # 97, at 5-6; Dkt. # 128).

Defendant contends that plaintiff's motion should be denied for two reasons: (1) the October 13, 2002 Routt report was not untimely because (a) it was filed within the discovery deadlines set by this Court; and (b) the reply report does not fall within the rebuttal evidence clause of FED. R. CIV. P. 26(a)(2)(C) and; (2) even if the Court finds that it was filed untimely, plaintiff has not demonstrated any prejudice as a result of the alleged late disclosure. (Dkt. # 124).

The disclosure of expert testimony is governed by FED. R. CIV. P. 26. Rule 26(a)(2)(C) provides in pertinent part:

[the] disclosures [of experts] shall be made at the times and in the sequence directed by the court. In absence of other directions from the court . . ., the disclosures shall be made at least 90 days before the trial date . . . or, if the evidence is intended to solely contradict or rebut evidence on the same subject matter identified by another party under paragraph 2(B), within 30 days after the disclosure made by the other party.

The 1993 Advisory Committees Notes [**6] to Rule 26(a)(2) state that "normally the court should prescribe a time for these disclosures in a scheduling order under Rule 16(b) . . . ." However, "in absence of such a direction, the disclosures are to be made" in accordance with the time lines dictated by the Rule. FED. R. CIV. P. 26(a) 1993 Advisory Committee's Note. Specifically, "an additional 30 days is allowed (unless the court specifies another time) for disclosure to be used solely to contradict or rebut the testimony that may be presented by another party's expert." Id.

In this case, the deadline for the parties to complete expert discovery is now February 12, 2003. n4 Defendant notes that expert discovery is continuing and neither party has completed liability and damages expert depositions; [*116] thus, defendant asserts that the Routt reply report was filed well within the Court-imposed deadline. The ongoing discovery referred to by defendant is precisely the type of expert discovery

217 F.R.D. 113, *; 2003 U.S. Dist. LEXIS 18409, **;
56 Fed. R. Serv. 3d (Callaghan) 736

contemplated by the Court and defendant is correct to assert that there is ample time to complete such discovery before the February 12, 2003 deadline. However, the Court's deadline does not nullify [**7] the FED. R. CIV. P. 26(a)(2)(C) deadlines applicable to expert rebuttal reports. The individual filings and submissions of initial expert reports, rebuttal reports and supplemental reports remain within the coverage of FED. R. CIV. P. 26. None of the rulings of this Magistrate Judge include direction as to the deadlines applicable to the filings of specific expert discovery reports. Thus, in absence of direction by this Court, the parties are bound by FED. R. CIV. P. 26(a)(2)(C).

n4 This deadline is the result of three extensions, granted by this Magistrate Judge, filed by plaintiff with the consent of defendant. (See Dkts. # # 87, 98-99 & 133). The first was filed on October 11, 2002 (four days before the original deadline of October 15, 2002)(Dkt. # 87) and was granted on October 17, 2002, extending the deadline to October 31, 2002. The second was filed on November 1, 2002 (Dkt. # 98), and was granted on November 8, 2002, extending the deadline to complete expert discovery to December 30, 2002. The latest was filed on December 16, 2002 (Dkt. # 133), and was granted on December 18, 2002, extending the deadline to February 12, 2003.

The Scheduling Order, issued by United States District Judge Janet Bond Arterton on August 26, 2002 (Dkt. # 78), supersedes the original order issued September 1, 2001. (Dkt. # 19). As of the August 26th order, discovery was to be complete by October 1, 2002. (Dkt. # 78). This order does not reference an expert discovery deadline. The parties have sought numerous extensions of time in which to complete expert discovery (See Dkts. # # 56, 62, 72, 87, 98-99 & 133), all of which have been granted by this Magistrate Judge.

[**8]

1. FED. R. CIV. P. 26(a)(2)(C): Rebuttal Testimony vs. Supplemental Disclosure

Defendant contends that, in addition to not being bound by the deadlines imposed by FED. R. CIV. P. 26(a)(2)(C), the Routt report was a supplemental report not intended "solely to rebut," but provided supplemental analysis regarding additional, recently reviewed documentation. (Dkt. # 124, at 5-7). In support of this contention, defendant relies on Tucker v. Ohtsu Tire & Rubber Co. Ltd., 49 F. Supp. 2d 456, 459-61 (D. Md.

1999)(a supplemental expert report filed ten days prior to the close of discovery, and more than four months before trial, is permissible as reports meant to supplement an expert's Rule 26(a)(2)(B) disclosure are governed by Rule 26(e)(1) which requires disclosure of any additions or changes not later than 30 days before trial, unless otherwise ordered by the court.) Defendant claims that "although the Routt Report does address issues brought out in the Swingle reply report, it is not intended *solely* to contradict or rebut that evidence as required under Federal Rule 26(a)(2)(C)" [**9] because the Routt report relies on "evidence taken up to and including the September fact discovery deadline." (Dkt. # 124, at 9)(emphasis in original).

Despite defendant's claim that the Routt report relies on testimony taken within in a month of the date of the report, the fact that the expert consulted additional evidence before issuing his report is not enough to transform the report from rebuttal to supplemental. See Congressional Air, Ltd. v. Beech Aircraft Corp., 176 F.R.D. 513, 515-16 (D. Md. 1997)(despite the expert's decision to examine additional discovery materials, conduct further examinations and submit an additional report, the court found that the reports of this expert were "intended solely to contradict or rebut" the report prepared by the opposing expert.) Furthermore, the evidence before the Court supports plaintiff's assertion that the Routt report was in fact a reply report. n5 Defendant may "not circumvent the requirement that a rebuttal report be filed by arguing that the report is merely a Rule 26(e)(1) supplementation." 6 MOORE'S FED. PRAC. P 26.23[3] (3d ed. 2002). If the report is intended to contradict or rebut a report prepared by the [**10] opposing party's expert, as is the case here, it must be filed within thirty days of receipt of the opposing party's expert report.

n5 The report submitted by Routt on October 13, 2002 bears the title, "Reply of Thomas J. Routt . . . to Reply of Del Swingle . . . ." (Dkt. # 96, Exh. A, at 1; Dkt. # 128, Exh. A, at 1). There is one section entitled "Present Report" which indicates that "the present report is submitted as a reply to the 'Reply of Del Swingle . . .'". (Dkt. # 128, Exh. A, at 3). The remaining pages fall within the subtitle "Reply to Swingle Reply, Section III" and upon examination by the Court, clearly reply to Swingle's findings. (Dkt. # 96, at 3; Dkt. # 128, Exh. A, at 3-11, 13-19). The Court recognizes that Routt does address the depositions of Thomas Burland, taken on August 20, 2002 and September 27, 2002; reference to this additional evidence is not sufficient to transform this reply report to a supplemental

217 F.R.D. 113, *; 2003 U.S. Dist. LEXIS 18409, **;
56 Fed. R. Serv. 3d (Callaghan) 736

report. (Dkt. # 128, at 11-13); see also Congressional, 176 F.R.D. at 515-16. Additionally, at his deposition, Routt categorized his October 3, 2002 report as his "reply report." (See Dkt. # 96, Exh. A, at 12, 13).

[**11]

2. Prejudice to Plaintiff

Plaintiff asserts that in light of defendant's violation of the expert disclosure requirements of Rule 26(a), the Court should either strike the expert report or impose such other sanction under FED. R. CIV. P. 37(c)(1) [*117] as may be appropriate under the circumstances. (Dkt. # 97, at 5-6; Dkt. # 124, at 7-9). Defendant contends that assuming the Routt report was provided solely to rebut the Swingle report and was untimely, plaintiff has not suffered prejudice as a result of the late disclosure. (Dkt. # 124, at 10). Plaintiff responds that by holding back the report, defendant prejudiced plaintiff's ability to adequately prepare for Routt's deposition. (Dkt. # 128, at 7).

FED. R. CIV. P. 37(c)(1) provides:

> A party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, [**12] may impose other appropriate sanctions . . . [such as] payment of reasonable expenses, including attorney's fees, caused by the failure. . . .

The purpose of Rule 26(a) is to prevent an ambush, resulting in surprise or prejudice, of undisclosed or late disclosed evidence. Thibeault v. Square D Co., 960 F.2d 239, 246 (1st Cir. 1992); see Virgin Enters. v. American Longevity, 2001 U.S. Dist. LEXIS 2048, at *6 (S.D.N.Y. Mar. 1, 2001). Consequently, courts have repeatedly held that the "'automatic sanction' for a violation of Rule 26(a) is preclusion." Giladi v. Strauch, 2001 U.S. Dist. LEXIS 4645, at *8-9 (S.D.N.Y. Apr. 16, 2001); LaMarca v. United States, 31 F. Supp. 2d 110, 122 (E.D.N.Y. 1998); Fund Comm'n Serv., II, Inc. v. Westpac Banking Co., 1996 U.S. Dist. LEXIS 11937, 1996 WL 469660, at *3 (S.D.N.Y. Aug. 16, 1996). Preclusion is "appropriate unless there is 'substantial justification' for the failure [,] . . . the failure to make disclosure is harmless" or the prejudice may be remedied by the party. Giladi, 2001 U.S. Dist. LEXIS 4645, at *9; see Strougo v. Bea Assocs., 188 F. Supp. 2d 373, 380 (S.D.N.Y. 2002)

[**13] ("any prejudice caused by untimely disclosure was remedied by the availability of those months during which plaintiff could depose the expert."); see Hinton v. Patnaude, 162 F.R.D. 435, 439 (N.D.N.Y. 1995)(Rule 37(c)(1) penalties "should not apply if the offending party's failure to disclose was 'substantially justified.'").

The Southern District of New York has outlined a four-part test to determine whether to exclude expert testimony under FED. R. CIV. P. 37(c)(1) -- surprise or prejudice suffered by the moving party; the ability of that party to cure the prejudice; and whether there was bad faith or willfulness in failing to comply with the court order. Virgin, 2001 U.S. Dist. LEXIS 2048, at *5. n6 In that case, defendants filed their expert witness' report and CV fourteen days after the deadline imposed by Rule 26(a)(2). The court concluded that the evidence was not precluded as there was not substantive evidence of bad faith or callous disregard for the Rules and any prejudice would be remedied by the deposition of the expert. 2001 U.S. Dist. LEXIS 2048, at *3-4, 5 & 6.

> n6 The third factor is inapplicable to this case as it requires consideration of "whether the waiver of the rule against calling unlisted witnesses is appropriate." The Court, therefore, will consider the applicability of the remaining three factors. See Virgin, 2001 U.S. Dist. LEXIS 2048, at *5.

[**14]

In this case, unlike Virgin, plaintiff, due to the lateness of the Routt reply report, was prejudiced as plaintiff did not have adequate time to prepare for the deposition which was held the morning following the disclosure, nor was plaintiff able to adequately depose its own expert regarding Routt's reply report. See 2001 U.S. Dist. LEXIS 2048, at *7; see also Mid-America Tablewares, Inc. v. Mogi Trading Co. Ltd., 100 F.3d 1353, 1363 (7th Cir. 1996)(the district judge did not abuse her discretion in denying defendant's motion to exclude the testimony of plaintiff's expert as she correctly determined that defendant had sufficient time to prepare for the deposition of plaintiff's expert after receiving plaintiff's supplemented expert report.). Defendant questions the extent of preparation necessary for the deposition of Swingle if the Routt report is in fact a rebuttal report. (Dkt. # 124, at 12). Defendant's question, however, ignores the extent of preparation defendant itself did for the depositions of both plaintiff's expert and its own expert - "Routt was 'prepped' for *both* [*118] his deposition *and* the deposition of . . . Swingle" for the greater part of Tuesday, October 15, 2002. (Dkt.

[**15] # 124, at 4)(emphasis in original). Defendant further contends that the depositions are not complete. (Id.). Even if this is the case, plaintiff should not be forced to revisit a topic that may have been adequately addressed in both Swingle's and Routt's depositions had the reply report been disclosed pursuant to the Rule 26(a)(2)(C) deadline.

Despite the prejudice that plaintiff has suffered as a result of defendant's failure to abide by the Rule 26(a)(2)(C) deadline, "preclusion is a drastic remedy" and it is "generally ordered only where the court finds that the party's failure to comply with the requirements was both unjustified and prejudicial." Virgin, 2001 U.S. Dist. LEXIS 2048, 2001 U.S. Dist. LEXIS 2048, at *6 (citations and internal quotations omitted). Defendant has an opportunity to cure the prejudice as the expert discovery deadline has been postponed, yet again, to February 12, 2003. There are approximately almost five weeks for the parties to schedule another deposition of the parties' experts. However, defendant must bear the costs thereof. Such a sanction is appropriate particularly in light of defendant's disregard for Rule 26(a)(2)(C), defendant's submission of the report [**16] on the eve of Routt's deposition and after the deposition of plaintiff's expert, n7 and this Court's repeated warning that further discovery delay will not be allowed absent extraordinary circumstances.

---

n7 Defendant blames the untimely disclosure on a chain of events that were effectually within defendant's control as they all were caused by defendant or its expert. Defendant claims that unless the report was not electronically delivered by Routt until 10:30 p.m. on Sunday, October 13, 2002. (Dkt. # 124, at 3). Counsel, therefore, did not actually receive the report until Monday morning and because Routt was traveling from Seattle to Hartford the entire day on Monday for his deposition, he was not available to discuss the report until Tuesday October 15, 2002. (Dkt. # 124, at 3-4). Defendant further asserts that during the Swingle deposition which lasted all day October 16, 2002, counsel worked with Routt and URI representatives to ensure that the report was ready to provide to plaintiff by the end of the day prior to Routt's deposition, thus further delaying the disclosure to plaintiff. (Dkt. # 124, at 4).

Furthermore, the Court notes that the plaintiff's rebuttal expert report was served on August 15, 2002, yet defendant claims that the Routt report was delayed as Routt included discovery information supplied to him only eight days before the date of the report (October 5, 2002) which would have been five days after the close of fact discovery. Thus, any reliance by defendant on Routt's need to wait until the fact discovery period ended to complete the report is misplaced as the defendant admits that its expert was drawing information from any source regardless of the Court's Scheduling Order.

Additionally, the Court notes, as plaintiff emphasizes in its brief, that despite the parties numerous filings seeking extensions of deadlines, defendant received the reply report from Routt on October 13, 2002 (twenty-eight days after the September 15, 2002 disclosure deadline), yet defendant never sought an extension of time to file the report but rather chose to disclose the report to plaintiff three days later, on the eve of Routt's deposition. (Dkt. # 97, at 4-5).

[**17]

Plaintiff's Motion to Strike Expert Reply Report of Thomas Routt (Dkt. # 95) is **granted in part** such that plaintiff is permitted the opportunity to redepose Routt and Swingle, at defendant's expense, in accordance with this ruling.

This is not a Recommended Ruling but a Ruling on discovery, the standard of review of which is specified in 28 U.S.C. § 636; FED. R. CIV. P. 6(a), 6(e) & 72; and Rule 2 of the Local Rules for United States Magistrate Judges. As such, it is an order of the Court unless reversed or modified by the District Judge upon timely made objection.

See 28 U.S.C. § 636(b)(**written objections to ruling must be filed within ten days after service of same**); FED. R. CIV. P. 6(a), 6(e) & 72; Rule 2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Small v. Secretary, H&HS, 892 F.2d. 15, 16 (2d Cir. 1989) [**18] (**failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit**).

Dated at New Haven, Connecticut, this 9th day of January, 2003.

Joan Glazer Margolis

United States Magistrate Judge

LEXSEE 2001 U.S. DIST. LEXIS 2048

VIRGIN ENTERPRISES LIMITED, Plaintiff, -against- AMERICAN
LONGEVITY, JOEL D. WALLACH, and WELLNESS LIFESTYLES, INC.,
Defendants.

99 Civ. 9854 (CSH)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK

2001 U.S. Dist. LEXIS 2048

February 28, 2001, Decided
March 1, 2001, Filed

DISPOSITION: [*1] Plaintiff's motion pursuant to
Fed. R. Civ. Pro. 37(c)(1), for an Order excluding
defendants' expert witness Prof. Oldfield for failure to
comply with Rule 26(a) denied.

**LexisNexis(R) Headnotes**

COUNSEL: For VIRGIN ENTERPRISES LIMITED,
plaintiff: James W. Dabney, Catherine Marie Clayton,
Pennie & Edmonds, L.L.P., New York, NY.

For AMERICAN LONGEVITY LLC, defendant:
Charles H. Knull, John M. Keene, Graham, Campaign
P.C., New York, NY.

JUDGES: CHARLES S. HAIGHT, JR., SENIOR
UNITED STATES DISTRICT JUDGE.

OPINIONBY: CHARLES S. HAIGHT, JR.

OPINION:

MEMORANDUM & ORDER

HAIGHT, Senior District Judge:

In this trademark action the above-captioned
plaintiffs move the Court, pursuant to Fed. R. Civ. Pro.
37(c)(1), for an Order excluding the defendants' expert
witness Prof. Oldfield for failure to comply with Rule
26(a). The factual background of this case was discussed
at length in my opinion dated February 28, 2001,
familiarity with which is assumed. n1

n1 In an opinion dated February 7, 2001 the
Court denied the present motion. The following
articulates the Court's reasoning for that decision.

[*2]

DISCUSSION

Fed. R. Civ. P., Rule 26(a)(2)(A) requires that "a
party shall disclose to other parties the identity of any
person who may be used at trial to present evidence" as
an expert. This disclosure of experts must be
"accompanied by a written report prepared and signed by
the witness" which contains the following:

a complete statement of all opinions to be
expressed and the basis and reasons
therefor; the data or other information
considered by the witness in forming the
opinions; any exhibits to be used as a
summary of or support for the opinions;
the qualifications of the witness, including
a list of all publications authored by the
witness within the preceding ten years;
the compensation to be paid for the study
and testimony; and a listing of any other
cases in which the witness has testified as
an expert at trial or by deposition within
the preceding four years.

Rule 26(a)(2)(B). In the absence of court direction to the
contrary, the disclosures listed above "shall be made at

2001 U.S. Dist. LEXIS 2048, *

least 90 days before the trial date or the date the case is to be ready for trial...". Rule 26(a)(2)(C). Under Rule 37(c), in relevant part, "[a] party that without substantial [*3] justification fails to disclose information required by Rule 26(a)...shall not, unless such failure is harmless, be permitted to use as evidence at a trial...any witness or information not so disclosed." The relevant 1993 amendments to the Federal Rules of Civil Procedure imposed "an additional duty to disclose information regarding expert testimony sufficiently in advance of trial that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." Fed. R. Civ. Pro. 26(a)(2) 1993 advisory committee notes.

The trial of this action, by Order dated November 20, 2000, is to commence March 12, 2001. Under Rule 26(a)(2)(C), the parties were obliged to make the required disclosures regarding any expert witnesses not later than December 12, 2000. The defendants concede that, with respect to Oldfield, their disclosure was "late -- two weeks past the deadline," specifically, December 26, 2000, by facsimile. Plaintiff's Memorandum of Law in Support of Motion to Exclude ("Plaintiff's Memorandum") at 8; Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Exclude ("Defendants' Memorandum") [*4] at 2.

According to the plaintiff, this "'disclosure' was not just untimely, but was grossly non-compliant with even the minimum requirements of Fed. R. Civ. Pro 26(a)(2)." Plaintiff's Memorandum at 8. The plaintiff is correct that Oldfield's report and CV, sent by fax to the plaintiff on December 26, 2000, was clearly not compliant with Rule 26(a)(2)(B). Firstly, the CV, while indicating the universities and names of degrees Oldfield has received (University of British Columbia, BSA, MSA and Oregon State University, PhD), does not indicate what fields those degrees are in. CV of James Oldfield, Plaintiff's Memorandum, Exhibit 18. Secondly, the CV states that Oldfield has "authored or co-authored 139 technical papers and [] 90 reports and non-journal articles," but it does not list the publications, as required by the Rule. Id. Plaintiff believes that these omissions "plainly were calculated to conceal Oldfield's background and likely lack of qualifications or expertise relevant to the challenged claims made by Wallach," and argues that defendants' have "deprived [Virgin] of any reasonably (sic) opportunity to prepare to cross-examine Oldfield either prior to or during trial. [*5] " Plaintiff's Memorandum at 8. For this reason they ask that the Court "exercise its discretion under Rule 37(c)(1) to bar defendants from calling Oldfield as a trial witness." Plaintiff's Memorandum at 8.

The defendants respond that with regard to Oldfield, on January 20, 2001 they fully complied with the disclosure requirements, more than a month before the discovery deadline of February 23, 2001, thereby giving ample time for plaintiff to depose Oldfield. Defendants' Memorandum at 3. Plaintiff concedes that the defendants eventually complied, but asserts that the 90 day rule was violated nonetheless, and that countenancing defendants belated compliance would create an incentive to disregard the rules of procedure. Plaintiff's Reply Memorandum at

In determining whether to exclude trial testimony under Rule 37(c)(1), the Court considers (1) the surprise or prejudice suffered by the moving party; (2) the ability of that party to cure the prejudice; (3) whether waiver of the rule against calling unlisted witnesses is appropriate; (4) bad faith or willfulness in failing to comply with a court order. In the Matter of Kreta Shipping, S.A., 181 F.R.D. 273, 277 (S.D.N.Y. 1998), [*6] citing In Re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 791 (3d Cir. 1994). The purpose of the rule is to prevent sandbagging an adversary with undisclosed evidence. Johnson Electric v. Mabuchi Motor America Corp., 77 F. Supp. 2d 446, 458 (S.D.N.Y. 1999). Although the language implies automatic preclusion, courts recognize preclusion is a drastic remedy and therefore use discretion and caution. Ventra v. U.S., 121 F. Supp. 2d 326, 332 (S.D.N.Y. 2000)(precluded for failure to disclose witness altogether, where in bad faith plaintiff denied expert treated him for injuries). In fact, "preclusion of expert testimony is generally ordered only where the court finds that the party's failure to comply with the requirements was both unjustified and prejudicial." DiPirro v. U.S., 43 F. Supp. 2d 327, 340 (W.D.N.Y. 1999).

Despite plaintiff's assertion that "courts have not hesitated to enforce Rule 37(c)(1) and preclude late-disclosed experts in circumstances less egregious than those presented here," all the cases cited by plaintiff involve more egregious circumstances than those in the case at bar. There is no evidence, beyond [*7] mere allegation, that bad faith motivated the untimely disclosure. Furthermore, any prejudice will be remedied by the deposition of Oldfield, which the plaintiff will have had nearly two months to take from the agreed upon date of full disclosure, January 20, to the time of trial, March 12, and more than a month from the discovery deadline, February 23. The Court reminds that Rule 37 sanctions are "drastic remedies that should only be applied" in rare cases where a party's conduct represents "'flagrant bad faith and callous disregard of the Federal Rules of Civil Procedure'." Grdinich v. Bradlees, 187 F.R.D. 77, 79 (S.D.N.Y. 1999)(citations omitted); Hinton v. Patnaude, 162 F.R.D. 435, 439 (N.D.N.Y. 1995).

2001 U.S. Dist. LEXIS 2048, *

Because there is no substantive evidence of bad faith or callous disregard for the rules of procedure, the plaintiff's motion is denied.

It is SO ORDERED.
Dated: New York, New York

February 28, 2001

CHARLES S. HAIGHT, JR.

SENIOR UNITED STATES DISTRICT JUDGE

## JOSEPH LONGSTRETH WOOLSTON, M.D.

BORN:          March 30, 1948, Philadelphia, Pennsylvania

EDUCATION:     B.A., Cum Laude with High Honors in Biology, Yale
               University, New Haven, Connecticut, 1970
               M.D., University of Pennsylvania School of Medicine, 1973

CAREER:        1973 - 1974      Intern in Internal Medicine, University of
                                Pennsylvania - Presbyterian Medical Center,
                                Philadelphia, Pennsylvania

               1974 - 1976      Residency in Psychiatry, Stanford University
                                School of Medicine, Palo Alto, CA

               1976 - 1978      Fellowship in Child Psychiatry, Yale Child
                                Study Center, Yale University

               1977 - 1978      Instructor in Pediatrics & Child Psychiatry
                                (Child Study Center), Yale University School
                                of Medicine

               1978             Diplomate in Psychiatry, American Board of
                                Neurology and Psychiatry

               1978 - 1981      Assistant Clinical Professor of Pediatrics &
                                Psychiatry (Child Study Center), Yale
                                University School of Medicine

               1979             Diplomate in Child Psychiatry, American Board
                                of Neurology and Psychiatry

               1980             Leonard Berger Fellow

               1981             Associate Clinical Professor of Pediatrics &
                                Psychiatry (Child Study Center), Yale
                                University School of Medicine

               1984 - 1985      Medical Director, Clifford Beers Guidance
                                Clinic

Joseph L. Woolston, M.D.                    2

| 1985 - | Medical Director, Children's Psychiatric Inpatient Service, Yale-New Haven Hospital |
| 1985 - | Associate Director of Training, Child Study Center, Yale University School of Medicine |
| 1992 - | Associate Professor of Pediatrics and Child Psychiatry (Child Study Center), Yale University School of Medicine |
| 1992 - | Director of Continuous Quality Improvement, Child and Adolescent Psychiatry, Yale New Haven Hospital |
| 1994 - | Associate Chief of Clinical Services, Child and Adolescent Psychiatry, Yale New Haven Hospital |
| 1995 - | President, Connecticut Council of Child & Adolescent Psychiatry |

Journal Reviews:

Journal of the American Academy of Child and Adolescent Psychiatry, 1981 -

Pediatrics, 1983 -

Psychiatry, 1987 -

Psychosomatics, 1990 -

Journal of Emotional and Behavioral Disorders, 1992 -

Research Project Grant Extramural Referee:

Ontario Mental Health Foundation, 1984 -

National Institute of Mental Health, 1992 -

National Health Research and Development Program, 1995 -

Board Examiners:

Board Examiner for Board of Psychiatry and Neurology, Child Subspecialty 1982, 1984, 1986

Joseph L. Woolston, M.D.                    3

Site Visitor, Residency Review Committee, Accreditation
Council for Graduate Medical Education, 1991 -

Expert Testimony and Forensic Consultation:

Connecticut Superior Court, New Haven, CT

Connecticut Superior Court, New London, CT

Connecticut Superior Court, Bridgeport, CT

Connecticut Board of Education, Milford, CT,
Binding Mediation

Federal District Court, New Haven, CT
Binding Mediation

New Jersey Supreme Court, Essex County, NJ

United States Immigration Office, Boston, MA,
Deportation Hearing

Washington State, Department of Health and Social
Services, Administrative Hearing

New York State, Department of Labor Relations,
Administrative Hearing

Federal District Court, Hartford, CT

Memberships:

American Association for the Advancement of Science, 1972 -

American Psychiatric Association, 1975 - 1984

Connecticut Council of Child Psychiatrist's, 1976 -

Sigma XI, 1980 -

American Academy of Child and Adolescent Psychiatry, 1983 -

Committees/and Member of Board of Directors:

Committee on Continuing Education, American Academy of Child
and Adolescent Psychiatry, 1985 - 1990

Member of Board of Directors, Child Study Center School,
1985 -

Joseph L. Woolston, M.D.                    4

Chairman, Committee on Hospitalization, Academy of Child and
Adolescent Psychiatry, 1989 -

Task Force on Adolescent Hospitalization, American Academy
of Child and Adolescent Psychiatry, 1989 -

Task Force on Adolescent Hospitalization, National
Association of Private Psychiatric Hospitals, 1990 -

State Advisory Council to the Department of Children and
Youth Services, 1991  -

Chairman, Mental Health Subcommittee of the State Advisory
Council to the Department of Children and Youth Services
1991  -

Task Force to Study the Use and Abuse of Hospitalization of
Minors.  American Psychiatric Association 1991 -

Founding Member, Board of Directors, Connecticut Federation
of Families for Children's Mental Health, 1993 -

Consultations:

Santa Clara Adult Probation Department, Santa Clara,
California, 1974 - 1975

Long Lane School, Middletown, Connecticut, 1977 - 1978

Southeastern Child Guidance Clinic, New London, Connecticut,
1977 - 1978

Court Custody and Conflict Placement Committee, Yale Child
Study Center, 1977 -

Madison Health Advisory Committee, 1977 - 1978

Madison Public Schools, 1978 - 1980

Children's Center, 1983 -  1985

Child and Family Agency of Southeastern Connecticut,
1983 - 1987

Division of Child Psychiatry, Department of Psychiatry
University of Texas, Houston.  Invited program site visit
12/4/86 - 12/6/86

Joseph L. Woolston, M.D.                    5

Department of Children and Youth Services Task Force on
Community based Psychiatric Services for Children and
Adolescents 2/1/88 - 12/15/88

Governor's Task Force on Child Abuse, Subcommittee on
Investigation and Prosecution, 11/2/88

Mental Health Subpanel, Mediated Binding Arbitration of
Federal Suit of Connecticut American Civil Liberties Union
versus Department of Children and Youth Services, State of
Connecticut, 7/1/90 -

Cambridge City Hospital/Harvard University Child Psychiatry
Residency Program Review  9/91 - 2/92

Federal Trade Commission:  Investigation of fraudulent
advertising by private psychiatric hospitals, 5/94-

Connecticut Civil Liberties Union:  Suit in Federal Court
against the Department of Justice and Department of Child
and Families concerning minors in juvenile detention, 6/94-

Casey Family Foundation, Therapeutic Foster
Program/Children's Psychiatric Inpatient Service Liaison
Development  4/94 -

## Grants and Contracts Received:

Leon Lowenstein Foundation Grant for Investigation of Anxiety
Disorders in Children.  Co-Principal investigators:  Donald Cohen
and Joseph Woolston

    1/1/87 - 12/31/87.  Total direct costs:  $106,360
    1/1/88 - 11/30/88.  Total direct costs:  $113,636
    12/1/88 -11/30/89.  Total direct costs:  $127,272
    12/1/89 -  4/1/91.  Total direct costs:  $ 90,909

Merck Foundation Grant for Investigation of Efficacy of Post
Discharge Services for Psychiatrically Disordered/Cognitively
Impaired Children.

    7/1/94 - 6/30/95.  Total direct costs:  $100,000
    7/1/95 - 6/30/96.  Total direct costs:  $100,000

Medical Director, Private Wraparound Project.

    10/1/95 - 4/1/96.  Total direct costs:  $96,000

Joseph L. Woolston, M.D.                    6

Publications:
Original Articles

Woolston, J.L., and Schowalter, J.E.  Behavior modification protocols on a pediatric adolescent unit.  Pediatrics, 66;66:355-8, 1980.

Volkmar, F.R., Stunkard, A.J., Woolston, J.L., Bailey, R.A.  High attrition rates in commercial weight reduction programs.  Arch. Intern. Med., 141:426-8, 1981.

Woolston, J.L.  Eating disorders in infancy and early childhood. J. Amer. Acad. Child Psychiatry, 22:114- 121.  Cited 1984 Year Book of Psychiatry and Applied Mental Health 99-101, 1983.

Woolston, J.L., Gianfredi, S., Gertner, J.M., Paugus, J.A., Mason, J.W.  Salivery cortisol: A nontraumatic sampling technique for assaying cortisol dynamics.  J. Amer. Acad. Child Psychiatry, 22:4374-476, 1983.

Woolston, J.L.  Psychiatric aspects of the pediatric intensive care unit.  Yale Journal of Biology and Medicine, 57:97-110, 1984.

Bell, L.S., Woolston, J.L.  Weight gain and caloric intake in failure to thrive.  J. Amer. Acad. Child Psychiatry, 22:447-452, 1985.

Woolston, J.L., Gianfredi, S., Gertner, J.W., Paugus, J.A., Mason, J.W.  Transient cortisol suppression in response to oral clonidine administration.  J. Amer. Acad. Child Psychiatry, 25:102-104, 1986.

Woolston, J.L.  A child's reaction to his parents' problems. Pediatrics in Review, 8:169-17, 1986.

Woolston, J.L.  Failure to thrive:  The current challenge of diagnostic classification.  Bates, R. and Morreale, S. (eds), Failure to Thrive Symposium, 1984, Toronto, Ontario:  Ontario Ministry of Community and Social Services Publication, pp. 70-81, 1986.

Woolston, J.L.  Obesity of infancy and early childhood.  J. Amer. Acad. Child Adol. Psychiatry, 26:123-126, 1987.

Woolston, J.L.  Theoretical considerations of the adjustment disorders.  J. Amer. Acad. Child Adolesc. Psychiatry, 27: 280-287, 1988.

Riddle, M.A., Hardin, M.T., Cho, S.C., Woolston, J.L., Leckman, J.F. Desipiramine treatment of boys with attention deficit disorder and tics: Preliminary clinical experience.  J. Amer. Acad. Child Adolesc. Psychiatry, 811-814, 1988.

Joseph L. Woolston, M.D.                    7

Woolston, J.L.   Issues in child and adolescent psychiatric hospitalization: An introduction.  J. Amer. Acad. Child Adolesc. Psychiatry, 28:20, 1989.

Woolston, J.L.   Transactional risk model for short and intermediate term psychiatric inpatient treatment of children.  J. Amer. Acad. Child Adolesc. Psychiatry, 28:38-41, 1989.

Woolston, J.L., Rosenthal, S.L., Riddle, M.A., Sparrow, S.S. Cicchetti, D., Zimmerman, L.D.  Childhood comorbidity of anxiety/affective and behavior disorders.  J. Amer. Acad. Child Adolesc. Psychiatry, 28: 707-713, 1989.

Riddle, M.A., Brown, N., Dzubinski, D., Jetmalani, A.J., Law, Y., Woolston, J.L.  Fluoxetine overdose in an adolescent.  J. Amer. Acad. Child Adolesc. Psychiatry, 28: 587-588, 1989.

Riddle, M.A., Hardin, M.T., King, R.A., Scahill, L., Woolston, J.L. Fluoxetine treatment of children and adolescents with Tourette's and obsessive compulsive disorders:  Preliminary clinical experience.  Journal Amer. Acad. Child Adolesc. Psychiatry, 29: 45-48, 1990.

Woolston, J.L., Riddle, M.A.  The role of advanced technology in inpatient child psychiatry:  leading edge or useful aid?  J. Amer. Acad. Child Adolesc. Psychiatry, 29: 905-908, 1990.

Epstein, M.A., Shaywitz, S.E., Shaywitz, B.A., Woolston, J. L.   The boundaries of attention deficit disorder.  J. Learning Disabilities, : 78-86, 1991.

Jacobsen, L.K., Chappel, P., Woolston, J.L. Buproprion and compulsive behavior.  J. Am. Acad. Child Adolesc. Psychiatry, 33:  143-144, 1994.

Jacobsen, L.K., Walker, M.C., Edwards, J.E., Chappell, P., Woolston, J.L.   Case study:  Clozapine in the treatment of a young adolescent with schizophrenia.  J. Am. Acad. Child Adolesc. Psychiatry, 33: 645-650, 1994.

Luthar, S.S., Woolston, J.L., Sparrow, S.S., Zimmerman, L.D., Riddle, M.A.   Adaptive behaviors among psychiatrically hospitalizaed children:  The role of intelligence and related attitudes.  J. Clin. Child Psychology, 24:98-108, 1995.

Publications:
Books

Woolston, J.L.   Eating and Growth Disorders in Infants and Children. Developmental Clinical Psychology and Psychiatry, Vol 24, Newbury Park, CA: Sage Publications, 1991.

Joseph L. Woolston, M.D.               8

Publications:
Reviews, chapters, book reviews

Woolston, J.L.  Book review of The Battered Child, 3rd Ed., Kempe, C.H. and Helfer, R.E. in J. Nerv. Mental Disease, 170:253, 1985.

Woolston, J.L.  Eating disorders in childhood.  Michaels, R.(ed.), Psychiatry, Philadelphia:  Lippincott, Co., Vol. 2, 2: 1-8, 1985.

Woolston, J.L.  Diagnostic classification:  The current challenge in failure to thrive syndrome research.  Drotar, D. (ed.), New Directions in failure to thrive:  Research and Clinical Practice, New York:  Plenum Publishing, pp. 225-234, 1985.

Woolston, J.L.  Suicide.  Rudolph, A.M. (ed.), Pediatrics Eighteenth Edition, Norwalk, CT.:  Appleton-Century-Crofts, pp. 67-68, 1987.

Woolston, J.L.  Childhood onset schizophrenia. Rudolph, A.M. (ed.), Pediatrics Eighteenth Edition, Norwalk, CT.:  Appleton-Century-Crofts, pp. 5-66, 1987.

Woolston, J.L.  Eating disorders.  Rudolph, A.M. (ed.), Pediatrics Eighteenth Edition, Norwalk, CT.:  Appleton-Century-Crofts, pp.54-58, 1987.

Woolston, J.L.  Anticipating guidance for common emotional concerns. Rudolph, A.M. (ed.), Pediatrics Eighteenth Edition, Norwalk, CT.:  Appleton-Century-Crofts, p.48, 1987.

Woolston, J.L.  Peer relationships.  Rudolph, A.M. (ed.), Pediatrics Eighteenth Edition, Norwalk, CT.:  Appleton-Century-Crofts, pp. 48-49, 1987.

Woolston, J.L.  Book reviews of Parental Influences:  In Heal and Disease, Anthony, E.J. and Polloch, G.H. in J. Nerv. Mental Disease, 5:454-455, 1988.

Woolston, J.L.  Eating disorders in infancy.  Blinder, B.J. (ed.), Modern Concepts of Eating Disorders:  Diagnosis, Treatment, Research, New York:  Spectrum Medical Books, 1988.

Woolston, J.L., Forsyth, B.  Obesity in infancy and early childhood: Diagnostic schema.  Advances in Clinical Child Psychol., 12, New York: Plenum Publishing Corp., 1989.

Woolston, J.L.  Obesity of Infancy and Childhood.  Wiener, J.M. (ed.), Textbook of Child and Adolescent Psychiatry.  Washington, DC: American Psychiatric Press, Inc., pp. 382-387, 1991.

Joseph L. Woolston, M.D.                    9

     Woolston, J.L.    Adjustment disorders in childhood and adolescence.
Michaels, R. (ed.), Psychiatry, Philadelphia: Lippincott, Co.,
Vol. 2, 51: 1-7, 1992.

     Epstein, M.A., Shaywitz, S.E., Shaywitz, B.A., Woolston, J.L.   The
boundaries of attention deficit disorder.  Shaywitz, S.E. and Shaywitz,
B.A. (eds.)  Attention Deficit Disorder Comes of Age.  Austin, TX:
Pro Ed, pp.  197-217; 1992.

     Woolston, J.L.   (ed.) Eating and Growth Disorders in Children and
Adolescents.  Child and Adolescent Psychiatric Clinics of North America,
Vol. 2, January 1993.

     Woolston, J.L.   General systems issues in child and adolescent
consultation and liaison psychiatry.  Lewis, M. and King, R.A. (eds.)
Consultation-Liaison in Pediatrics.  Child and Adolescent Psychiatric
Clinics of North America, Vol. 3, pp. 427-437, July 1994.

     Woolston, J.L., Binkley, L.G., Cook, S.C., Hendren, R.L., Weller E.B.
the use of mental health services by minors:  Report of the American
Psychiatric Association Task Force to Study the Use of Psychiatric
Hospitalization of Minors.  Washington, D.C.:  American Psychiatric
Association Press, 1995.

Woolston, J.L., Eating and growth disorders in infants and children.
Lewis, M. (ed.) Child and Adolescent Psychiatry:  A Comprehensive Textbook,
Second Edition.  Baltimore, M.D.: Williams and Wilkins, pp. 577-586, 1996.

     Woolston, J.L., Psychiatric inpatient services.  Lewis, M. (ed.) Child
and Adolescent Psychiatry:  A Comprehensive Textbook, Second Edition.
Baltimore, M.D.: Williams and Wilkins, pp.889-894, 1996.

Woolston, J.L. Obesity of infancy and childhood.  Weiner, J.M. (ed.)
Textbook of Child and Adolescent Psychiatry, Second Edition.  Washington,
D.C.: American Psychiatric Press, Inc.  In press.

Presentations:

Woolston, J.L.  Differential use of child psychiatry and social work
a pediatric adolescent unit.  Annual Meeting of the Association for the
e of Children's Health.  Washington, D.C., 1978.

Woolston, J.L.   Psychosocial aspects of nonorganic failure to thrive
Syndrome.  Regional Council of Child Psychiatry. Philadelphia,
Pennsylvania, 1982.

Woolston, J.L.   Systems theory and psychiatry consultation liaison on pediatric intensive care unit. Institute of Living.  Hartford, CT., ebruary, 1982.

Woolston, J.L.   Failure to thrive syndrome:  The current challenge of .agnostic classification.  Conference on Failure to Thrive Syndrome. itario Centre for the Prevention of Child Abuse.  Toronto Ontario, ptember 21, 1984.

Woolston, J.L.  Suicide and the school age child.  Yale-University of nnecticut Day Pediatric Symposium.  University of Connecticut, rmington, CT., May 22, 1985.

Woolston, J.L.   Obesity in infancy and early childhood. Annual Meeting the American Academy of Child Psychiatry.  San Antonio, TX., tober 25, 1985.

Woolston, J.L.  A child's reaction to his parents' problems. ildren's National Medical Center.  Washington, D.C., March 15, 1986.

Woolston, J.L.  Psychiatry and Education:  An interactive  workshop. oject Learn, New London, CT., November 9, 1985; December 6, 1986.

Woolston, J.L., Cotton, N., Harper, G., Irwin, M., Pfeffer, C. lking the biopsychosocial monster:  A practical guide to child chiatry inpatient treatment planning.  Annual Meeting of the American demy of Child and  Adolescent Psychiatry.  Washington, D.C., ober 24, 1987.

Woolston, J.L., Cotton, N., Harper, G.  How to do inpatient atment planning.  Annual Meeting of the American Academy of Child and lescent Psychiatry.  Seattle, Washington, October 26, 1988.

Woolston, J.L.  The role of advanced technology in inpatient child chiatry:  leading edge or useful aid?  Sixth Annual Einstein Symposium sychiatry.  New York, New York, October 6, 1989.

Woolston, J.L.  Who is admitted and what can we do for them ? itute on New Directions In Inpatient Child and Adolescent Psychiatry. al Meeting of the American Academy of Child and Adolescent Psychiatry. York, New York, October 11, 1989.

Woolston, J.L.  Principles of Adolescent Psychopathology.  Course on escent Psychiatry.  Annual Meeting of the American Psychiatric ciation, New York, New York, May 13, 1990.

Woolston, J.L., Cotton, N., Roth, H.  Architectural Principals of tient Services.  Annual Meeting of the American Academy of Child and