## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

KELLY PHANEUF,             :
  Plaintiff,            :
                              :
v.                           :
                              :
ROSE MARIE CIPRIANO;     :     Civil No. 3:03CV0372(AVC)
DORENE M. FRAIKIN; KATHLEEN  :
BINKOWSKI; TOWN OF        :
PLAINVILLE; and PLAINVILLE   :
BOARD OF EDUCATION,       :
  Defendants.           :

### RULING ON THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This is an action for damages brought pursuant to 42 U.S.C. § 1983,[1] and common law tenets concerning negligence, infliction of emotional distress, and invasion of privacy. The plaintiff, Kelly Phaneuf, alleges that the defendants, Plainville High School principal Rose Marie Cipriano, Plainville High School substitute nurse Dorene Fraikin, superintendent of Plainville public schools Kathleen Binkowski, the Plainville Board of Education, and the Town of Plainville, subjected her to a strip search in violation of the Fourth Amendment to the United States Constitution.

The defendants filed the within motion for summary judgment

---

[1] Title 42 of the United States Code, section 1983, states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983.

pursuant to Fed. R. Civ. P. 56(c), arguing that there are no genuine issues of material fact, and that they are entitled to judgment as a matter of law.  On July 21, 2004, the court granted the motion, concluding that the search of Phaneuf was both reasonable at its inception and in scope.  Having granted the motion on other grounds, the court declined to resolve whether the defendants were entitled to qualified immunity, and further, declined to exercise jurisdiction over the remaining state law causes of action.

On May 19, 2006, the Second Circuit concluded on appeal that the search was not reasonable at its inception, vacated judgment, and remanded the case to the district court.

The issues presented are: 1) whether the defendants are entitled to qualified immunity from the § 1983 cause of action; 2) whether the defendants are entitled to qualified governmental immunity from the negligence causes of action; 3) whether the conduct of the defendants was sufficiently extreme and outrageous as to establish an intentional infliction of emotional distress claim; and 4) whether the defendants met their burden to show that there is no genuine issue of fact precluding summary judgment as to the unreasonable intrusion upon seclusion claim.

For the reasons set forth hereafter, the motion for summary judgment (document no. 20) is GRANTED in part, and DENIED in part.

**FACTS:**

Examination of the complaint, pleadings, Local Rule 56 statements, and exhibits accompanying the motion for summary judgment, and the responses thereto, discloses the following undisputed, material facts.

On June 7, 2002, the seniors at Plainville High School were to attend their senior class picnic at an off-campus location. Prior to departure, various teachers checked each student's bag for security purposes. One Mrs. Nuzzillilo, a teacher at Plainville High School, checked the plaintiff, Kelly Phaneuf's bag.

At least one student, one Michele Cyr, reported to one Cindy Birdsall, a teacher at Plainville High School, that Kelly Phaneuf had informed Cyr and several other students that she possessed marijuana. Cyr reported that Phaneuf told the students she planned to hide the substance in her pants during the mandatory bag check. Birdsall conveyed this information to the school principal, the defendant, Rose Marie Cipriano.[2] Cipriano considered Cyr's report trustworthy because Cyr worked closely with school staff as an office aid in the high school.[3] Phaneuf,

---

[2] The record is unclear as to whether Cyr also personally conveyed this information to Cipriano, or whether Birdsall alone echoed Cyr's story to Cipriano.

[3] Cipriano's affidavit is not completely consistent with her deposition testimony on this point. Her affidavit indicates that Birdsall told her a reliable student was the informant, while her

however, had a history of disciplinary problems.

Cipriano boarded the bus on which Phaneuf sat and asked
Phaneuf to disembark and to follow her.  She and Birdsall led
Phaneuf to the nurse's office while explaining to her that a
fellow classmate had informed them that Phaneuf possessed
marijuana.  Phaneuf denied the allegation in a manner that made
both Cipriano and Birdsall believe she was lying.  Once at the
nurse's office, Cipriano informed the substitute nurse, the
defendant Dorene Fraikin, that she must conduct a strip search of
Phaneuf's underpants.  Cipriano ordered Fraikin to specifically
"open and check" that area.  When Fraikin expressed apprehension
in conducting the search herself, Fraikin and Cipriano called
Phaneuf's mother, Lisa Phaneuf.  They requested that she come to
the school to conduct a strip search of her daughter's person for
the possible possession of marijuana.

Cipriano then conducted a search of Kelly Phaneuf's bag.
She found cigarettes and a lighter. Possession of these items on
school grounds violated school rules.

When Lisa Phaneuf arrived at the school, Cipriano instructed
her to conduct a strip search of her daughter's pants.  She did
not order her to search Kelly's shirt.  Lisa conducted the search

testimony was that Birdsall told her the names of the students
who heard Phaneuf's statement regarding the marijuana.  She
further testified that she later had to be reminded of who the
student informers were.

4

in a small room while substitute nurse Fraikin stood behind her.
A closed curtain separated the doorway of the room from the
common area.  During the search Kelly Phaneuf lifted up her shirt
and pulled down her bra to show that nothing was tucked in either
of these two articles of clothing.  She then dropped her skirt to
the floor.  Lisa Phaneuf asked Fraikin if that was enough, and
Fraikin answered that it was not.  Kelly then pulled her
underpants away from her body to show that there was no marijuana
in her underpants.  Fraikin maintains that she turned away and
did not watch the search.  Kelly Phaneuf, however, maintains that
Fraikin watched the search.

     The search did not reveal marijuana or any other illegal
substance.  Lisa Phaneuf drove her daughter home.  Lisa later
drove Kelly back to the school, and Cipriano gave Kelly a ride to
her senior picnic.

     Kelly Phaneuf has testified that as a result of the search,
she gets in a "bad mood" at the mention of the school, and that
her graduation was ruined because she had to accept her diploma
from Cipriano.  Further, she has endured "angst" and
"depression."  Additionally, the search has been a subject that
she has discussed with her therapist, and has increased her
feelings of "insecurity," and lack of trust in others.

     On January 31, 2003, Kelly Phaneuf filed a complaint in
Connecticut superior court.  On March 3, 2003, the defendants

filed a notice of removal to the United States District Court for the District of Connecticut.  On March 17, 2004, the defendants filed the present motion for summary judgment.

## STANDARD:

The court appropriately grants summary judgment when the evidentiary record shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In determining whether the record presents genuine issues for trial, the court must view all inferences and ambiguities in a light most favorable to the non-moving party.  See Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991), cert. denied, 502 U.S. 849 (1991). A plaintiff raises a genuine issue of material fact if "the jury could reasonably find for the plaintiff."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Rule 56 "provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Id. at 247-48.  "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims . . . [and] it should be interpreted in a way that allows it to accomplish this purpose." Celotex v. Catrett, 477 U.S. 317, 323-324 (1986).

**DISCUSSION:**

I.  Qualified Immunity from the Section 1983 Cause of Action

        Without conceding that the search in this case was
unconstitutional, the defendants argue that they are entitled to
summary judgment because they are shielded by qualified immunity.
Specifically, because in the Second Circuit it "was not clearly
established at the time" of the search that the defendants'
actions violated the Fourth Amendment, the defendants contend
that "this motion should be granted. . . ."

        Phaneuf responds that the motion should be denied because
"the case law was clear on the date of the plaintiff's search"
that the defendants' actions were unconstitutional.
Specifically, Phaneuf asserts that the Second Circuit requires
that probable cause be present "when a teacher conducts a highly
intrusive invasion such as a strip search. . . ."  Moreover,
Phaneuf invites the court to look to other jurisdictions and
fields of law, in support of her argument that it was clearly
established that the search in this case was unlawful.

        "The doctrine of qualified immunity protects state officials
from civil liability for actions performed in the course of their
duties if 'their conduct does not violate clearly established
statutory or constitutional rights of which a reasonable person
would have known.'"  Luna v. Pico, 356 F.3d 481, 490 (2d Cir.
2004) (quoting Wilson v. Layne, 526 U.S. 603, 614 (1999)

7

(internal citation and quotation marks omitted)).  "The doctrine protects officials who 'act in ways they reasonably believe to be lawful.'"    Luna v. Pico, 356 F.3d 481, 490 (2d Cir. 2004) (quoting Anderson v. Creighton, 483 U.S. 635, 641 (1987)).  A defendant is, therefore, not liable if he did not violate clearly established law, or if it was objectively reasonable for him to believe that he was not violating clearly established law. Anderson v. Recore, 317 F.3d 194, 197 (2d Cir. 2003); Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 250 (2d Cir. 2001).

The Second Circuit has held that "a right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful."  Luna v. Pico, 356 F.3d 481, 490 (2d Cir. 2004); Anderson v. Recore, 317 F.3d 194, 197 (2d Cir. 2003).  The pertinent inquiry is whether "a reasonable person in the defendant's position should know about the constitutionality of the conduct."  McCullough v. Wyandanch Union Free Sch. Dist., 187 F.3d 272, 278 (2d Cir. 1999); see Anderson v. Creighton, 483 U.S. at 640 ("The right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing

violates that right.").

The Supreme Court has recently instructed that, for purposes of this "clearly established" inquiry, the analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition." Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (internal citations omitted). Accordingly, cases "cast at a high level of generality," will only be sufficient to clearly establish the unlawfulness of the defendants' actions where the conduct at issue is "obviously" a violation based on the prior cases. Id.

Further, "even assuming a state official violates a plaintiff's constitutional rights, the official is protected nonetheless if he objectively and reasonably believed that he was acting lawfully." Luna v. Pico, 356 F.3d 481, 490 (2d Cir. 2004); see Hunter v. Bryant, 502 U.S. 224, 229 (1991) ("The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'") (quoting Malley v. Briggs, 475 U.S. 335, 341, 343 (1986)).

Municipalities, however, "are not entitled to qualified immunity for their actions, even where the individual officers who acted on the municipality's behalf would be." Skehan v. Village of Mamaroneck, 465 F.3d 96, 109 (2d Cir. 2006) (internal citations omitted). "The defense is likewise unavailable to

government entities such as [a]. . . Board of Education."
Everson v. Bd. of Educ., 123 Fed. Appx. 221, 228 (6th Cir. 2005).

Assuming without deciding that the defendants violated
Phaneuf's constitutional rights,[4] the court concludes that the
defendants are nevertheless shielded by qualified immunity.  At
the time of the search in this case, it was not clearly
established that it would be unconstitutional for school
officials to conduct a search consistent with the undisputed
facts of this case, namely, that the defendants, after having
received a tip that a student has drugs, conducted a strip search
of a student with a history of discipline problems, while in the
privacy of secluded area, after receiving the nominal consent and
assistance of the student's mother.

The parties cite a single Second Circuit decision addressing
the constitutionality of strip searches in schools, M.M. v.
Anker, 607 F.2d 588, 588 (2d Cir. 1979) (per curiam).  In that
case, the Second Circuit held that "when a teacher conducts a

_____

[4] On appeal of the grant of the defendants' motion for
summary judgment, the Second Circuit stated that "we conclude
that the strip search was not justified at its inception, and
therefore was unreasonable under the attendant circumstances. . .
." The court presumes that this conclusion refers only to the
defendants' failure to establish the reasonableness of the search
at the present stage of the proceedings.  That is, the Second
Circuit did not hold sua sponte that the defendants conclusively
violated the Fourth Amendment, but rather, held that the
defendants were not entitled to summary judgment because the
present evidentiary record, when viewed in the light most
favorable to Phaneuf, did not establish that the search was
reasonable as a matter of law.

highly intrusive invasion such as the strip search. . ., it is
reasonable to require that probable cause be present." M.M. v.
Anker, 607 F.2d 588, 589 (2d Cir. 1979) (per curiam).  Six years
later, however, the United States Supreme Court put the validity
of the Second Circuit's holding in doubt when it concluded that
"the accommodation of the privacy interests of schoolchildren
with the substantial need of teachers and administrators for
freedom to maintain order in the schools does not require strict
adherence to the requirement that searches be based on probable
cause to believe that the subject of the search has violated or
is violating the law." New Jersey v. T.L.O., 469 U.S. 325, 341
(1985).  Specifically, in a case in which student challenged the
constitutionality of a search of her purse, the Court held that
"the legality of a search of a student should depend simply on
the reasonableness, under all the circumstances, of the search."
Id.

    Twenty years later, the Second Circuit had occasion in the
present case to join those other circuit courts that had
confirmed that the reasonableness standard articulated in New
Jersey v. T.L.O., 469 U.S. 325, 341 (1985), should be applied in
the context of strip searches of students.  Phaneuf v. Fraikin,
448 F.3d 591, 596 (2d Cir. 2006).  In applying this standard, the
Second Circuit drew "upon the Supreme Court's 'stop and frisk' or
'Terry stop' jurisprudence" out of a belief that Supreme Court's

reasonableness standard in <u>T.L.O.</u> had its origins in this doctrine. <u>Phaneuf v. Fraikin</u>, 448 F.3d 591, 597 n. 5 (2d Cir. 2006) (citing <u>Terry v. Ohio</u>, 392 U.S. 1, 24 (1968) (permitting a limited search for weapons upon a police officer's reasonable suspicion that the defendant is armed and dangerous)).

In sum, at the time of the search in this case, there was one circuit court decision on point that arguably was no longer binding precedent because the Supreme Court had articulated a different standard in a similar but distinct context. And since the search in this case, in order to apply the Supreme Court's standard in the context of a strip search, the Second Circuit had to draw from a markedly different doctrine in order to arrive at a conclusion. In these circumstances, it is difficult to accept Phaneuf's assertion that "any reasonable individual would have understood that [the defendants'] conduct was unlawful. . . ."

To the contrary, at the time of the search in this case, the Supreme Court had upheld the constitutionality of searches in schools absent probable cause, <u>New Jersey v. T.L.O.</u>, 469 U.S. 325, 341 (1985), or even any individualized suspicion. <u>Vernonia Sch. Dist. v. Acton</u>, 515 U.S. 646, 665 (1995) (holding that a school's random drug testing of student athletes was constitutional). Moreover, courts had previously upheld the constitutionality of strip searches of students. <u>See</u>, <u>e.g.</u>, <u>Cornfield v. Consolidated High Sch. Dist. No. 230</u>, 991 F.2d 1316,

12

1323 (7th Cir. 1993) (concluding that a strip search of student was both reasonable at its inception and in scope). Further, courts had repeatedly upheld the constitutionality of searches of students that had been initiated on the basis of an informant's tip. See, e.g., C.B. v. Driscoll, 82 F.3d 383, 388 (11th Cir. 1996) (concluding that reasonable grounds for a search of student existed where supported by a classmate's tip to school administrators). Similarly, courts had repeatedly upheld the constitutionality of searches of students that had been justified in light of a student's previous record of misbehavior. See, e.g., Cornfield v. Consolidated High Sch. Dist. No. 230, 991 F.2d 1316, 1322 (7th Cir. 1993) (concluding that a search was reasonable at its inception in part because of a student's history of misbehavior). Likewise, courts had repeatedly upheld the constitutionality of searches that had been justified in light of an individual's evasive behavior. See, e.g., United States v. Paulino, 850 F.2d 93, 98 (2d Cir. 1988) ("furtive movement provided a legal basis for [a] protective search").

The court concludes that at the time of the search in this case, it was not clearly established that the defendants' conduct was unconstitutional. The court reaches this conclusion in light of the case law that at the very least adds some support to the defendants' contention that the search of Phaneuf was reasonable, as well as the dearth of binding precedent that necessitated the

13

Second Circuit's borrowing from distinct lines of case law in order to reach a resolution in this case.  In such circumstances, reasonable people in the defendants' positions would not have had a clear understanding as to the constitutionality of their conduct.  See McCullough v. Wyandanch Union Free Sch. Dist., 187 F.3d 272, 278 (2d Cir. 1999) (establishing that the pertinent inquiry is whether "a reasonable person in the defendant's position should know about the constitutionality of the conduct.").

Because the court concludes that it was not clearly established when the defendants searched Phaneuf that their actions were unconstitutional, the individual defendants are entitled to qualified immunity.[5]  As such, Cipriano, Fraikin, and Binkowski cannot be held liable for violating the Fourth Amendment, and thus are entitled to summary judgment with respect to Phaneuf's § 1983 cause of action.  However, because the defense of qualified immunity is not available to state entities, see Skehan v. Village of Mamaroneck, 465 F.3d 96, 109 (2d Cir. 2006), the Town of Plainville and the Plainville Board of Education may still be liable under § 1983.

---

[5] Conceivably, if it was clearly established that the search was unconstitutional, the defendants may still be entitled to qualified immunity if it was objectively reasonable for the defendants to believe that they were not violating clearly established law.  As the court grants summary judgment on other grounds, the court declines to resolve this issue.

II.    <u>State Law Causes of Action</u>

    A.    Qualified Governmental Immunity from Negligence Claims

    The defendants further contend that they are entitled to summary judgment with respect to Phaneuf's negligence and negligent infliction of emotional distress causes of action. They argue that these claims "fail on the basis that the Defendants are clearly entitled to qualified governmental immunity for their discretionary actions."

    Phaneuf concedes that the defendants' actions were discretionary, but responds that the defendants are nevertheless not entitled to immunity because Phaneuf "falls within an identifiable class of persons, namely, schoolchildren, subject to imminent harm and, therefore, the defendants owed a duty to her." As such, she argues, the "defendants should be held responsible in this instance for failing to act to prevent the risk of imminent harm to the plaintiff, and instead causing harm to the plaintiff by virtue of the strip search."

    In Connecticut, although municipalities are generally immune from liability in tort, municipal employees are personally liable for their own tortious conduct.  <u>E.g.</u> <u>Evon v. Andrews</u>, 211 Conn. 501, 505 (1989).  The doctrine of governmental immunity, however, has provided some limited exceptions to this general rule of liability.  <u>Burns v. Bd. of Educ.</u>, 228 Conn. 640, 645 (1994).  "A municipal employee has a qualified immunity in the performance of

a governmental duty, but he may be liable if he misperforms a ministerial act, as opposed to a discretionary act." Burns v. Bd. of Educ., 228 Conn. 640, 645 (1994).

Further, even where a municipal employee performs a discretionary act in furtherance of a governmental duty, he may still be liable "where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm. . . ." Id. Whether this exception to governmental immunity applies is a question of law. Doe v. Petersen, 279 Conn. 607, 621 (2006).

Phaneuf argues that it is in this "imminent harm" exception that the defendants' liability lies. She misconstrues the nature of this exception, however, and its applicability to this case.

"By its own terms, [the 'imminent harm' exception] requires three things: (1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm." Violano v. Fernandez, 280 Conn. 310, 329 (2006).

This third requirement, that imminent harm is apparent to the public official, is no small hurdle under Connecticut law. For example, where a police officer pulled over a driver who was discernibly intoxicated, only to later let the driver depart and eventually kill another motorist in a car accident, the Supreme Court of Connecticut held that the police officer was entitled to

16

governmental immunity. <u>Shore v. Stonington</u>, 187 Conn. 147, 154
(1982). The mere fact that the individual was both drunk and
driving did "not overcome the threshold requirement for
submission of the case to the jury, namely, that . . . [the
police officer] could have been aware that [the driver]'s conduct
threatened an identifiable victim with imminent harm." <u>Id.</u>; <u>see</u>
<u>Doe v. Petersen</u>, 279 Conn. 607, 617 (2006) (highlighting that
<u>Shore</u> was decided on the basis of a lack of "apparentness,"
rather than lack of imminent harm or an identifiable victim).
While releasing the drunk driver placed identifiable victims,
i.e. other drivers, in danger of an imminent harm, i.e. an auto
accident, the police officer was nevertheless immune because he
"could not have been aware that the likely consequence of his
action was a fatal collision. . . ." <u>Doe v. Petersen</u>, 279 Conn.
607, 617 (2006).

"The 'apparentness' requirement is grounded in the policy
goal underlying all discretionary act immunity, that is, 'keeping
public officials unafraid' to exercise judgment." <u>Id.</u> at 617
(citing G. Bermann, "Integrating Governmental and Officer Tort
Liability," 77 <u>Colum. L. Rev.</u> 1175, 1180 (1977)). "It surely
would ill serve this goal to expose a public official to
liability for his or her failure to respond adequately to a harm
that was not apparent to him or her." <u>Doe v. Petersen</u>, 279 Conn.
607, 617 (2006).

The defendants have not expressly contested that Phaneuf suffered emotional harm as a result of this search.[6]  Further, the defendants concede that Connecticut courts have on occasion recognized public school students as "identifiable person[s]" under this exception.  See, e.g., Burns v. Bd. of Educ., 228 Conn. 640, 645 (Conn. 1994).  Nevertheless, the defendants are immune from liability because Phaneuf has failed to identify for the court any evidence that it was apparent to the defendants that the search in this case would result in emotional harm to Phaneuf.  Nor has Phaneuf articulated why it should have been apparent to the defendants that she would suffer from angst, depression, insecurity, and an inability to trust, as a result of being searched.  As such, the defendants are entitled to qualified governmental immunity with respect to Phaneuf's negligence and negligent infliction of emotional distress causes of action.  Therefore, with respect to these claims, the court grants the motion for summary judgment.

B.  Intentional Infliction of Emotional Distress

Cipriano and Fraikin also assert that they are entitled to summary judgment with respect to Phaneuf's intentional infliction of emotional distress cause of action.  Specifically, they argue that this "claim must fail because the plaintiff has failed to

---

[6] It is not clear that the harm suffered here is sufficient to satisfy the "imminent harm" requirement under Connecticut law, but as the court concludes that the defendants are entitled to governmental immunity on other grounds, the court does not resolve this issue.

present any credible evidence that the defendants intended to harm [her] emotionally, acted recklessly or that their actions were extreme and outrageous."

Phaneuf replies that "the conduct by Cipriano and Fraikin, in ordering a strip search based on an unsubstantiated tip and in participating in said strip search, amounts to conduct that is so outrageous in character as to fall within the parameters set forth by the case law allowing claims for intentional infliction of emotional distress."

The court disagrees.  While this is an infrequently litigated area of Connecticut tort law, courts have nevertheless repeatedly declined to hold public officials acting in their official capacity liable where an illegal search formed the basis of an intentional infliction of emotional distress claim.  See, e.g., Lin v. Lozinski, 3:00cv2045(AHN), 2004 U.S. Dist. LEXIS 12530, at *22 (D. Conn. Mar. 1, 2004); Rzayeva v. Foster, 134 F. Supp. 2d 239, 250 (D. Conn. 2001); Krawshuk v. Watkins, CV000499843S, 2003 Conn. Super. LEXIS 2155, at *8 (July 9, 2003).

To the contrary, "[l]iability for intentional infliction of emotional distress has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Morrissey v. Yale Univ., 268 Conn. 426, 428 (2004) (per curiam)

19

(internal citations omitted).  "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" <u>Morrissey v. Yale Univ.</u>, 268 Conn. 426, 428 (2004) (per curiam) (internal citations omitted).

"Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." <u>Appleton v. Board of Educ.</u>, 254 Conn. 205, 210 (2000).  "Only where reasonable minds disagree does it become an issue for the jury."  <u>Id.</u>

Even where the defendants' conduct is extreme and outrageous, the plaintiff must also prove that the defendants intended to inflict emotional distress, or that the defendants should have known that their acts would inflict emotional distress.  <u>Petyan v. Ellis</u>, 200 Conn. 243, 253 (1986).  "It is the intent to cause injury that is the gravamen of the tort." <u>Wilson v. Jefferson</u>, 98 Conn. App. 147, 160 (2006) (internal punctuation omitted).

While surely Phaneuf is deserving of sympathy, having been inconvenienced by an embarrassing search, there is simply no evidence that the defendants intended to cause her injury. Further, the actions of the defendants are not so egregious as to trigger liability under a theory of an intentionally tortious conduct.  Phaneuf cites no applicable case law that would lead

20

the court to conclude that it is extreme and outrageous for
school officials, acting in their official capacity, after having
received a tip that a student has drugs, to conduct a search of a
student with a history of discipline problems, while in the
privacy of secluded area, after receiving the nominal consent and
assistance of the student's mother.  While the defendants
employed an extraordinary measure by searching Phaneuf, their
acts did not "go beyond all possible bounds of decency, and [can
not]. . . be regarded as atrocious, and utterly intolerable in a
civilized community."  Morrissey v. Yale Univ., 268 Conn. 426,
428 (2004) (per curiam) (internal citations omitted).

     In these circumstances, the court concludes that the
defendants' conduct is insufficient to satisfy the requirement
that it be extreme and outrageous.  Further, the court concludes
that there is no evidence that the defendants intended to cause
Phaneuf harm, or that they should have known that their actions
would cause her harm.  As such, the court grants the within
motion with respect to Phaneuf's intentional infliction of
emotional distress cause of action.

     C.  Invasion of Privacy

     Finally, Cipriano and Fraikin contend that they are entitled
to summary judgment with respect to Phaneuf's invasion of privacy
claim.  They argue that Phaneuf has "failed to allege or present
any credible evidence sufficient to prove any unprivileged

publication or malice, both essential elements of the claim."

Phaneuf responds that the defendants have misconstrued her invasion of privacy cause of action as a false light claim, when in fact she has brought an unreasonable intrusion upon seclusion claim. She correctly notes that the Supreme Court of Connecticut has recognized such a claim as a category of the tort of invasion of privacy. See Perkins v. Freedom of Info. Comm'n, 228 Conn. 158, 172 n. 16 (1993). Further she asserts that "she has alleged properly a claim for intrusion upon seclusion, and that case law supports a finding that allegations of strip searches, without reasonable or probable cause, satisfies the elements of intrusion upon seclusion."

In the face of this apparent misconstruction of Phaneuf's claim, the defendants reply simply that because Phaneuf "admits" that her intrusion upon seclusion claim "directly corresponds to her constitutional claims arising from the alleged unlawful strip search of her person. . ., if the Court grants summary judgment on the constitutional claim it should also grant summary judgment on the intrusion upon seclusion claim."

To the extent that this argument has any merit, the defendants' fleeting reply nevertheless fails to address their burden to "show that there is no genuine issue as to any material fact. . . ." Fed. R. Civ. Pro. 56(c); Golden Pac. Bancorp v. FDIC, 375 F.3d 196, 200 (2d Cir. 2004) (noting that the burden is

22

on the moving party under Rule 56(c)).  As such, with respect to Phaneuf's invasion of privacy cause of action, the defendants are not entitled to summary judgment.

### CONCLUSION:

For the foregoing reasons, the motion for summary judgment (document no. 20) is GRANTED in part, and DENIED in part. Specifically, with respect to Phaneuf's § 1983 cause of action, the motion is granted as to Cipriano, Fraikin, and Binkowski, but denied as to the Town of Plainville, and the Plainville Board of Education.  Further, as to all the defendants, the motion is granted with respect to Phaneuf's negligence, and negligent infliction of emotional distress causes of action.  Finally, as to Cipriano and Fraikin, the motion is granted with respect to the intentional infliction of emotion distress cause of action, but denied with respect to the invasion of privacy cause of action.

It is so ordered this 25th day of January, 2007, at Hartford, Connecticut.

/s/

_____
Alfred V. Covello
United States District Judge