NO.: CV 04 4001319 S                    :          SUPERIOR COURT

KELLY PHANEUF                           :          J.D. OF NEW BRITAIN

VS.                                     :          AT NEW BRITAIN

TOWN OF PLAINVILLE, ET AL               :          FEBRUARY 17, 2005

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

**I.      BACKGROUND AND FACTS:**

On June 7, 2002, the senior class students and administrators of Plainville High School were preparing to travel to an off-campus, annual senior picnic.  In preparation for this event, school officials had informed the students that prior to their departure for the picnic, their bags would be checked for contraband, so as to insure that the picnic would be a safe and appropriate environment for all students.

Prior to attending the "bag check" in the auditorium that morning, the Plaintiff Kelly Phaneuf told a fellow classmate, Michelle Cyr, that she was in possession of marijuana, that she planned on smoking it at the picnic and that she was going to place it down her pants during the "bag check" so as to escape detection.  (Affidavit of Michele Cyr, Attached as Exhibit A)  After learning of this,

Ms. Cyr informed a teacher, Cindy Birdsall, and the school principal, Rose Marie Cipriano, about the Plaintiff's statements to her and her intentions.   (Cyr Affidavit, Exhibit A)  (Affidavit of Cindy Birdsall, attached as Exhibit B)  (Affidavit of Rose Marie Cipriano, attached as Exhibit C)

After speaking with Ms. Cyr, Principal Cipriano entered the bus that the Plaintiff had boarded and asked the Plaintiff to accompany her to the foyer of the school.  (Aff. of Cipriano, Exhibit C) Once inside the foyer, Principal Cipriano advised the Plaintiff that she had been informed by one of Ms. Phaneuf's fellow classmates that the Plaintiff had marijuana in her possession, specifically down her pants.  (Aff. of Cipriano, Exhibit C)  (Aff. of Birdsall, Exhibit B)  The Plaintiff denied the allegation.  Id.

At this point, Principal Cipriano determined that the Plaintiff's belongings and person would need to be checked to determine if she possessed marijuana in violation of school policy and the law.  Id.  Principal Cipriano's decision was based on many factors including, but not limited to, the suspicious manner of the Plaintiff's denial, the credible and specific information from Ms. Cyr, the Plaintiff's past history of disciplinary problems, her duty to insure a safe and

healthy environment at the school function and her duty to prevent drug use by the students in her care.  (Aff. of Cipriano, Exhibit C)After determining that a search of the Plaintiff would need to be performed, Principal Cipriano had the Plaintiff accompany her to the school nurse's office.  Once at the nurse's office, Principal Cipriano and school nurse Doreen Fraikin placed a telephone call to the Plaintiff's mother, Lisa Phaneuf informing her that her presence at the high school was needed.  (Aff. of Cipriano, Exhibit C)  As Plaintiff's mother was on her way to the school, an initial search of the Plaintiff's purse revealed cigarettes and a lighter, which were contraband and constituted a violation of school rules. Shortly after, Mother Phaneuf arrived and Nurse Fraikin, Mother Phaneuf and the Plaintiff entered into a private room within the nurse's office and closed a curtain.  Mother Phaneuf physically performed the search of her daughter's pants while Nurse Fraikin stood with her back to the Plaintiff.  (Affidavit of Dorene Frakin, attached as Exhibit D)  No marijuana was found during the search and the Plaintiff, thereafter, was allowed to return to the senior picnic[1].

---

[1] Immediately following the search, the Plaintiff went home with her mother.  Later in the day, Plaintiff's mother drove the Plaintiff back to Plainville High School wherein Defendant Principal Cipriano gave Plaintiff a ride to the senior picnic.  Plaintiff offered no complaint or objection to the search during this ride.

Plaintiff has filed a fifteen count Complaint against Defendants, Rose Marie Cipriano, Dorene M. Fraikin, Kathleen Binkowski, Plainville Board of Education and Town of Plainville. **Count One** alleges violations of Article First, § 7 of the Connecticut Constitution. **Counts Two, Three and Four** allege negligence against Rose Marie Cipriano, Doreen M. Fraikin and Kathleen Binkowski, respectively. **Counts Five and Six** allege Invasion of Privacy against Rose Marie Cipriano and Doreen M. Fraikin, respectively. **Counts Seven and Eight** allege Intentional Infliction of Emotional Distress against Rose Marie Cipriano and Doreen M. Fraikin, respectively. **Counts Nine, Ten and Eleven** allege Negligent Infliction of Emotional Distress against Rose Marie Cipriano, Doreen M. Fraikin, and Kathleen Binkowski, respectively. **Count Twelve** alleges Negligence pursuant to Connecticut General Statutes § 52-557n against Plainville Board of Education and the Town of Plainville. **Count Thirteen** alleges indemnity pursuant to Connecticut General Statutes § 7-465 against the Town of Plainville. **Count Fourteen** alleges indemnity pursuant to Connecticut General Statutes § 10-235 against Plainville Board of Education. **Count Fifteen** alleges

Negligent Infliction of Emotional Distress against the Plainville Board of Education and Town of Plainville.

## II.   SUMMARY JUDGMENT STANDARD:

Summary judgment shall be rendered forthwith if the pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Practice Book § 17-49.

The test to be applied when determining a motion for summary judgment is whether a party would be entitled to a directed verdict on the same facts. Lunn v. Cummings & Lockwood, 56 Conn. App. 363, 370, 743 A.2d 653 (2000). Although the party seeking summary judgment has the burden of showing the absence of any genuine issue of material fact, the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact.   Rivera v. Double A Transportation, Inc., 248 Conn. 21, 24, 727, A.2d 204 (1999).

The existence of a material fact must be demonstrated by concrete evidence.  Page v. Burger King Corporation, Superior Court, judicial district of

Hartford-New Britain at Hartford, CT Docket No. 262567, 1998 Conn. Super. LEXIS 1871, (July 2, 1998).  "Mere assertions of fact . . . are insufficient to establish the existence of a material fact."  Bartha v. Waterbury House Wrecking Co., 190 Conn. 8, 11 (1983).

## III.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE THE SEARCH OF THE PLAINTIFF WAS JUSTIFIED AND REASONABLE AND THUS DID NOT VIOLATE ARTICLE FIRST, § 7 OF THE CONNECTICUT CONSTITUTION

Count One of the Plaintiff's Revised Complaint alleges violations of Article First, § 7 of the Connecticut Constitution against all Defendants.  Because the search of the Plaintiff was justified at its inception and was carried out in a reasonable fashion as a matter of law, Defendants' Motion for Summary Judgment should be granted as to all counts of the Plaintiff's Revised Complaint.

Article First, § 7 of the Connecticut Constitution, which is similar, but not identical to the Fourth Amendment of the U.S. Constitution, provides:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation.

6

While it is well established that "federal constitutional and statutory law establishes a minimum national standard for the exercise of individual rights and does not inhibit state governments from affording higher levels of protection for such rights" Cologne v. Westfarms Associates, 192 Conn. 48, 57, 469 A.2d 1201 (1984), in the context of the Fourth Amendment, Connecticut courts will rely upon decisions of the United States Supreme Court in interpreting provisions of the Connecticut Constitution.  "We have frequently relied upon decisions of the United States Supreme Court interpreting the fourth amendment, as well as other amendments to the United States constitution, to define the contours of the protections provided in the various sections of the declaration of rights contained in our state constitution."  State v. Dukes, 209 Conn. 98, 112, 547 A.2d 10 (1988).  Accordingly, because there appears to be no Connecticut case addressing the justification or reasonableness of a strip search of a high school student, the Court should look to United States Supreme Court and Federal precedent for guidance in interpreting the contours of Article First, § 7 of the Connecticut Constitution in this context.[2]

---

[2] "In order to construe the contours of our state constitution and reach reasoned and principled results, the following tools of analysis should be considered to the extent applicable: (1) the textual approach; (2)

The United States Supreme Court has held that school officials are permitted to search students and their effects where they have reasonable cause to believe that the search will lead to the discovery of evidence that is a violation of school rules or the law.  See New Jersey v. T.L.O., 469 U.S. 325 (1985).  The legality of a search of a student by a school official, therefore, does not require probable cause, but rather is judged "simply on the reasonableness, under all the circumstances, of the search."  Id. at 341.  "While schoolchildren do not shed their constitutional rights when they enter the schoolhouse, Fourth Amendment rights are different in public schools than elsewhere; the 'reasonableness' inquiry cannot disregard the schools' custodial and tutelary responsibility for children" (internal marks omitted) Bd. of Educ. v. Earls, 536 U.S. 822 (2002).

Determining the reasonableness of any search involves a twofold inquiry: (1) whether the search was justified at its inception; and (2) whether the search as actually conducted "was reasonably related in scope to the circumstances

---

holdings and dicta of this court, and the Appellate Court; (3) federal precedent; (4) sister state decisions or sibling approach; (5) the historical approach, including the historical constitutional setting and the debates of the framers; and (6) economic/sociological considerations."  (internal citations omitted) State v. Geisler, 222 Conn. 672, 684-85, 610 A.2d 1225 (1992).

which justified the interference in the first place.  New Jersey v. T.L.O., 469 U.S.

at 341.

> Under ordinary circumstances, a search of a student by a teacher
> or other school official will be justified at its inception when there
> are reasonable grounds for suspecting that the search will turn up
> evidence that the student has violated or is violating either the law
> or the rules of the school. Such a search will be permissible in it
> scope when the measures adopted are reasonably related to the
> objective of the search and not excessively intrusive in light of the
> age and sex of the student and the nature of the infraction.

Id. at 341-42.  Thus, the overall test depends upon many case specific factors.

In the present case, the analysis must weigh the state's interest in curtailing the

introduction and use of drugs in a high school setting against the student's

privacy interest in a public school setting.  Further, the analysis must take into

account a student's legitimate expectation of privacy on the day in question, the

justification for initiating the search, the manner in which the search was

conducted and the government's interest in maintaining a safe, healthy, drug

free environment.  See New Jersey v. T.L.O., supra.

As will be shown below, the search of the Plaintiff was justified at its

inception and was carried out in a reasonable fashion.  Thus, there was no

violation of Article First, § 7 of the Connecticut Constitution and as a matter of

law, Defendants' Motion for Summary Judgment should be granted as to all counts of the Plaintiff's Revised Complaint.

    **A.**    **Search of the Plaintiff was justified at its inception because school officials has a reasonable suspicion that the Plaintiff had contraband on her person**

The Defendants were justified to conduct a search of the Plaintiff's person because they had reasonable suspicion to believe that Plaintiff had placed marijuana down her pants based on the specific tip coming from a reliable student, Plaintiff's past disciplinary problems, Defendant's subjective impressions that Plaintiff was lying and the discovery of a lighter and cigarettes in Plaintiff's belongings.  See Phaneuf v. Cipriano, et al, Ruling on the Defendants' Motion for Summary Judgment, 330 F. Supp. 2d 74; 2004 U.S. Dist. LEXIS 15857 (2004). (Attached as Exhibit E)

The requirement of reasonable suspicion is not a requirement of absolute certainty; rather reasonable suspicion is a "commonsense, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Ornelas v. United States, 517 U.S. 690, 695 (1996).  In ascertaining whether reasonable

suspicion exists . . ."the totality of the circumstances--the whole picture--must be taken into account." <u>State v. Mann</u>, 271 Conn. 300, 345 (2004).  Further, "whether any given search was justified at its inception must be adjudged according to the circumstances existing at the moment that particular search began." <u>DesRoches by DesRoches v. Caprio</u>, 156 F. 3rd 571, 577 (4th Cir. 1998). Thus, a court looks at the totality of circumstances as they existed at the moment the Defendant's performed the strip search.  Id.   "Such circumstances include the quality of the tip, <u>see</u> <u>C.B. By and Through Breeding v. Driscoll</u>, 82 F.3d 383 (11th Cir. 1996); <u>Williams by Williams v. Ellington</u>, 936 F.2d 881 (6th Cir. 1991), the subjective suspicion of a teacher's observations, <u>see</u> <u>Cornfield By Lewis v. Consol. High Sch. Dist. No. 230</u>, 991 F.2d 1316 (7th Cir. 1993), and the student's past disciplinary problems.  See <u>Cornfield</u>, 991 F.2d at 1323; <u>Williams</u>, 936 F.2d at 887." <u>Phaneuf v. Cipriano, et al</u>, 330 F. Supp. 2d 74; 2004 U.S. Dist. LEXIS 15857 (2004)

Application of these principles leads to the conclusion that the search of the Plaintiff was justified at its inception.  The Defendants relied on a tip from a credible, reliable student that was specific as to the type of illegal substance and

specific as to its location.  Further, the Defendants were aware of Plaintiff's past disciplinary problems and suspected her of lying to them in her denial of the accusation.  Finally, once the initial search of Plaintiff's purse showed that she was in possession of cigarettes and a lighter, the Defendants were justified in their higher suspicion that she could be carrying contraband on her person.

Accordingly, the Defendants were justified to conduct a search of the Plaintiff's person because they had reasonable suspicion to believe that Plaintiff had placed marijuana down her pants.

**B.     Search of the Plaintiff was reasonable in its scope in light of the age and sex of the Plaintiff and the nature of the infraction**

The search of the Plaintiff was reasonable in it scope in light of the age and sex of the Plaintiff and the nature of the infraction.  The search of the Plaintiff was conducted within a private room in the nurse's office by the Plaintiff's mother, Lisa Phaneuf.  Defendant Fraikin, the school nurse, was present in the room during the search and stood with her back to the Plaintiff, and the Plaintiff was not required to completely remove her clothes.

"[A] search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." New Jersey v. T.L.O., 469 U.S. at 342. "A nude search of a student by an administrator or teacher of the opposite sex would obviously violate [the excessively intrusive] standard. Moreover, a highly intrusive search in response to a minor infraction would similarly not comport with the sliding scale advocated by Supreme Court in T.L.O." Cornfield, 991 F.2d at 1320.

With respect to the scope of the search in the present case, it is apparent that it was reasonably related to the objective of uncovering the marijuana that the Defendants reasonably believed was in the Plaintiff's pants. It was therefore necessary to check her pants. The search was not excessively intrusive in light of the Plaintiff's age and sex because it was performed by the Plaintiff's mother in the presence of Defendant Fraikin, a female, school nurse. Defendant Fraikin, as a nurse, was the most appropriate faculty member to be present during the search based on her profession. Further, the nature of the suspected infraction, possession of drugs, justified the search of the Plaintiff's person because of the

deleterious effects of the presence of drugs in the school setting and the fact that the Plaintiff was to attend and off campus activity.

Additionally, looking to Federal precedent for guidance in determining the contours of the Connecticut Constitution on this issue shows that the Defendants' actions were reasonably and justified.  see Phaneuf v. Cipriano, et al, 330 F. Supp. 2d 74; 2004 U.S. Dist. LEXIS 15857 (2004), Cornfield v. Consolidated High Sch. Dist. No., 230, 991 F.2d 1316 (7th Cir. 1993)[3], Justice v. City of Peachtree City, 961 F.2d 188, 193 (11th Cir. App. 1992)[4]; Singleton v. Board of Educ. USD 500, 894 F.Supp 386 (D.Kan. 1995)[5]; Widener v. Frye, 809 F.Supp. 35 (S.D. Ohio 1992)[6].

Accordingly, because the search conducted of the Plaintiff was justified at its inception and was carried out in a reasonable fashion, there was no violation

---

[3] Where only basis for suspecting the student of wrongdoing was that he had a bulge in his pants and had been a disciplinary problem in the past; Seventh Circuit found that a full strip search conducted by two school employees did not violate Fourth Amendment.

[4] Strip search of juvenile arrestee based on reasonable suspicion was reasonable in scope where the officers limited the search in the following manner: (1) having members of the same sex perform the search, (2) using a room where only the participants were present to conduct the search, and (3) limited the search to exclude body cavities.

[5] Search for stolen money was reasonable in its scope where conducted in the privacy of the principal's office with only two male administrators present.  The student was not required to remove his underwear, and was not touched inappropriately.

of Article First, § 7 of the Connecticut Constitution and as a matter of law, Defendants' Motion for Summary Judgment should be granted as to all counts of the Plaintiff's Revised Complaint.

**IV.   PLAINTIFF'S CLAIMS ALLEGING NEGLIGENCE AND NEGLIGENT INFLICTION OF EMOTIOINAL DISTRESS AGAINST ROSE MARIE CIPRIANO, DORENE FRAIKIN, SUPERINTENDENT BINKOWSKI, PLAINVILLE BOARD OF EDUCATION AND TOWN OF PLAINVILLE FAILD AS MATTER OF LAW BECAUSE THE DEFENDANTS ARE ENTITLED TO GOVERNMENTAL IMMUNITY FOR THEIR DISCRETIONARY ACTS**

Plaintiff's claims alleging negligence and negligent infliction of emotional distress against all Defendants (**Count Two**, Negligence against Defendant Cipriano; **Count Three**, Negligence against Defendant Fraikin; **Count Four**, Negligence against Defendant Binkowski; **Count Nine**, Negligent Infliction of Emotional Distress against Defendant Cipriano; **Count Ten**, Negligent Infliction of Emotional Distress against Defendant Fraikin; **Count Eleven**, Negligent Infliction of Emotional Distress against Defendant Binkowski; **Count Twelve**, Negligence pursuant to C.G.S. § 52-557n against Defendant Town of Plainville; **Count Thirteen**, Indemnity pursuant to C.G.S. § 7-465 against Defendant Town

---

[6] Search was held reasonable in scope where a student was removed from the presence of his classmates, the search was conducted by two security guards, and the student was made to remove socks, shoes and

of Plainville; **Count Fourteen**, Indemnity pursuant to C.G.S. § 10-235 against Defendant Board of Education; and **Count Fifteen**, Negligent Infliction of Emotional Distress against Defendants Town of Plainville and Board of Education) fail as a matter of law because Defendants are entitled to governmental immunity for their discretionary acts.

In analyzing the respective liability and immunities in this case, a clear distinction must be made between the rights and responsibilities of the individual Defendants Cipriano, Fraikin and Binkowski and the municipal defendants.

Historically a municipality itself was generally immune from liability for its tortious acts at common law, Evon v. Andrews, 211 Conn. 501, 505 (1989); Ryszkiewicz v. New Britain, 193 Conn. 589, 593.   On the other hand its employees face the same personal tort liability as individuals, Evon v. Andrews, 211 Conn. 501, 505 (1989); Gordon v. Bridgeport Housing Authority, supra, 165. "A municipal employee however, has a qualified immunity in the performance of a governmental duty.   This so-called 'qualified' immunity of a municipal employee is subject to three exceptions or circumstances under which liability may attach even though the act was discretionary.

---

pants, but not underwear.  Student's shirt was also lifted and his crotch area was visibly inspected.

The three narrow exceptions to a municipal employees qualified governmental immunity are (1) where the circumstances make it apparent to the public officer that his actions are likely to subject an identifiable person to imminent harm, (2) where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws, and (3) where the alleged acts involve malice, wantonness or intent to injure, rather than negligence.  Purzycki v. Fairfield, 244 Conn. 101, 108 (1998).

Thus, a municipal employee can be found liable for his tortious actions. However, he is entitled to an exception to this liability where the injury occurred as a result of a discretionary act by the official.  In contrast with the potential liability of a municipal official, municipalities have at common law enjoyed governmental immunity.  This governmental immunity may be abrogated by statute however.  Thus, the general rule developed in Connecticut case law is that a municipality is immune from liability for negligence unless the Legislature has enacted a statute abrogating that immunity, Williams v. New Haven, 243 Conn. 763, 766-67.

17

Recently the Court in <u>Spears v. Garcia</u>, 263 Conn. 22 (2003) determined that the Legislature, by virtue of C.G.S. Section 52-557n clearly and expressly abrogated the traditional common law doctrine in this state that municipalities were immune from suit for torts committed by their employees and agents, <u>Id</u>. at 29.   Through this statute the Legislature has manifested its intention to abrogate governmental immunity, <u>Id</u>.   However, by the very terms of this statute, the municipality is only potentially liable.   That is, the statute has several built-in exceptions to liability.

Thus, while Section 52-557n(a) provides that political subdivision shall be liable for damages to persons or property caused by "(A) the negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties...", Subdivision (a)(2)(B) provides that the municipality shall not be liable for "negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law".   Subsection (b) also sets out specific enumerated exceptions to the governmental liability established by this statute.

18

With respect to the exceptions to governmental immunity as they apply to the Defendants Cipriano, Fraikin and Binkowski, Plaintiff has not, nor cannot show that the acts attributable to her involved malice, wantonness or an intent to injure. Accordingly this recognized exception to the Defendants Cipriano, Fraikin and Binkowski discretionary immunity is not applicable.

Another recognized exception is where a statute "specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws", <u>Evon v. Andrews</u>, <u>supra</u> at 505. The example given is General Statutes Section 7-108 that provides that a municipality shall be liable for all injuries to person or property when such injuries are caused by an act of violence of any person or persons while a member of or acting in concert with any mob or riotous assembly if the city, its police or other proper authorities "have not exercised reasonable care or diligence in the prevention or suppression" of such mob, riotous assembly, etc. This exception is not implicated in the present action.

As a result, the only possible exception to the governmental immunity otherwise enjoyed by the Defendants Cipriano, Fraikin and Binkowski for their

discretionary acts would be that common law exception "where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm", <u>Evon v. Andrews</u>, <u>supra</u> at 505[7].

Plaintiff cannot maintain that she falls within the identifiable person / imminent harm exception. The plaintiff may argue that she was subjected to a danger that occurred during school hours thus she is entitled to the identifiable person / imminent harm exception to governmental immunity. This very argument was specifically rejected by the Appellate Court in <u>Doe v. Board of Education</u>, 76 Conn. App. 296, 305 (2003), where the Court stated:

> The plaintiff suggested that the alleged danger was limited in duration because it existed only during school hours. We reject this argument because it is inconsistent with the opinions in <u>Burns</u> and <u>Purzycki</u>[8].
>
> Although the courts have applied the identifiable-imminent harm exception to some cases involving injuries to school children, in each of those

---

[7] This common law exception to the immunity enjoyed by public officers for their discretionary acts does not apply to municipalities. Thus while an employee might be subject to liability under a identifiable person or class of persons/imminent harm exception, a municipality may not. Connecticut General Statues Section 52-557n which abrogates the common law immunity of municipalities, contains no exception to the qualified immunity for discretionary acts contained therein, <u>see</u> <u>*Guardino v Town of East Hartford*</u>, <u>*supra*</u>.

cases the dangerous condition was sufficiently limited in both duration and geography to make it apparent to the defendants that the school children were subject to imminent harm.   See Purzycki v. Fairfield, 244 Conn. 101; Burns v. Board of Education, 228 Conn. 640 (1994); Colon v. Board of Education, 60 Conn. App. 178, (2000).

In this particular case, there is no evidence that can support a finding that a search of a school student undertaken by the student's mother in the presence of a substitute nurse subjects that student to imminent harm.   Courts have refused to adopt a rule of liability "where some kind of harm may happen to someone  . . . The law requires, to maintain the action, a showing of imminent harm to an identifiable victim." Shore v. Stonington, 187 Conn. 147 (1982).

> The adoption of a rule of liability where some kind of harm may happen to someone would cramp the exercise of official discretion beyond the limits desirable in our society. Id at 57.

The Plaintiff's Revised Complaint does not allege any physical injury and only maintains a claim for emotional injury.  Said resulting harm is by no means imminent under such circumstances.   Thus, even assuming that said harm

---

[8] Purzycki v. Fairfield, 244 Conn. 101 (1998), Burns v. Board of Education, 228 Conn. 640 (1994)

ultimately visited the Plaintiff, she does not meet the standard for piercing the governmental immunity afforded to the Defendants.

As outlined above, the actions of the Defendants were clearly discretionary, thus the Defendants are entitled to qualified governmental immunity. Further, it is evident that the Plaintiff does not qualify for any exception to the Defendants' qualified governmental immunity. Accordingly, Defendants' Motion for Summary Judgment on Counts Two, Three, Four, Nine, Ten, Eleven, Twelve and Fifteen alleging negligence against the Defendants should be granted.

Additionally "to invoke the municipality indemnification statute . . . which provides for indemnification by municipalities of municipal officers, agents, or employees who incur liability for certain acts of negligence committed in the course of their official conduct, plaintiffs must first sufficiently allege . . . and prove the employees had a duty to the individual injured and caused a breach of that duty." Rivera v. Sitaras, 2001 Conn. Super.LEXIS 1715 (Conn. Super. Ct. June 20 2001).  Accordingly, Summary Judgment should be granted on Counts Thirteen alleging indemnity against Town of Plainville pursuant to C.G.S. § 7-

22

465, and Fourteen alleging indemnity against Board of Education pursuant to

C.G.S. § 10-235 because Plaintiff's claims fail as a matter of law.

**V.    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COUNTS FIVE AND SIX OF THE PLAINTIFF'S REVISED COMPLAINT SHOULD BE GRANTED BECAUSE PLAINTIFF CANNOT ESTABLISH A CLAIM FOR INVASION OF PRIVACY**

Count Five of the Plaintiff's Revised Complaint incorporates the allegations

of Count One and alleges Invasion of Privacy against Defendant Rose Marie

Cipriano, the Principal of Defendant Plainville High School.   Count Six of the

Plaintiff's Revised Complaint incorporates the allegations of Count One and

alleges Invasion of Privacy against Defendant Dorene M. Fraikin, a nurse at

Defendant Plainville High School.   As outlined below, Plaintiff cannot establish a

claim for invasion of privacy and Summary Judgment should be granted against

Counts Five and Six of Plaintiff's Revised Complaint.

The Connecticut Supreme Court has adopted four categories of the tort of

invasion of privacy as contained in the Restatement (Second) of Torts. <u>Goodrich

v. Waterbury Republican-American, Inc.</u>, 188 Conn. 107, 127-28, 448 A.2d 1317

(1982).

> The four categories for invasion of privacy are set forth in 3 Restatement (Second), Torts 652A as follows:  (a) unreasonable intrusion upon the seclusion of another; (b) appropriation of the other's name or likeness; (c) unreasonable publicity given to the other's private life; or (d) publicity that unreasonably places the other in a false light before the public.

Id.  "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person."  3 Restatement (Second), Torts § 652B (1997).  The Plaintiff's claims fall into the category of an unreasonable intrusion upon the seclusion of another and an intrusion upon the Plaintiff's physical solitude or seclusion.

The Connecticut Appellate Courts have not yet set forth the necessary elements of a claim for unreasonable intrusion upon seclusion.  Nevertheless, the authors of the Restatement explain that this form of invasion of privacy "consists solely of an intentional interference with [the plaintiff's] interest in solitude or seclusion, either as to his person, or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable man."  3 Restatement (Second), Torts § 652B, Comment (a).

Defendants' Motion for Summary Judgment should be granted because Plaintiff has not nor cannot sustain a claim for invasion of privacy by an intentional, physical intrusion.

First, in order for there to be a claim for invasion of privacy, there must be an intrusion of a person's "private affairs or concerns." As Plaintiff's Revised Complaint alleges in Count One, Paragraph 10, and as discussed above, the search of the Plaintiff was ordered because there was an "accusation that the Plaintiff had marijuana in her pants." The issue of whether or not Plaintiff, a high school student, had marijuana in her pants was not a matter of her "private affairs of concerns" particularly because the Plaintiff was on school property and was about to depart for an off-campus school activity. Possession of drugs in a school environment is a matter of public concern because the presence of drugs threatens the safety of schoolchildren and the educational process itself. Further, Plaintiff's privacy interest or expectation is lower when she is in a school environment.

Secondly, in order for there to be a claim for invasion of privacy there must be a "physical" intrusion to the Plaintiff's person. Plaintiff's Revised

Complaint alleges that the Plaintiff's mother conducted the search of the Plaintiff with Defendant Fraikin in the room. Plaintiff does not, and cannot allege a "physical" intrusion by any Defendant. Defendant Fraikin observed the Plaintiff's mother conducting the search, and there is no mention that Defendant Cipriano was even present during the search.

Lastly, in order for Plaintiff to state a claim for invasion of privacy, she must show that the physical intrusion "would be highly offensive to a reasonable man." 3 Restatement (Second), Torts § 652B, Comment (a). A review of the facts shows that Defendants conduct was not highly offensive or objectionable to a reasonable person.

As outlined above, Defendants received an "accusation that the Plaintiff had marijuana in her pants" (Plaintiff's Complaint Count One, Para. 10) and the Defendants called and asked Plaintiff's Mother to conduct the search of the Plaintiff's person. Present in the room with the Plaintiff's mother was Defendant Fraikin, the school nurse. (Plaintiff's Complaint Count One, Para. 11) These two individuals, the Plaintiff's mother and school nurse, were most likely the least objectionable or offensive people in the school to be present during said search.

Defendant Fraikin, as a licensed nurse in a high school, is experienced in the confidentiality and privacy matters regarding medical evaluations and student issues at the high school level that her presence at the search cannot be viewed to rise to the level of "offensive or objectionable."  Further, as stated above, there is no evidence that Defendant Cipriano was ever present at the search, so her actions during the search cannot be viewed as highly offensive or objectionable.

Further, Plaintiff must show that the intrusion was "unreasonable."  As discussed above in Section III and decided by the United States District Court for the District of Connecticut, Defendants' actions were not unreasonable, but instead were justified and warranted.  Phaneuf v. Cipriano, et al, 330 F. Supp. 2d 74; 2004 U.S. Dist. LEXIS 15857 (2004). (Attached as Exhibit E)

Accordingly, because the Plaintiff has failed to show that there was an unreasonable intrusion upon her person, Defendants' Motion for Summary Judgment should be granted.

## VI.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON COUNTS SEVEN AND EIGHT OF THE PLAINTIFF'S REVISED COMPLAINT SHOULD BE GRANTED BECAUSE PLAINTIFF CANNOT ESTABLISH A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Count Seven of the Plaintiff's Revised Complaint incorporates the allegations of Count One and alleges Intentional Infliction of Emotional Distress against Defendant Rose Marie Cipriano, the Principal of Defendant Plainville High School.   Count Eight of the Plaintiff's Revised Complaint incorporates the allegations of Count One and alleges Intentional Infliction of Emotional Distress against Defendant Dorene M. Fraikin, a nurse at Defendant Plainville High School. As outlined below, Plaintiff has not proved a claim for intentional infliction of emotional distress and Summary Judgment should be granted against Counts Seven and Eight of Plaintiff's Revised Complaint.

In order for a Plaintiff to prevail on a basis of intentional infliction of emotional distress, four elements must be established.

> It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.

28

Appleton v. Bd. of Ed. of the Town of Stonington, et al, 254 Conn. 205, 210 (2000). Although the Plaintiff here has alleged all of the elements of intentional infliction of emotional distress in her Revised Complaint, Plaintiff has not, and cannot establish that the Defendants Cipriano's and Fraikin's conduct was "extreme and outrageous."

Whether a Defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine.  Bell v. Board of Education, 55 Conn. App. 400, 410, 739 A.2d 321 (1999).  Liability for intentional infliction of emotional distress requires conduct that exceeds "all bounds usually tolerated by decent society . . ." Petyan v. Ellis, 200 Conn. 243, 254 n.5, 510 A.2d 1337 (1986), quoting W. Prosser & W. Keeton, Torts (5th Ed. 1984) §12, p. 60.

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

1 Restatement (Second), Torts § 46, comment (d), p. 73 (1965)  "Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." Appleton v. Board of Education, supra, 254 Conn. 211, quoting Mellaly v. Eastman Kodak Co., 42 Conn. Supp. 17, 19, 597 A.2d 846 (1991).

Defendants' actions fail to rise to the level of "extreme and outrageous." Defendants' actions were based on the "accusation that the plaintiff had marijuana in her pants" (Plaintiff's Revised Complaint, Count One, Paragraph 10), and Defendants had the Plaintiff's mother conduct the search with a registered nurse in the room. (Plaintiff's Revised Complaint, Count One, Paragraph 11)  Such actions of the Defendants do not cause an average member of the community to exclaim 'outrageous!'  Deterring drug use by school children is an important and compelling governmental concern, and Defendants' attempt to address this concern based on an accusation can hardly be viewed as extreme or outrageous.

Moreover, the United States District Court for the District of Connecticut has already determined that the Defendants' actions were not extreme or outrageous, but rather justified and warranted based on the information the Defendants obtained.  Phaneuf v. Cipriano, et al, 330 F. Supp. 2d 74; 2004 U.S. Dist. LEXIS 15857 (2004). (Attached as Exhibit E)

Accordingly, because Plaintiff has not, nor cannot establish a claim for intentional infliction of emotional distress, Defendants' Motion for Summary Judgment should be granted.

## VII.  CONCLUSION

Wherefore, for all of the foregoing reasons, Defendant's Motion for Summary Judgment should be granted.

Respectfully Submitted,

THE DEFENDANTS,

BY_____
JAMES G. WILLIAMS
WILLIAMS, WALSH & O'CONNOR, LLC
110 WASHINGTON AVENUE,
SECOND FLOOR
NORTH HAVEN, CT  06473
JURIS #: 421162

31

## **CERTIFICATION**

THIS IS TO CERTIFY that a copy of the foregoing has been mailed postage prepaid to:

Gesmonde, Pietrosimone, Sgrignari & Pinkus, LLC
3127 Whitney Avenue
Hamden, CT 06518


_____
JAMES G. WILLIAMS
COMMISSIONER OF THE SUPERIOR COURT